UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| O CENTRO ESPIRITA BENEFICENTE UNIÃO DO VEGETAL IN THE U.S., JOSE CARLOS GARCIA, DANIELLE HOUNSELL SILVA GARCIA, and J.H.S.G., a minor, <br><br>    Plaintiffs,<br><br>    vs.<br><br>ELAINE DUKE, Acting U.S. Secretary of Homeland Security; L. FRANCIS CISSNA, Director of U.S. Citizenship and Immigration Services; KATHY BARAN, Director of U.S. Citizenship and Immigration Services California Service Center; U. S. CITIZENSHIP AND IMMIGRATION SERVICES, an agency of the United States; in their official capacity, UNITED STATES OF AMERICA<br><br>    Defendants, | No. 17-cv-1137 |

**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND WRIT OF MANDAMUS**

1.     The United States continues to impinge on Plaintiffs' fundamental right to practice their religion guaranteed to them by the First Amendment to the U.S. Constitution and by statute.  This is not the first time.  Plaintiff O Centro Espiríta Beneficente União do Vegetal (UDV) was the subject of the Supreme Court decision in *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). In that case, the Supreme Court held that the Government failed to demonstrate a compelling interest in barring UDV's sacramental use of hoasca tea (which contains a controlled substance).  In the current case, Defendants have issued a decision denying UDV's petition for a religious visa for Plaintiff Jose Carlos Garcia based on a regulation that requires UDV to do something that is diametrically opposed to another firmly held belief which is non-compensation of its ministers.

1

2. The petition that was denied was not the first one filed by UDV for Mr. Garcia. It had previously filed two other identical petitions for the same minister. Both of the previous petitions were approved after much resistance by Defendants[1]. In the previous petitions, UDV requested, and it appears to have been granted, an exemption under the Religious Freedom and Restoration Act of 1993 (RFRA) § 3, 42 USC § 2000bb-1(2006) although its position is that the regulation in question is *ultra vires*. The same exemption was requested in the instant petition. Defendants denied. Exhibit 1, Denial Decision. This denial clearly shows religious and political animus. With this decision, Defendants have shown that they will likely deny another immigrant visa petition filed by UDV for Plaintiff Jose Carlos Garcia which is currently pending and is being unreasonably delayed by Defendants. As a result, the Plaintiffs' plea to this Court is twofold: 1. that it declare the decision denying the religious visa petition illegal and order Defendants to vacate the denial and grant the petition; and 2. that it order Defendants to immediately adjudicate the delayed immigrant visa petition.

3. The denial of the visa petition has placed the individual Plaintiffs out of status and is continuing to cause injury to them. This injury, if continued unabated, will cause Plaintiffs irreparable harm thus greatly impinging on the practice of their religion. As a result, Plaintiffs are concurrently filing a motion for a Temporary Restraining Order and/or Preliminary Injunction.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1651, as a civil action arising under the Constitution, laws, or treaties of the United States (Federal

---

[1] The previous petitions were heavily resisted by Defendants with notices of intent to deny issued on both. A notice of intent to deny was also issued in the currently pending I-360 petition. Their inference that the agency thus must have made an inadvertent mistake in the two previous petitions is completely unfounded.

question), 28 U.S.C. § 1361, as an action to compel an officer or employee of the United States to perform a duty owed to Plaintiffs (Mandamus), 28 U.S.C. §§ 2201-02 (declaratory relief); the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq*., as an action to compel agency action unlawfully withheld and to hold unlawful and set aside agency action, findings, and conclusions found to be-- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law and the Immigration & Nationality Act (INA) and regulations implementing it (Title 8 of the C.F.R.).

5. Plaintiffs have standing to assert relief in this action.  5 U.S.C. § 702; *see also*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

6. Venue is proper in New Mexico pursuant to 28 U.S.C. §1391(e)(1)(C).  Plaintiffs sue the Defendants in their official capacities as officers and employees of the United States. Plaintiff UDV is headquartered in Santa Fe, NM, in the District of New Mexico.  Venue is also proper under 5 U.S.C. § 703.

7. Jurisdiction is also conferred pursuant to 5 U.S.C. §§ 555(b) and 702, the Administrative Procedure Act ("APA"). The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency *shall* proceed to conclude a matter presented to it." (Emphasis added). USCIS is subject to 5 U.S.C. § 555(b). *See Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district court has jurisdiction under the APA, in conjunction with 28 U.S.C.

§ 1331, to review plaintiff's complaint for declaratory and injunctive relief against federal agency).

8. 8 U.S.C. § 1252, does not deprive this Court of jurisdiction. 8 U.S.C. § 1252(a)(5) provides that "a petition for review filed with an appropriate court of appeals in accordance with this section, shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act[.]" As the present action does not seek review of a removal order, but is simply an action to compel USCIS to right one erroneous decision and to adjudicate Plaintiffs' other petition that is unreasonably delayed, this Court retains original mandamus jurisdiction under 28 U.S.C. § 1361. *Aguilar-Aguilar v. Napolitano*, 700 F.3d 1238, 1243 (10th Cir. 2012); *Hamilton v. Gonzales*, 485 F.3d 564, 565–66 (10th Cir.2007); *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir.2006) ("We have general jurisdiction to review only a final order of removal."); *Abiodun v. Gonzales*, 461 F.3d 1210, 1217 (10th Cir.2006); *Tsegay v. Ashcroft*, 386 F.3d 1347, 1353 (10th Cir.2004) (§ 1252 (a)(1) did not confer appellate jurisdiction over procedural challenge to BIA's decision affirming immigration judge's denial of an asylum application).

9. Furthermore, 8 U.S.C. § 1252(a)(2)(B) provides that no court shall have jurisdiction to review either (i) "any judgment regarding the granting of" various forms of relief from removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified … to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" Because adjudication of a properly filed visa petition is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original mandamus jurisdiction over

this claim. *See Liu v. Novak*, 509 F. Supp. 2d 1, 5 (D.D.C. 2007) (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application" for adjustment of status); *Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009) ("[T]he Defendant has the discretionary power to grant or deny applications, but it does not have the discretion as to whether or not to decide at all."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary [of Homeland Security] has unlawfully delayed or withheld final adjudication of a status adjustment application."). As to the unadjudicated immigrant visa petition in this case, numerous federal district courts have ruled that adjudication of a properly filed application or petition, including completion of all necessary background checks, is a purely ministerial, non-discretionary act which the Government is under obligation to perform in a timely manner. *See, e.g.*, *Shahid Khan v. Scharfen*, 2009 U.S. Dist. LEXIS 28948 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540 (S.D.N.Y. 2008); *Jones v. Gonzales,* Slip Copy, 2007 U.S. Dist. LEXIS 45012 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public.").

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

10. No exhaustion requirements apply to the Plaintiffs' complaint. Plaintiffs have no other adequate remedy available for the harms they seek to redress – both as to the denial of the nonimmigrant visa petition and as to the unreasonable delay of the immigrant visa petition.

11. This matter is subject to 5 U.S.C. § 704. By denying Plaintiffs' nonimmigrant visa petition, the USCIS has concluded a "final agency action for which there is no other adequate

remedy in a court." 5 U.S.C. § 704.  Agency action in this instance is final agency action. Accordingly, Plaintiffs have exhausted all necessary administrative remedies that may exist. *See Darby v. Cisneros*, 509 U.S. 137 (1993). 5 U.S.C. § 701 et. seq. (APA) provides a waiver of sovereign immunity.

12. This action was brought under the APA which provides for review of final agency decisions. The U.S. Supreme Court in *Darby v. Cisneros*, 509 U.S. 137 (1993) held that for actions brought under the APA exhaustion of administrative remedies is required *only* when expressly required by statute or agency rule. *Id.* at 154. (Emphasis in original). Thus when administrative remedies are made permissive but not mandatory, one does not have to exhaust them before seeking review in District Court. In this case, there is no express statutory or regulatory requirement that an administrative appeal of the decision of CIS to deny Plaintiff's application must be taken. The decision itself (Exhibit 1) states, "If you disagree with this decision, you *may* appeal to the Administrative Appeals Office." (Emphasis added).  Even if exhaustion of administrative remedies were found to be required, this exhaustion would be futile and inadequate.

13. In *Darby* the Supreme Court held that courts have discretion to require exhaustion of remedies, but only for cases not governed by the APA. *Id.* at 154.  For cases under the APA courts do not have discretion to require exhaustion of remedies if not expressly mandated by statute. In the present case there are no mandatory administrative appeals that need to be followed.

14. Even if exhaustion were required, exhaustion would be inadequate and futile.  A permissive administrative appeal takes approximately 6 months on average.  By that time the individual Plaintiffs would have left the United States to avoid severe immigration penalties.

The Church would be left without a minister and all the congregations in the United States would be left without the overseeing advisor that has been appointed by Church leaders.

## PARTIES

15. Plaintiff UDV is a New Mexico corporation and a nonprofit religious organization duly recognized by both the IRS and the United States Supreme Court. UDV is a Christian Spiritist religion that originated in Brazil and is now practiced by close to 20,000 people in 11 countries. The UDV has received numerous civic awards for its community and environmental service.

16. Plaintiff Jose Carlos Garcia is a minister of UDV. He holds a high position in the organization, akin to a Cardinal of the Catholic Church. Plaintiff Garcia has been leading the Church's Florida congregation since 2013 and remains part of an administrative counsel that oversees all the other congregations in the United States. He has been granted R-1 nonimmigrant religious worker status twice before by Defendants under identical circumstances. He has been a member and leader in the organization for decades. He is the beneficiary of the R-1 visa petition which was denied and of the I-360 immigrant visa petition is has been unreasonably delayed by Defendants.

17. Plaintiff Danielle Hounsell Silva Garcia is Plaintiff Jose Carlos Garcia's spouse and therefore the derivative beneficiary of the visa petition filed by Plaintiff UDV. Ms. Silva Garcia had concurrently filed an application for extension of status which was also denied as it is wholly dependent on the UDV visa petition which was denied. *See* Exhibit 2, I-539 Denial Decision. She is also a derivative beneficiary of the I-360 visa petition which has been unreasonably delayed by Defendants.

18. Plaintiff J.H.S.G. is Plaintiff Jose Carlos Garcia's minor son and therefore the derivative beneficiary of the visa petition filed by Plaintiff UDV.  Plaintiff J.H.S.G. had concurrently filed an application for extension of status which was also denied as it is wholly dependent on the UDV visa petition which was denied.  *See* Exhibit 2, I-539 Denial Decision.  He is also a derivative beneficiary of the I-360 visa petition which has been unreasonably delayed by Defendants.

19. Defendant Elaine Duke is the Acting Secretary of the Department of Homeland Security (DHS), and as such is charged by statute with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens.  She is sued in her official capacity only.

20. Defendant L. Francis Cissna is the Director of United States Citizenship and Immigration Services (USCIS) of the DHS and as such is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens pursuant to a delegation of authority from the Secretary of Homeland Security of the United States under 8 U.S.C. § 1103(a).  He is sued in his official capacity only.

21. Defendant Kathy Baran is the Director of United States Citizenship and Immigration Services California Service Center which rendered the denial decision in question.  She is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens pursuant to a delegation of authority from the Secretary of Homeland Security of the United States under 8 U.S.C. § 1103(a).  She is sued in her official capacity only.

22. United States Citizenship and Immigration Services (USCIS) is an agency of the United States in charge of reviewing and deciding visa petitions such as Plaintiffs'.

23. Defendants are agents of, and collectively represent the United States of America and are bound by positions taken by other agents and representatives of the United States.

## **LEGAL FRAMEWORK**

24. 8 U.S.C. § 1101(a)(15)(R) provides the statutory authority for the R visa used by nonprofit, religious organizations to allow their ministers to serve their flocks.  It provides as follows:

> (R) an alien, and the spouse and children of the alien if accompanying or following to join the alien, who—
> (i) for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and
> (ii) seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph (27)(C)(ii);

25. In turn, subclause (I) of § 1101(a)(27)(C)(ii), the relevant one here, provides as follows: "seeks to enter the United States—(I) solely for the purpose of carrying on the vocation of a minister of that religious denomination."

26. The regulations implementing the statute however, require that a petitioning organization either compensate the minister (salaried or otherwise), or show that it has an established missionary program where ministers are self-supporting. 8 C.F.R. 214.2(r)(11).  The way the regulation is written only self-support in the established missionary program context is permissible.  Any self-support for a minister that is not a part of an established missionary program is not allowed.  The regulation regarding missionaries has very detailed requirements of what fits the mold established by the Agency.  There is no support for this compensation requirement in the statute and it is completely *ultra vires*.  The only potential support is the

9

requirement that the minister come to the U.S. solely to provide religious services, which the Agency has extrapolated to mean that if one is not compensated, one must be obligated to work elsewhere and therefore not be in the United States to "solely" be a minister.  Defendants fail to take into account that many ministers are self-supporting either by their own means or through the sending organization even though they may not be involved in a "missionary program." Even if this is the statutory support or justification for the regulation, it does not explain the narrowing of self-supporting ministers to missionaries only.

27. Even for those organizations that have established missionary programs that comply with the regulation in question, for the organization to petition for a self-supporting missionary, one of the requirements is that the organization has previously been granted R-1 visas for other religious workers, meaning a compensated religious worker.  8 C.F.R. § 214.2(r)(11)(ii)(B)(1).  Based on this regulation, organizations that have non-compensation of ministers as a central tenet of their faith are never able to obtain R-1 visas for their ministers regardless of whether they have a missionary program.  This would unquestionably constitute a substantial burden, under the meaning of the Religious Freedom Restoration Act, as applied to that religious practice.

28. The above cited regulation provides a governmental burden and restriction in this religious organization's right to choose its ministers (aliens vs. United States citizens) and what religious tenets it holds. This regulation, if applied, would essentially force the Church to change its religious beliefs concerning compensation and start paying its ministers a salary or else never be able to apply for R-1 visas.   This is a clear governmental directive to this particular Church to change what they believe in in order to obtain an R-1 visa and this constitutes an unjustifiable

burden on religious conduct in violation of the 1st Amendment to The United States Constitution and Federal law.

29. Even if the regulation is not found to be ultra vires, it still places a burden on religious activity under the Religious Freedom and Restoration Act of 1993 (RFRA). RFRA § 3, 42 USC § 2000bb-1(2006), provides as follows:

"Free exercise of religion protected

(a) In general. Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
(b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
  (1) is in furtherance of a compelling governmental interest; and
  (2) is the least restrictive means of furthering that compelling governmental interest

30. This Court, the 10th Circuit Court of Appeals and the United States Supreme Court have already held that RFRA applies to the religious activities <u>of this particular Church</u>. In *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006), the Supreme Court held that the Petitioner's religious freedom was burdened by the U.S. government confiscating a tea that the Church used for religious purposes, but which the United States deemed a controlled substance. This case is on point as it deals with the same Church as the instant petition, and it deals with RFRA and the Church's religious rights and the freedom to exercise those rights.

31. By *de facto* prohibiting the Church from ever bringing in religious workers under R-1 status, this regulation would impinge on the Church's right to choose its clergy and religious workers, which is an essential element of its religious exercise. *See Petruska v. Gannon University*, 462 F.3d 294, 306 (3rd Cir. 2006) ("A minister serves as the church's public

11

representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise."); *McClure v. Salvation Army*, 460 F.2d 553, 559 (5th Cir. 1972) ("The minister is the chief instrument by which the church seeks to fulfill its purpose."). Additionally, if would impinge on the Church's exercise of religion by directing it that it should pay its ministers a salary when the Church firmly believes (and holds as a central tenet of its practice) that it must not.

32. For USCIS to apply this regulation to deny this petition, it must show that it is exempt under section 3(b) of RFRA. To deny this petition, USCIS must show that the regulation, and the denial of this petition under it, is in the furtherance of a compelling governmental interest, and that this regulation is the least restrictive means of furthering that compelling government interest as applied to this person. This simply cannot be shown in this case. In the previously case the United States arguably had a more compelling interest in regulating the use of the tea as it contained a controlled substance. In the present case, the United States' conduct is even more egregious since there is absolutely no compelling interest in applying the instant regulation when Plaintiffs have clearly shown that the minister is self-supporting and will not be seeking secular employment.

33. Furthermore, RFRA provides a remedy to those whose religious freedom is burdened by government, including the Petitioner in this matter. The remedy is to request a specific exemption from the burdensome regulation. When the current religious worker visa regulations were passed in 2008, the public widely expressed concerns that RFRA would be violated by the newly passed religious worker regulations. In the final regulation, on page 72283 of volume 73 of the Federal Register, USCIS states:

> "An organization or individual who believes that the RFRA may require specific relief from any provision of this regulation may assert such a claim at the time they petition for benefits under the regulation.

34. The simple fact that RFRA was specifically addressed in the preamble to the regulations is further evidence that RFRA applies in this context, and that RFRA is a law that covers and affects all other federal laws, even those that are of general application.

35. The final regulation preamble also stated:

> "Nor does this final rule impose a 'categorical bar' to any religious organization's petition for a visa or alien's application for admission.

36. From this statement, it is clear that USCIS did not contemplate a scenario, such as that of the present Plaintiff, in which the final rule, applied in its entirety, would impose a categorical bar on R-1 petitions.

37. Similarly to the denied R-1 visa petition, I-360 Immigrant Visa Religious Worker petitions also have a compensation requirement. 8 C.F.R. § 204.5(m)(2) provides as follows:

> […]Be coming to the United States to work in a full time (average of at least 35 hours per week) *compensated* position in one of the following occupations as they are defined in paragraph (m)(5) of this section.

(Emphasis added).

38. The same legal framework as above applies to this regulation as well including the RFRA exemption.

**FACTUAL AND PROCEDURAL BACKGROUND**

39. Plaintiff UDV filed an I-129 nonimmigrant R-1 visa petition for Jose Carlos Garcia on 12/16/2001. On 4/5/2012, Defendant USCIS issued a request for evidence (RFE). A response was sent on 6/19/2012. A notice of intent to deny (NOID) was issued by Defendant USCIS on 7/31/2012. A response was filed on 8/28/2012. In the RFE and NOID, Defendant

13

USCIS raised largely the compensation issue.  Plaintiff UDV requested an exemption under RFRA.  The petition was approved on 11/27/2012.  Plaintiff Garcia was admitted to the United States in R-1 status on 3/26/2013.

40. On 12/3/2014, Plaintiff UDV filed a second I-129 nonimmigrant visa petition for Plaintiff Garcia.  On 1/16/2015 an RFE was issued by Defendant USCIS.  A response was filed on 4/3/2015.  A NOID was issued by Defendant USCIS on 10/15/2015.  Defendant USCIS again raised the same compensation issue.  A response was filed on 10/26/2015 and an exemption was again sought by Plaintiff UDV under RFRA.  The petition was approved on 12/16/2015.

41. On 7/1/2017, Plaintiff UDV filed an I-360 immigrant visa petition for Plaintiff Garcia. A NOID was issued by Defendant USCIS on 7/31/2017.  Again, the compensation issue was raised. A response was sent on 8/31/2017.  This petition is currently pending.

42. USCIS published processing times state that I-360 petitions are approved within 90 days of filing.  *See* Exhibit 3.  As of the date of the filing of this complaint the petition is delayed by over 2 months or 66% longer than expected.

43. Plaintiff UDV filed a third R-1 visa petition for Plaintiff Garcia on 7/10/2017.  An RFE was issued on 9/11/2017.  Unsurprisingly, the compensation issue was raised again by Defendant USCIS.  What was surprising is that for the first time Defendant USCIS raised a new issue, namely the allegation that Plaintiff Garcia is a drug abuser because of the use of the sacramental Hoasca tea which contains a controlled substance.  A response was filed on 10/17/2017 and a RFRA exemption was again sought by Plaintiff UDV as to both the compensation issue and use of the sacramental tea.  Defendant USCIS denied the petition on 10/31/2017 based solely on the compensation issue.  Exhibit 1.

44. In every single filing and in every response to the Defendants' repeated raising of the compensation issue, Plaintiff Garcia has clearly shown that he has substantial assets and income unrelated to his Church activities and therefore has not and will not engage in secular employment.

45. The individual plaintiffs are now left without status in the United States. If this Court does not provide immediate relief they will be forced to leave the United States and the UDV Church will be left without their minister or the oversight Mr. Garcia provided to all the United States congregations.

46. Plaintiff Garcia and his family are accruing unlawful presence in the United States. If they accrue more than 180 days of unlawful presence they will be barred for 3 years from entering the United States upon departure. 8 U.S.C. § 1182(a)(9)(B).

47. Plaintiff Garcia and Plaintiff Silva Garcia are unable to renew their Florida driver's licenses in the absence of status and therefore are extremely hindered in their daily activities. They are now living in limbo with the possibility of departing the United States at a moment's notice.

48. Contrary to what Defendant USCIS states in its denial decision, Mr. Garcia is eligible for R-1 status until 11/6/2018. He has been in the United States in R-1 status from 3/26/2013 to 4/24/2013, 6/22/2013 to 7/30/2013, 9/18/2013 to 10/23/2013, 12/14/2013 to 6/6/2016 and 8/10/2016 to present[2]. A person in R-1 status is entitled to 5 years in the aggregate. Therefore Plaintiff Garcia and his family are eligible until November 6, 2018 or approximately one more year in R-1 status.

---

[2] Mr. Garcia's wife and son have been in the United States even less than he has, however they can only obtain R-2 status for as long Mr. Garcia can, therefore for all intents and purposes, they are all eligible until approximately November 6, 2018.

49. As stated above, UDV has previously litigated issues relating to their religion against the United States. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). Following this litigation, the United States filed a statement of interest in another case UDV filed against Santa Fe County Commissioners who had denied them a permit to build their temple. *O Centro Espirita Beneficente Uniao do Vegetal v. Board of County Commissioners of Santa Fe County*, 1:12-cv-00105-MV-LFG. (Copy of pleading filed by the United States attached as Exhibit 4). The United States took the position that a religious organizations choice of where to build its house of worship is exercise of religion and therefore protected by RFRA. In the current decision being challenged here, the United States, through its agents, is taking the position that the choice of minister or what to believe regarding compensation is not exercise of religion protected by RFRA. This is clearly against the law. *See Petruska v. Gannon University*, 462 F.3d 294, 306 (3rd Cir. 2006) ("A minister serves as the church's public representative, its ambassador, and its voice to the faithful. Accordingly, the process of selecting a minister is *per se* a religious exercise."); *McClure v. Salvation Army*, 460 F.2d 553, 559 (5th Cir. 1972) ("The minister is the chief instrument by which the church seeks to fulfill its purpose.").

## CAUSES OF ACTION

### COUNT ONE

### DECLARATORY JUDGMENT

50. The allegations contained in paragraphs 1 through 44 above are repeated and re-alleged as though fully set forth herein.

51. Pursuant to 28 U.S.C. § 2201 et seq. the Court may declare the rights of the parties and such declaration shall have the force and effect of a final judgment or decree.

52. Defendants in this case have reached a decision that is not in accordance with the law. Said decision has caused and continues to cause harm to Plaintiffs. Therefore issuance of a declaratory judgment that Defendants' decision is erroneous and that Plaintiffs' petition should be approved is warranted. Furthermore, Defendants have unreasonably delayed Plaintiffs' I-360 petition. Issuance of a declaratory judgment that their delay is unreasonable and that the petition should be immediately approved is also warranted.

## COUNT TWO

## VIOLATION OF 5 U.S.C. §§ 702, 704, 706 (APA CLAIMS)

53. The allegations contained in paragraphs 1 through 47 above are repeated and re-alleged as though fully set forth herein.

54. Plaintiffs have suffered a "legal wrong" or have been "adversely affected or aggrieved" by agency action. 5 U.S.C. & 702. Plaintiffs are aggrieved by agency action for which there is no other adequate remedy in court. 5 U.S.C. § 704.

55. Defendants' unreasonable decision to ignore Supreme Court precedent and RFRA is unlawful and is causing Plaintiffs continued and irreparable harm.

56. Defendants' regulation used to deny Plaintiffs is *ultra vires* as it has no support in the statute.

57. The denial is arbitrary, capricious, and exceeds Defendants' statutory authority. 5 U.S.C. § 706(c)(2).

58. Defendants have also unreasonably delayed adjudication of Plaintiffs' I-360 petition. This is a violation of the APA which mandates that a decision be made in a timely manner.

## COUNT THREE

## RELIEF UNDER THE MANDAMUS ACT

59. The allegations contained in paragraphs 1 through 53 above are repeated and re-alleged as though fully set forth herein.

60. Plaintiffs have a claim for mandamus relief under 28 U.S.C. § 1361 which provides the authority to compel the agency to perform a duty owed to Plaintiffs. Defendants have failed to properly adjudicate Plaintiffs' petitions in conformity with RFRA and clear and binding Supreme Court precedent.

## COUNT FOUR

## JUDICIAL ESTOPPEL

1. The allegations contained in paragraphs 1 through 53 above are repeated and re-alleged as though fully set forth herein.

2. The United States is judicially estopped from taking diametrically opposed positions in relation to Plaintiff UDV. An order of the court estopping the United States and its agents from holding a contrary position than their previous position is therefore warranted. *New Hampshire v. Maine*, 532 U.S. 742 (2001), *Smith v. United Parcel Service*, 578 Fed.Appx. 755 (10th Circuit, 2014).

## PRAYER FOR RELIEF

WHEREFORE, in view of the arguments and authority noted herein, Plaintiffs pray that the Court grant the following relief:

A. Assume jurisdiction over the matter;

B. Issue a declaratory judgment holding that Defendants' denial of the I-129 R-1 petition is unlawful and contrary to law and that their unreasonable delay in adjudicating the I-360 immigrant visa petition is also contrary to law.

C. Order Defendants and those working under them to reverse their decision as to the denied I-129 petition and the dependents' I-539 application and immediately approve it, to immediately adjudicate the pending I-360 petition under the RFRA and Supreme Court framework laid out above, and to immediately withdraw the *ultra vires* regulation regarding compensation.

D. Enjoin Defendants from taking a diametrically opposed position and to issue and an order binding Defendants to their earlier position in support of Plaintiffs' free exercise of religion.

E. Award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 and pursuant to 42 U.S.C. § 1988(b)[3], and

F. Grant any and all further relief this Court deems just and proper.

Dated this 14th day of November 2017.

/s/ Olsi Vrapi.

Olsi Vrapi
Attorney for Petitioner
Noble & Vrapi, P.A.
4253 Montgomery Blvd. NE, Suite 240
Albuquerque, NM 87109
Phone:  (505) 352-6660
Fax:  (505) 872-6120
olsi@noblelawfirm.com

---

[3] Defendants have previously paid a substantial award of attorney's fees to Plaintiff UDV in relation to the Supreme Court litigation.  The same rationale for that award of attorney's fees applies in this matter.