# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

O CENTRO ESPIRITA BENEFICIENTE UNIAO
DO VEGETAL IN THE U.S.; JOSE CARLOS
GARCIA;
DANIELLE HOUNSELL SILVA GARCIA  and
J.H.S.G., a minor,

       Plaintiffs,

vs.                                                                                         No. CIV 17-1137 JB/KK

ELAINE DUKE, Acting U.S. Secretary of
Homeland Security;
L. FRANCIS CISSNA, Director of U.S. Citizenship
and Immigration
Services; KATHY BARAN, Director of U.S.
Citizenship and Immigration Services
California Service Center; UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES,
an agency of the United States, in their official
capacity, and
UNITED STATES OF AMERICA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Temporary

Restraining Order and/or Preliminary Injunctive Relief and Request for Emergency Ex Parte

Hearing, filed November 20, 2017 (Doc. 5-1)("Motion").[1]   The Court held hearings on

November 21, 2017 and December 1, 2017.   The primary issues are: (i) whether the procedural

---

[1]The Plaintiffs originally filed the Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief and Request for Emergency Ex Parte Hearing, filed November 14, 2017 (Doc. 2)("Original Motion").   The Motion was filed "as a more accurate pleading seeking the same relief."   Notice of Errata Regarding Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief and Request for Emergency Ex Parte Hearing at 1, filed November 20, 2017 (Doc. 5).   Consequently, resolving the Motion's requests for relief also resolves the Original Motion's requests for relief.

requirements of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), apply to the Motion

for an injunction; (ii) whether the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1

("RFRA"), claim of the Plaintiffs' O Centro Espirita Beneficiente Uniao Do Vegetal in the

United States (called "UDV" by its members and the Court), Jose Carlos Garcia, Danielle

Hounsell Silva Garcia, and J.H.S.G. (collectively "the Plaintiffs") has a substantial likelihood of

success on the merits; (iii) whether the Plaintiffs are likely to suffer irreparable injury absent a

preliminary injunction; (iv) whether the threatened injury to the Plaintiffs outweighs the injury

an injunction could cause the Defendants Elaine Duke, L. Francis Cissna, Kathy Baran, United

States Citizenship and Immigration Services, and the United States of America (collectively "the

Defendants"); (v) whether the injunction would be adverse to the public interest; and (vi)

whether the Plaintiffs have met a disfavored preliminary injunction's heightened requirements.

The Court concludes that: (i) the APA's procedural requirements do not apply to this Motion,

because the Motion seeks injunctive relief under RFRA, and not under the APA; (ii) the

Plaintiffs' RFRA claim has a substantial likelihood of success on the merits; (iii) the Plaintiffs

are likely to suffer irreparable injury absent a preliminary injunction; (iv) the threatened injury to

the Plaintiffs outweighs the injury an injunction could cause the Defendants; (v) the injunction

would not be adverse to the public interest; and (vi) the Plaintiffs have met a disfavored

preliminary injunction's heightened requirements.  Because the Court concludes that narrower

relief is appropriate than that requested, the Court will grant the Motion in part and deny it in

part.

## **FINDINGS OF FACT**

Pursuant to rule 52(a)(2) of the Federal Rules of Civil Procedure, the Court makes

findings of fact and conclusions of law to support its disposition of the Motion.  See Fed. R. Civ.

P. 52(a)(2), 65(d)(1).  The Court will first introduce the parties and then outline the timeline of events in this case.  The Court will then discuss the arguments for and against the Motion.

**1.      The Parties.**

1.      UDV is a Christian spiritualist religious organization.  <u>See</u> Complaint for Declaratory Judgment, Injunctive Relief, and Writ of Mandamus ¶ 15, at 7, filed November 14, 2017 (Doc. 1)("Complaint").

2.      An important aspect of UDV's theology is non-compensation of its ministers.  <u>See</u> I-129 Petition for a Nonimmigrant Worker at 11, filed with USCIS December 15, 2011 (Receipt No. WAC-12-052-50599), in file November 30, 2017 (Doc. 13-1)("Plaintiffs' Exhibit A1")("Religious tenets do not allow compensation of any form.").  <u>See</u> <u>also</u> Motion at 2.

3.      Much of UDV's liturgy is transmitted orally.  <u>See</u> Second Tr. at 26:15-16 (Bixby).

4.      UDV "originated in Brazil and is now practiced by close to 20,000 people in 11 countries."  Complaint ¶ 15, at 7.

5.      J. Garcia holds a high-level clerical position in UDV, "akin to a Cardinal of the Catholic Church," and "has been a member and leader in the organization for decades."  Complaint ¶ 16, at 7.  <u>See</u> Plaintiffs' Exhibit A1 at 23.

6.      J. Garcia is a key religious figure in teaching UDV's oral traditions.  <u>See</u> Second Tr. at 29:15-18 (Bixby).

7.      J. Garcia is the "most experienced" UDV member in the United States.  Second Tr. at 31:9 (Bixby).

8.      The only other people who are J. Garcia's equivalent live in Brazil "and most of them have jobs that require their presence in Brazil in order to [sustain] their families."  Second Tr. at 34:14-17 (Bixby).

9.      If J. Garcia had to leave the United States it would break the chain of UDV's oral tradition.  <u>See</u> Second Tr. at 35:1-4 (Vrapi, Bixby).

10.      Previously, J. Garcia had "R-1 nonimmigrant religious worker status"[2] in the United States.  Complaint ¶ 16, at 7.  <u>See</u> Approval Notice for I-129 Petition for a Nonimmigrant Worker at 2 (dated December 6, 2012)(Receipt No. WAC-12-052-50599), in file November 30, 2017 (Doc. 13-6)("Plaintiffs' Exhibit A6").

11.      D. Garcia is J. Garcia's wife.  <u>See</u> Complaint ¶ 17, at 7.

12.      J.H.S.G. is J. Garcia's minor child.  <u>See</u> Complaint ¶ 18, at 8.

13.      "Duke is the Acting Secretary of the Department of Homeland Security" and is "sued in her official capacity only."  Complaint ¶ 19, at 8.

14.      "Cissna is the Director of United States Citizenship and Immigration Services" ("USCIS"), an agency within the Department of Homeland Security.  Complaint ¶ 20, at 8. Cissna is also sued only in his official capacity.  <u>See</u> Complaint ¶ 20, at 8.

15.      "Baran is the Director of the United States Citizenship and Immigration Services California Center."  Complaint ¶ 21, at 8.  Baran is also sued only in her official capacity.  <u>See</u> Complaint ¶ 21, at 8.

16.      USCIS is a federal agency within the Department of Homeland Security that reviews immigration petitions.  <u>See</u> Complaint ¶ 22, at 9; Plaintiffs' Exhibit A2.

17.      Duke, Cissna, Baran, and USCIS are all agents of, and represent, the United States.  Complaint ¶ 23, at 9.

---

[2]R-1 status permits "temporary admission to the United States, or extension and maintenance of status, for the purpose of conducting the activities of a religious worker for a period not to exceed five years."  8 C.F.R. § 214.2(r)(1).

## 2.    **The Timeline of Events.**

18.    In 2011, UDV filed an I-129 nonimmigrant R-1 petition[3] on J. Garcia's behalf, which USCIS approved.  <u>See</u> Motion at 9; Plaintiffs' Exhibit A6 at 2.

19.    In 2014, UDV filed another I-129 nonimmigrant R-1 petition on J. Garcia's behalf to extend his legal status in the United States.  <u>See</u> I-129 Petition for a Nonimmigrant Worker at 1, filed with USCIS December 3, 2014 (Receipt No. WAC-15-043-50803), in file November 30, 2017 (Docs. 13-7 and 13-8)("Plaintiffs' Exhibit B1")

20.    USCIS approved this petition on December 16, 2015.  <u>See</u> Approval Notice for I-129 Petition for a Nonimmigrant Worker at 1 (dated December 16, 2015)(WAC-15-043-50803), in file November 30, 2017 (Doc. 13-13)("Plaintiffs' Exhibit B6").

21.    USCIS originally intended to deny one or both of UDV's R-1 petitions, because J. Garcia is neither financially compensated nor part of an established missionary program.  <u>See</u> Notice of Intent to Deny at 2-3 (dated July 31, 2012)(Receipt No. WAC-12-052-50599), in file November 30, 2017 (Doc. 13-4)("Plaintiffs' Exhibit A4"); Notice of Intent to Deny at 2-3 (dated October 15, 2015)(Receipt No. WAC-15-043-50803), in file November 30, 2017 (Doc. 13-11)("Plaintiffs' Exhibit B4").  <u>See</u> <u>also</u> 8 C.F.R. 214.2(r)(11)(i)("Initial evidence [supporting an R-1 petition] must state how the petitioner intends to compensate the alien, including specific monetary or in-kind compensation, or whether the alien intends to be self-supporting."); 8 C.F.R. 214.2(r)(11)(ii)(A)("If the alien will be self-supporting, the petitioner must submit documentation establishing that the position the alien will hold is part of an established program

---

[3]An I-129 Petition for a Nonimmigrant Worker is a USCIS form used to file for, among other things, R-1 status.    <u>See</u>    I-129,  Petition  for  a  Nonimmigrant  Worker https://www.uscis.gov/i-129 (last visited December 12, 2017).

for temporary, uncompensated missionary work, which is part of a broader international program of missionary work sponsored by the denomination."

22.     An important aspect of UDV's theology, however, is non-compensation of its ministers.  See Motion at 2; Plaintiffs' Exhibit A1.

23.     USCIS granted at least one of these R-1 petitions despite its regulations by giving J. Garcia an exemption under RFRA, 42 U.S.C. § 2000bb-1(a)-(b).  See Plaintiffs' Exhibits A5-A6.

24.     On July 1, 2016, UDV filed an I-360 Petition for Religious Worker on J. Garcia's behalf.  See I-360 Petition for Religious Worker at 1, filed with USCIS July 1, 2016 (Receipt No. WAC-16-905-31925), in file November 30, 2017 (Doc. 13-20)("Plaintiffs' Exhibit D1").

25.     This petition is currently pending, although USCIS has issued a notice of intent to deny it.[4]  (dated July 31, 2017)(Receipt No. WAC-16-905-31925), in file November 30, 2017 (Doc. 13-21)("Plaintiffs' Exhibit D2").

26.     USCIS stated in its notice of intent to deny that it intends to deny this I-360 petition because J. Garcia is not a compensated minister.  See Plaintiffs' Exhibit D2 at 3.

27.     If granted, the I-360 petition would not give J. Garcia legal status in the United States, but it would permit him "to apply for adjustment of status within the United States." Defendants' Response to Plaintiffs' Motion For Temporary Restraining Order and/or Preliminary Injunctive Relief at 11, filed November 30, 2017 (Doc. 12)("Response").

_____

[4]While the Motion was pending, the Court received a document stating that USCIS "reopened . . . or reconsidered the decision previously issued on [Garcia's] case.  We will notify you in writing when we make a decision on your case."  See Form I-797C, Notice of Action at 1, filed December 11, 2017 (Doc. 16-1)("Notice of Action").  The document does not, however, state what decision USCIS will make regarding the I-360 petition, when USCIS will make it, or if USCIS has changed its reasoning since issuing its notice of intent to deny the I-360 petition. See Notice of Action at 1.  The Court will therefore not attempt to infer any such information from the Notice of Action.

28.     On July 7, 2017, UDV filed a third R-1 petition on J. Garcia's behalf.  See I-129 Petition for a Nonimmigrant Worker at 3, filed with USCIS July 7, 2017 (Receipt No. WAC-17-197-50769), in file November 30, 2017 (Doc. 13-14)("Plaintiffs' Exhibit C1").

29.     USCIS denied this petition, because J. Garcia is not a compensated minister nor does he participate in an established missionary program.  See Denial Decision for I-129 Petition for Nonimmigrant Worker at 5 (dated October 31, 2017)(Receipt No. WAC-17-197-50769), in file November 20, 2017 (Doc. 13-19)("Plaintiffs' Exhibit C5").

30.     If granted, this R-1 petition would have given J. Garcia legal status until November 27, 2017.  See Response at 4; Plaintiffs' Exhibit C1 at 22 ("Petitioner now seeks an extension through November 27, 2017, allowing Petitioner to retain Mr. Garcia as a full-time religious worker for the duration of the period that a beneficiary is allowed to hold R-1 status.").

31.     USCIS also denied D. Garcia and J.H.S.G.'s accompanying applications, because their legal statuses are wholly tied to J. Garcia's.  See Motion at 10.   See also 8 C.F.R. 214.2(r)(4)(ii) ("The spouse and unmarried children under the age of 21 of an R-1 alien may be accompanying or following to join the R–1 alien . . . .").

32.     J. Garcia and his family now have no legal status in the United States.  See Plaintiffs' Exhibit C5 (denying J. Garcia's most recent R-1 petition).

33.     If J. Garcia remains unlawfully present in the United States for more than 180 days and leaves the country, he cannot return for three years.  See 8 U.S.C. § 1182(a)(9)(B)(i)(I).

34.     J. "Garcia's religious duties have also been severely hindered . . . as he has been unable to travel [outside of the United States] to important religious meetings (as required by someone of his degree of responsibility under church law) for fear of being denied entry back into the United States."  Reply at 5.  See Tr. at 58:9-15 (Vrapi).

35.     J. Garcia engages in sincere religious exercises on UDV's behalf.  See Second Tr. at 29:15-18 (Bixby)(testifying that J. Garcia is a key religious figure in teaching UDV's oral tradition).

**CONCLUSIONS OF LAW**

The Court will first summarize the procedural background of this case.  The Court will also describe important aspects of the hearings.  The Court will then make conclusions of law.

**PROCEDURAL BACKGROUND**

The Court will summarize the case's progress and discuss the parties' arguments for and against the Motion.

**1.     The Complaint.**

1.     The Plaintiffs assert several claims against the Defendants. First, the Plaintiffs argue that the Defendants have made "a clear governmental directive to this particular Church to change what they believe in in order to obtain an R-1 visa," which the Plaintiffs assert violates the First Amendment to the Constitution of the United States of America.  Complaint ¶ 28, at 10-11.  Next, the Plaintiffs contend that the Defendants erroneously denied J. Garcia's R-1 petition, and that the Court should issue a declaratory judgment saying that the petition should be approved.  See Complaint ¶ 52, at 17.  The Plaintiffs next allege several APA violations, including that the denial of the R-1 petition is arbitrary and capricious, see Complaint ¶ 57, at 17, and that the regulation used to deny the petition is ultra vires, see Complaint ¶ 56 at 17. The Plaintiffs also allege that the Defendants have "unreasonably delayed adjudication of Plaintiffs' I-360 petition."  Complaint ¶ 58, at 17.

2.     The Plaintiffs next request relief under the Mandamus Act, 28 U.S.C. § 1361. The Plaintiffs contend that "Defendants have failed to properly adjudicate Plaintiffs' petitions in

conformity with RFRA," thereby entitling the Plaintiffs to mandamus relief. Complaint ¶ 60, at 18.

3.      Finally, the Plaintiffs allege that "the United States is judicially estopped from taking diametrically opposed positions in relation to Plaintiff UDV. An order of the court estopping the United States and its agents from holding a contrary position than their previous position is therefore warranted." Complaint ¶ 2, at 18.

**2.      <u>The Motion</u>.**

4.      The Plaintiffs move the Court to grant a temporary restraining order and/or a preliminary injunction ordering the Defendants to grant the most recent R-1 petition and to adjudicate the pending I-360 petition within fourteen days of the Court's order. <u>See</u> Motion at 15.    The Plaintiffs first argue that they are likely to prevail on the merits of their claim. <u>See</u> Motion at 12. They contend that the Defendants misunderstand RFRA's application to this case and that the compensation regulation, 8 C.F.R. § 214.2(r)(11)(i)-(ii), is ultra vires. <u>See</u> Motion at 12-13. The Plaintiffs further argue: "Even if the regulation [is] not ultra vires, there still is no compelling interest in advancing the regulation as to this Church when application of this regulation directly impinges on a firmly held belief of the organization." Motion at 13.

5.      The Plaintiffs next assert that they will suffer irreparable injury if the Court does not grant injunctive relief. <u>See</u> Motion at 13. According to the Plaintiffs, if they "accrue more than 180 days of unlawful presence, even if the pending I-360 petition is approved, they will not be able to adjust status in the United States and become permanent residents. They will be forced to leave the United States." Motion at 13. Accordingly, the Plaintiffs argue, UDV would "be left without a minister and the entire United States congregation will be left without a trusted

overseer duly appointed by the highest authority of the church." Motion at 13. The Plaintiffs add that, without legal status, they cannot renew their Florida driver's licenses. Motion at 13.

6. The Plaintiffs continue that the balance of harms favors them. Motion at 14. They argue that the "irreparable injury mentioned above demonstrates that the injury to Plaintiffs far outweighs any administrative harm that an injunction will cause Defendants." Motion at 14. They add that the "only potential interest they could advance by their decision is to adhere strictly to a regulation that has no support in the statute." Motion at 14.

7. Finally, the Plaintiffs contend that granting injunctive relief serves the public interest, because "it restores the public's faith in government officials doing their job properly and in a timely manner and not arbitrarily and capriciously changing long standing positions." Motion at 14. The Plaintiffs briefly add that the Court should waive injunctive relief's bond requirement, and conclude that the Court should order the Defendants to reverse their decision on the R-1 petition and grant it, along with the applications for J. Garcia's family, and order the Defendants to "adjudicate the pending I-360 application within 14 days of the Court's order." Motion at 15.

### 3. **The First Hearing**.

8. The Court held a hearing on November 21, 2017. See Draft Transcript of Motion Proceeding (taken November 21, 2017)("First Tr.").[5] The Plaintiffs did not request a full hearing on the Motion. See First Tr. at 11:4-5 (Vrapi). Rather, the Plaintiffs requested that the Defendants re-open J. Garcia's case, saying that if the Defendants did so, it would "solve[] a lot of TRO type issues." First Tr. at 11:23-24 (Vrapi). The Court asked: "What if I give the Government [un]til the end of the day to figure out what they're going to do?" First Tr. at 19:4-6

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

(Court).  The Plaintiffs replied that such an arrangement was acceptable, and that if the Defendants did not re-open J. Garcia's case, the Plaintiffs would want a full Motion hearing the following week.  See First Tr. at 21:12-25 (Vrapi). The Plaintiffs and the Court agreed that the Court would issue an order giving the Defendants until noon the following day to give notice as to whether they would re-open J. Garcia's R-1 case.  See First Tr. at 29:8-12 (Court, Vrapi).  The Court issued such an order.  See Interim Order on Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief at 1, filed November 21, 2017 (Doc. 7).  The Defendants gave notice that they would not re-open J. Garica's R-1 case.  See Notice of Denial of Request to Reopen Plaintiffs' R-1 Petition at 1, filed November 21, 2017 (Doc. 8). The Court thus set a motion hearing for December 1, 2017.

**4.**      **The Response.**

9.      Between the two hearings, the Defendants filed their response.  See Response at 1. The Defendants first contend that the Plaintiffs' request for injunctive relief is moot.  See Response at 8.   Specifically, the Defendants argue that Garcia's most recent R-1 petition requested only an extension of his legal status until November 27, 2017, and that date has passed.  See Response at 8.  The Defendants thus conclude that there is no live case regarding the R-1 petition.  See Response at 8.

10.      The Defendants next argue that the "plaintiffs seek relief that the Court may not award under the APA."  Response at 8.  The Defendants assert that the APA allows a court to compel agency action only "'to perform a ministerial or non-discretionary act,'" or "'to take action upon a matter without directing how it shall act.'" Response at 8 (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)).  The Defendants accordingly conclude that the

Plaintiffs' request for injunctive relief "contravenes the APA's statutory grant of limited powers of review to federal courts." Response at 10.

11.    Additionally, the Defendants assert that "the Plaintiffs cannot satisfy the Heightened Standard for a Preliminary Injunction." Response at 10. They argue that, "because the Plaintiffs request a disfavored preliminary injunction, this Court must closely examine their claims to ensure that they have clearly and unequivocally shown that a preliminary injunction is indeed necessary." Response at 12.

12.    Finally, the Defendants posit that the Plaintiffs cannot meet any of the preliminary injunction requirements. Response at 12. First, they contend that the Plaintiffs will suffer no immediate irreparable harm absent injunctive relief, because "the only future harm alleged is that, if Mr. Garcia and his family remain in the country without legal status for 180 days, they will be barred from reentering the country for 3 years." Response at 13 (citing 8 U.S.C. § 1182(a)(9)(B)(i)(I)). Second, the Defendants contend that the Plaintiffs "lack a substantial likelihood of prevailing on the merits, as [the Plaintiffs'] request for R-1 relief is moot, [and] this Court cannot compel a particular agency action." Response at 13. Third, the Defendants contend that "the Plaintiffs have not shown that their potential injury outweighs the government's." Response at 16 (citing Lopez v. United States INS, 758 F.2d 1390, 1392 (10th Cir. 1985)(stating that there is "a significant public interest in the enforcement of immigration policies")). Finally, the Defendants assert that "the public interest in the uniform enforcement of immigration policies also outweighs Plaintiffs' asserted public interest in saving taxpayers attorney's fees." Response at 16. The Defendants therefore conclude that the Court should deny the Motion. See Response at 16.

5. **The Second Hearing**.

13.     The Court held the second hearing on December 1, 2017.  See Draft Transcript of Motion Proceeding (taken December 1, 2017)("Second Tr.").[6]  The Plaintiffs began by calling Ty Bixby, a UDV member, to testify.  See Second Tr. at 2:8-9 (Vrapi).  The Defendants objected to any witnesses testifying, arguing that review of this case should be limited to the administrative record under the APA, 5 U.S.C. § 706.  See Second Tr. at 2:12-15 (Chen).  The Court decided that it would hear the evidence, but in issuing its decision and opinion, it would review the APA's applicability.  See Second Tr. at 5:20-25 (Court).  Bixby then testified that he held both religious and administrative positions within UDV.  See Second Tr. at 9:16-21 (Bixby).  Bixby explained that UDV does not believe in compensating its clergy, and that "everything we do for the center is all only [on a] volunteer basis."  Second Tr. at 19:8-9 (Bixby).  Bixby continued that much of UDV's liturgy is transmitted orally, see Second Tr. at 26:15-16 (Bixby), and that J. Garcia is a key religious figure in teaching this oral tradition.  See Second Tr. at 29:15-18 (Bixby).  Bixby added that J. Garcia is the "most experienced" UDV member in the United States, Second Tr. at 31:9 (Bixby), and that J. Garcia "has this knowledge of these teachings that we're acquiring but still need to learn from him,"  Second Tr at 33:18-20 (Bixby).  Bixby continued that the only other people who are J. Garcia's equivalent live in Brazil "and most of them have jobs that require their presence in Brazil in order to [sustain] their families because like I said we don't pay our people so everyone has to work."  Second Tr. at 34:14-17 (Bixby).  According to Bixby, if J. Garcia had to leave the United States it would break the chain of UDV's oral tradition.  See Second Tr. at 35:1-4 (Vrapi, Bixby).

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may contain slightly different page and/or line numbers.

14.     The Plaintiffs then called Gary Lombardo, another UDV member, over the Defendants' objections, to the stand.  <u>See</u> Second Tr. 39:3-13 (Vrapi, Chen).  Lombardo explained that he has both administrative and religious positions in UDV.  <u>See</u> Second Tr. at 39:22-25 (Lombardo).  He testified that "all of the religious positions [in UDV] are fulfilled on a volunteer basis."  Second Tr. at 48:20-21 (Lombardo).

15.     The Court asked the Plaintiffs about irreparable harm.  <u>See</u> Second Tr. at 58:5-6 (Court).  The Plaintiffs responded that

> Mr. Garcia is out of [status;] he could be literally placed in deportation proceedings at any moment.  The second thing is even though he technically can remain here without further penalties until April of 2018, the fact is that he can't travel outside the United States.  He can't fulfill his religious duties.

Second Tr. at 58:9-15 (Vrapi). According to the Plaintiffs, "if the I-360 petition continues to remain un-adjudicated by January 6 of 2018, Mr. Garcia loses his option to adjust [status in] the United States."  Second Tr. at 60:8-10 (Vrapi).

16.     The Defendants began their argument.  <u>See</u> Second Tr. at 77:19 (Genova).  The Defendants first contended that the R-1 claim is moot, because the Plaintiffs requested R-1 status until only November 27, 2017.  <u>See</u> Second Tr. at 78:17-20 (Genova).  Second, the Defendants asserted that the pending I-360 petition is not a reason to grant injunctive relief, because an I-360 petition is "one step removed" from J. Garcia receiving legal status.  Second Tr. at 80:10-13 (Genova).  The Defendants then added that "any claims that plaintiffs are making regarding harm because of removal proceedings . . . [are] unripe until such proceedings are actually initiated." Second Tr. at 83:9-12 (Genova).  Regarding injunctive relief, the Defendants argued that "the Ninth Circuit has recognized that the Government does have this compelling interest in preventing fraud in the immigration system . . . [and] there is a significant public interest in the enforcement of immigration law."  Second Tr. at 84:19-25 (Genova).  The Defendants added

that, "if granted, the I-360 would only permit him to apply for a green card, and that is what would grant him status." Second Tr. at 97:3-5 (Chen).

**6.    The Reply.**

17.    After the second hearing, the Plaintiffs filed a reply. See Plaintiffs' Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief, filed December 7, 2017 (Doc. 14)("Reply"). In the Reply, the Plaintiffs argue that the "Defendants ignore the fact that RFRA provides a separate and distinct cause of action from the APA." Reply at 1 (citing Northern Arapaho Tribe v. Ashe, 925 F. Supp. 2d 1206, 1211 (D. Wyo. 2012)(Johnson, J.)). According to the Plaintiffs, "the APA is not a part of this analysis even if the decision being challenged was a final administrative action because Congress established a separate cause of action under RFRA." Reply at 2. The Plaintiffs contend that the

> Defendants have argued that the Court can only order an agency to act, but not to dictate what action the agency should take. While that may be true in a pure APA review case, the government's argument presumes to negate the authority granted to this court by Congress in cases where the free exercise of religion is implicated . . . . It is proper for the Court to order USCIS to *grant* the petitions and not merely to *act* on the petitions.

Reply at 3 n.3 (emphasis in original).

18.    Next, the Plaintiffs argue that they meet injunctive relief's requirements. See Reply at 3. First, they contend that "a plaintiff satisfies the irreparable harm analysis by alleging a violation of RFRA." Reply at 3. The Plaintiffs then briefly argue that the balancing of injuries and public interest requirements favor them, before delving into the substantial likelihood of success on the merits requirement. See Reply at 5-6. On that point, the Plaintiffs contend that the Defendants are "imposing on the church the impossible choice of giving up what it believes in or giving up who leads it." Reply at 8. According to the Plaintiffs, "the government has made

no attempts at showing it has a compelling interest or that it is employing the least restrictive means in protecting that interest." Reply at 8. The Plaintiffs conclude by arguing that "the government's argument that the court's authority in this matter is limited under the APA flies in the face of RFRA, which the defendants essentially are trying to ignore." Reply at 11.

## ANALYSIS

The Court will outline the generally applicable law. Specifically, the Court will set forth the applicable law regarding TROs, preliminary injunctions, the APA's judicial-review provisions, RFRA, and immigration law.

## LAW REGARDING REQUESTS FOR A TEMPORARY RESTRAINING ORDER

19.     The requirements for the issuance of a TRO are essentially the same as those for the issuance of a preliminary injunction. See Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d 1174, 1181 (D.N.M. 2011)(Browning, J.); 13 Moore's Federal Practice ¶ 65.36(1), at 65-83 (3d ed. 2004). The primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration. See Fed. R. Civ. P. 65(b). In both cases, however, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Leviton Mfg. Co., Inc. v. Nicor, Inc., No. CIV 04-0424, 2007 WL 505796, at *3 (D.N.M. January 8, 2007)(Browning, J.)(citing Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)). See Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d at 1181. The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir.2003)("'In issuing a

preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.'")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)).

20.     To establish its right to preliminary relief under rule 65(b), a moving party must demonstrate that "immediate and irreparable injury, loss, or damage will result" unless the order is issued.  Fed. R. Civ. P. 65(b).  A moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)(citing Munaf v. Geren, 553 U.S. 674, 689-90 (2008)); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)).

21.     In other words, in determining whether to grant injunctive relief, the Court considers the following four factors:

> (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be adverse to the public interest.

Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d at 1181 (citing Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992); Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999)).

## LAW REGARDING PRELIMINARY INJUNCTIONS

22.     "It is well settled that a preliminary injunction is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is clear and unequivocal."

Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001)(internal quotation marks omitted). To show that the extreme remedy of a preliminary injunction should issue, "[a] party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law." N. Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1306 (1984). Before a district court may issue a preliminary injunction pursuant to rule 65, the movant must make four showings: (i) that the movant is likely to "suffer irreparable injury unless the injunction issues"; (ii) that "the threatened injury" to the movant if the court does not issue the preliminary injunction "outweighs whatever damage the proposed injunction may cause the opposing party"; (iii) that "the injunction, if issued, would not be adverse to the public interest"; and (iv) that "there is a substantial likelihood [of success] on the merits." Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992). See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 19 (2008)("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (citing Munaf v. Geren, 553 U.S. 674, 688-89 (2008)).

23.     "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . .'" Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005)(quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). In that vein, the Tenth Circuit has identified the following three specifically disfavored preliminary injunctions: (i) "preliminary injunctions that alter the status quo"; (ii) "mandatory preliminary injunctions," meaning injunctions that compel, rather than prohibit, activity on the part of the enjoined party; and (iii) "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Schrier

v. Univ. of Colo., 427 F.3d at 1258 (internal quotation marks omitted). Accord Westar Energy, Inc. v. Lake, 552 F.3d 1215, 1224 (10th Cir. 2009). In O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975-76 (10th Cir. 2004)(en banc), the Tenth Circuit held that

> courts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.

24.     "[I]n an action for money damages, the district court does not have the power to issue a preliminary injunction . . . ." United States ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 495-96 (4th Cir. 1999)(citing Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 324-25 (1999)). See Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418-20 (8th Cir. 1987)(finding that a preliminary injunction should not issue where a remedy of money damages was available). Federal courts have the inherent equitable power to issue a preliminary injunction only when it is necessary to protect a movant's entitlement to a final equitable remedy. See, e.g., De Beers Consol. Mines v. United States, 325 U.S. 212, 219-23 (1945); Reebok Int'l, Ltd. v. Marnatech Enter., Inc., 970 F.2d 552, 559-60 (9th Cir. 1992).

## LAW REGARDING THE APA'S JUDICIAL REVIEW PROVISIONS

25.     Generally, the Court reviews agency actions under the APA, 5 U.S.C. §§ 701-706. The APA describes the exclusive mechanism -- unless another statute provides an alternative or supplemental mechanism -- by which the federal district courts may review the actions of federal administrative agencies. See Webster v. Doe, 486 U.S. at 607 (Scalia, J., dissenting). "The [APA] makes final agency action for which there is no other adequate remedy in a court subject

to judicial review." Utahns for Better Transp. v. United States Dep't of Transp, 305 F.3d 1152, 1164 (10th Cir. 2002). "Because neither [the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C)] nor [the National Forest Management Act, 16 U.S.C. § 1604(a), (e), (g)(3)(B)] provide a private right of action, courts review final agency action under the APA." Utah Envtl. Cong. v. Bosworth, 443 F.3d 732, 740 (10th Cir. 2006).

26.     The APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). The United States Court of Appeals for the Ninth Circuit has held that, under "5 U.S.C. § 704, federal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy.'" Brem-Air Disposal v. Cohen, 156 F.3d 1002, 1004 (9th Cir. 1998)(O'Scannlain, J.). In that case, the Ninth Circuit held that, "as far as we can tell, every court that has addressed the question has agreed: '[I]f a plaintiff can bring suit against the responsible federal agencies under [a citizen-suit provision], this action precludes an additional suit under the APA.'" Brem-Air Disposal v. Cohen, 156 F.3d at 1005 (alterations in original)(quoting Environmental Defense Fund v. Tidwell, 837 F. Supp. 1344, 1356 (E.D.N.C. 1992)(Dupree, J.)). The Ninth Circuit concluded that, "because the [Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)] citizen-suit provision constitutes an 'adequate remedy,' we lack jurisdiction . . . under the APA." Brem-Air Disposal v. Cohen, 156 F.3d at 1005.

**1.     The APA Does Not Impart Subject-Matter Jurisdiction, but It Waives Sovereign Immunity.**

27.     The APA does not, through § 702,[7] create an independent basis of subject-matter jurisdiction. See Eagle-Picher Indus., Inc. v. United States, 901 F.2d 1530, 1531 (10th Cir.

---

[7] 5 U.S.C. § 702 states in relevant part:

1990). It allows for judicial review of final agency action only if there is also an independent basis for subject-matter jurisdiction. See Colo. Dep't of Soc. Servs. v. Dep't of Health & Human Servs., 558 F. Supp. 337, 339 (D. Colo. 1983)(Matsch, J.). Notably, before a court may review a party's grievance, the party must demonstrate that statutes do not preclude judicial review and that the law does not commit the action to agency discretion. See Heckler v. Chaney, 470 U.S. 821, 828 (1985). Section 702 waives sovereign immunity, and makes clear that suits under the APA are for equitable relief only and not for damages. See 5 U.S.C. § 702.

28. Through 5 U.S.C. § 702, Congress provides "a general waiver of the government's sovereign immunity from injunctive relief." United States v. Murdock Mach. & Eng'g Co. of Utah, 81 F.3d 922, 930 n.8 (10th Cir. 1996). "This waiver is not limited to suits under the Administrative Procedure Act." Simmat v. U.S. Bureau of Prisons, 413 F.3d 1225, 1233 (10th Cir. 2005).

> Whether plaintiffs' claims arise under the APA or common law is also immaterial with respect to the sovereign immunity analysis. Under 5 U.S.C. § 702, the United States waives sovereign immunity as to actions in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.

Gilmore v. Weatherford, 694 F.3d 1160, 1166 n.1 (10th Cir. 2012)(internal citations and quotation marks omitted). See Trudeau v. Fed. Trade Comm'n, 456 F.3d at 186 (holding that "the APA's waiver of sovereign immunity applies to any suit whether under the APA or not");

---

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States.

Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996)(holding the same); Dine

Citizens Against Ruining our Environment v. Jewell, No. CIV 15-0209, 2015 WL 4997207, at

*26 (D.N.M. 2015)(Browning, J.) aff'd 839 F.3d 1276, 1285 (10th Cir. 2016).

      **2.**       **District Courts Must Treat Cases Arising From Agency Actions as Appeals.**

      29.       Pursuant to Olenhouse v. Commodity Credit Corp., "[r]eviews of agency action in

the district courts [under the APA] must be processed as appeals.  In such circumstances the

district court should govern itself by referring to the Federal Rules of Appellate Procedure."  42

F.3d 1560, 1580 (10th Cir. 1994).  See Wyoming v. U.S. Dep't of Interior, 587 F.3d 1245, 1251

n.2 (10th Cir. 2009)(quoting Olenhouse v. Commodity Credit Corp., 42 F.3d at 1580).  District

courts may not entertain motions for summary judgment or any other procedural devices that

shift the appellant's substantial burden -- arbitrary-or-capricious review for questions of fact and

Chevron[8] deference for questions of statutory interpretation -- onto the agency.  See Olenhouse

v. Commodity Credit Corp., 42 F.3d at 1579-80.  The Tenth Circuit has admonished district

courts not to treat suits arising out of agency actions as "separate and independent actions,"

stating:

> The use of motions for summary judgment or so-called motions to affirm permits
> the issues on appeal to be defined by the appellee and invites (even requires) the
> reviewing court to rely on evidence outside the administrative record.  Each of
> these impermissible devices works to the disadvantage of the appellant.  We have
> expressly disapproved of the use of this procedure in administrative appeals in the
> past, and explicitly prohibit it now.
>
>      A district court is not exclusively a trial court.  In addition to its nisi prius
> functions, it must sometimes act as an appellate court.  Reviews of agency action
> in the district courts must be processed as appeals.  In such circumstances the
> district court should govern itself by referring to the Federal Rules of Appellate
> Procedure.  Motions to affirm and motions for summary judgment are
> conceptually incompatible with the very nature and purpose of an appeal.

---

     [8]Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).

Olenhouse v. Commodity Credit Corp., 42 F.3d at 1579-80 (footnotes omitted).  See Dine

Citizens Against Ruining our Environment v. Jewell, No. CIV 15-0209, 2015 WL 4997207, at

*26 (D.N.M. 2015)(Browning, J.).

      **3.**      **The Standard of Review for Factual Issues Is Arbitrary-or-Capricious Review -- Also Known as "Substantial Evidence" Review.**

      30.      Under the APA, a reviewing court must accept an agency's factual determinations

in informal proceedings unless they are "arbitrary[ or] capricious," and, in appeals from formal

proceedings, unless they are "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).

Although these standards appear different, the modern view is that they are the same, and that a

decision is arbitrary and capricious if substantial evidence does not support it.  See Ass'n of Data

Processing Serv. Orgs., Inc. v. Bd. of Govs. of the Fed. Reserve Sys., 745 F.2d 677, 683-84

(D.C. Cir. 1984).  In reviewing a decision under the arbitrary-or-capricious standard, the court

reviews the entire administrative record -- or at least those portions of the record that the parties

provided -- but it may not consider materials outside of the administrative record.  See 5 U.S.C.

§ 706.

> In cases where Congress has provided for judicial review without setting forth the standards to be used or procedures to be followed in conducting that review, the Supreme Court has advised such review shall be confined to the administrative record and, in most cases, no de novo proceedings may be had . . . .

Franklin Sav. Ass'n v. Dir., Office of Thrift Supervision, 934 F.2d 1127, 1137 (10th Cir. 1991).

See Fed. R. App. P. 16 ("The record on review or enforcement of an agency order consists

of . . . the order involved; . . . any findings or report on which it is based; and . . . the pleadings,

evidence, and other parts of the proceedings before the agency."  (emphasis added)).  The court

should not pass judgment on the wisdom or merits of the agency's decision.  See Colo. Envtl.

Coal. v. Dombeck, 185 F.3d 1162, 1172 (10th Cir. 1999)(stating that NEPA prohibits

uninformed actions, but not unwise actions). To fulfill its function under the arbitrary-or-capricious standard of review, however, a reviewing court should engage in a "thorough, probing, in-depth review" of the administrative record. Wyoming v. United States, 279 F.3d 1214, 1238 (10th Cir. 2002)(citation omitted). The Tenth Circuit explained the relevant standard of review as follows:

> In determining whether the agency acted in an arbitrary and capricious manner, we must ensure that the agency decision was based on a consideration of the relevant factors and examine whether there has been a clear error of judgment. We consider an agency decision arbitrary and capricious if

> > the agency . . . relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Colo. Envtl. Coal. v. Dombeck, 185 F.3d at 1167 (omission in original)(citations omitted) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (internal quotation marks omitted). The standard of review requires the district court "to engage in a substantive review of the record to determine if the agency considered relevant factors and articulated a reasoned basis for its conclusions." Olenhouse v. Commodity Credit Corp., 42 F.3d at 1580. While the court may not think up a reasoned basis for the agency's action that the agency did not give, the court should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)(citations omitted). The agency must articulate the same rationale for its findings and conclusions on appeal upon which it relied in its internal proceedings, i.e., the reviewing court is not free -- as it is in some other situations -- to accept or to create new justifications for the agency's action if the agency did not rely upon those justifications in its

internal proceedings. See SEC v. Chenery Corp., 318 U.S. 80 (1943); See Dine Citizens Against Ruining our Environment v. Jewell, No. CIV 15-0209, 2015 WL 4997207, at *27 (D.N.M. 2015)(Browning, J.).

**RELEVANT LAW REGARDING IMMIGRATION AND RELIGOUS WORKERS**

31.    The statutory authority underlying R-1 status for nonimmigrant religious workers, provides as follows:

> **(R)** an alien, and the spouse and children of the alien if accompanying or following to join the alien, who --
>
> > **(i)** for the 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States; and
> >
> > **(ii)** seeks to enter the United States for a period not to exceed 5 years to perform the work described in subclause (I), (II), or (III) of paragraph (27)(C)(ii).

8 U.S.C. § 1101(a)(15)(R)(i)-(ii).

32.    Subclause (I) of 8 U.S.C. § 1101(a)(27)(C)(ii) states that the person "seeks to enter the United States -- solely for the purpose of carrying on the vocation of a minister of that religious denomination."    Essentially, for purposes of this case, the statute provides that, to receive R-1 status, a person must have been a member of an American bona fide nonprofit religious organization for two years, and then seek to enter the United States for up to five years to be a minister of the relevant religious organization. See 8 U.S.C. § 1101(a)(15)(R)(i)-(ii); (27)(C)(ii)(I).

33.    The regulations implementing this statute, however, add additional requirements to receive R-1 status. See 8 C.F.R. § 214.2(r)("This paragraph governs classification of an alien as a nonimmigrant religious worker (R-1)").    Under the relevant regulations, "the petitioner must submit verifiable evidence explaining how the petitioner will compensate the alien or how the

alien will be self-supporting." 8 C.F.R. § 214.2(r)(11). To use the self-supporting option, "the petitioner must submit documentation establishing that the position the alien will hold is part of an established program for temporary, uncompensated missionary work, which is part of a broader international program of missionary work sponsored by the denomination." 8 C.F.R. § 214.2(r)(11)(ii)(A). In short, to receive R-1 status, either the religious organization must compensate the religious worker or the religious worker must be part of an established missionary program.

34. Under the regulations, however, an established missionary program requires, however, that at least one religious worker be compensated. A requirement of an established program states that "foreign workers, whether compensated or uncompensated, have previously participated in R-1 status." 8 C.F.R. § 214.2(r)(11)(ii)(B)(1). The first applicant in a given religious organization therefore cannot apply for R-1 status via an established missionary program, because no one has "previously participated in R-1 status." 8 C.F.R. § 214.2(r)(11)(ii)(B)(1). In other words, under the regulations, with the first applicant, the established missionary program is not yet established. The first applicant in a given religious organization to apply for R-1 status therefore must use the other method of receiving R-1 status - - being compensated. Under the regulations, a religious organization therefore cannot have an established missionary program if it does not compensate any of its religious workers. There will be no first applicant to apply for R-1 status as a compensated worker.

35. While the religious worker may receive R-1 status, the spouse and unmarried children under age 21 of the R-1 holder may receive R-2 status. See 8 C.F.R. § 214.2(r)(4)(ii). "R-2 status is granted for the same period of time and subject to the same limits as the principal, regardless of the time such spouse and children may have spent in the United States in R-2

status." 8 C.F.R. § 214.2(r)(4)(ii)(A). "The primary purpose of the spouse or children coming to the United States must be to join or accompany the principal R-1 alien." 8 C.F.R. § 214.2(r)(4)(ii)(C). In other words, an R-2 holder's status is tied to that of the R-1 holder's.

36. Separate from the R statuses, a person may also petition to be classified as a special immigrant religious worker. See 8 C.F.R. § 204.5(m). This request is called an I-360 petition. See 8 C.F.R. § 204.5(a). To be classified as a special immigrant religious worker, one must "[b]e coming to the United States to work in a full time (average of at least 35 hours per week) compensated position." 8 C.F.R. § 204.5(m)(2)(emphasis added).

37. Congress has created penalties for aliens who are unlawfully present in the United States. See 8 U.S.C. § 1182(a)(9)(B)(i). Relevant here, an alien who "was unlawfully present in the United States for a period of more than 180 days but less than 1 year" and "voluntarily departed the United States," and "again seeks admission within 3 years of the date of such alien's departure or removal . . . is inadmissible." 8 U.S.C. § 1182(a)(9)(B)(i)(I). In short, if an alien unlawfully present in the United States for more than 180 days leaves the country, he or she cannot return for three years. See 8 U.S.C. § 1182(a)(9)(B)(i)(I).

## LAW REGARDING RFRA

38. Under RFRA, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," except that "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling state interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). "Government" is defined in part as "a branch, department, agency, instrumentality, and

official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2(1)(emphasis added).

39. Further, "a person[9] whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."[10] 42 U.S.C. § 2000bb-1(c).[11] Congress therefore has expressly legislated that plaintiffs may sue federal agencies under RFRA. Finally, RFRA applies "to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993." 42 U.S.C. § 2000bb-3(a).

40. The Supreme Court has explained that a plaintiff carries the initial burden of showing a prima facie RFRA case, namely that the United States' action "would (1) substantially burden (2) a sincere (3) religious exercise." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428 (2006)(Roberts, C.J.). After a plaintiff makes such a showing, the burden shifts to the United States to show that "application of the burden to the person (1) is in

---

[9]The Supreme Court has noted that RFRA itself does not define the word "person," and has held that the word "person" as used in RFRA includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2768 (2014). The Supreme Court noted in Burwell v. Hobby Stores, Inc. that it had "entertained RFRA and free-exercise claims brought by nonprofit corporations." 134 S. Ct. at 2768.

[10]Although RFRA uses the term "government," the Supreme Court has held that RFRA applies only to the federal government and not to the states. City of Boerne v. Flores, 521 U.S. 507, 536 (1997).

[11]The Court also notes that, although the statute says a "person" may sue under RFRA, the parties have not discussed whether "person" includes non-citizens generally or non-citizens living outside of the United States. The Court has not been able to find any case or legislative history that discusses this topic. The Court concludes that "persons" in the United States immigration system have RFRA rights. To date, the Defendants have not disputed that proposition. If a "person" is not in or involved in the immigration system, RFRA would not give that "person" any rights against these Defendants.

furtherance of a compelling state interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 428-29. The Supreme Court has clarified that "the burdens at the preliminary injunction stage track the burdens at trial." See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 429.

41.     At least one court has held that "RFRA and the APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims." North Arapaho Tribe v. Ashe, 925 F. Supp. 2d at 1211. The APA states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). RFRA states, however, that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). One court held that this provision "provides an adequate alternative remedy to review under the APA." South Fork Band Council of Western Shoshone of Nevada v. United States Dep't of the Interior, No. 3:08-CV-00616, 2009 WL 73257, at *1 (D. Nev. 2009)(Hicks, J.).

42.     In Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1125 (10th Cir. 2013)(en banc)(Tymkovich, J.), aff'd Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751, 2785 (2014), the plaintiffs sued both under RFRA and under the APA, but moved for a preliminary injunction based only on their RFRA and constitutional claims, which the district court denied. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125. In reversing the district court, the en banc Tenth Circuit did not mention the APA, presumably because the plaintiffs had moved for a

preliminary injunction only under RFRA and their constitutional claims, not under the APA. <u>See</u> <u>Hobby Lobby Stores, Inc. v. Sebelius</u>, 723 F.3d at 1125. Instead, the Tenth Circuit applied the traditional preliminary injunction test. <u>See</u> <u>Hobby Lobby Stores, Inc. v. Sebelius</u>, 723 F.3d at 1128-47.

43. Other courts have also suggested that the APA and RFRA are distinct. In <u>Catholic Benefits Ass'n LCA v. Burwell</u>, 81 F. Supp. 3d 1269, 1270-71 (W.D.O.K. 2014)(Russell, J.), the plaintiffs moved for a preliminary injunction challenging a provision of the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-13(a)(4), and regulations associated with it. <u>See</u> <u>Catholic Benefits Ass'n LCA v. Burwell</u>, 81 F. Supp. 3d at 1270-71. In that case, the plaintiffs made claims both under the APA and under RFRA. <u>See</u> <u>Catholic Benefits Ass'n LCA v. Burwell</u>, 81 F. Supp. 3d at 1271. In granting a preliminary injunction, the court ruled that, "because the Court has found that Plaintiffs have shown a likelihood of success on the merits under RFRA, the Court declines to address their claims under the Establishment Clause and the APA." <u>Catholic Benefits Ass'n LCA v. Burwell</u>, 81 F. Supp. 3d at 1276. <u>See</u> <u>Diocese of Cheyenne v. Sebelius</u>, 21 F. Supp. 3d 1215, 1218 n.3 (D. Wyo. 2014)(Skavdahl, J.)("Plaintiff's complaint also alleges causes of action under the Free Exercise Clause of the First Amendment . . . the Establishment Clause of the First Amendment, and the Administrative Procedures Act. However, Plaintiffs limit their request for preliminary injunction to their RFRA claim.").

44. In the First Amendment context, this Court has held that a "First Amendment retaliation claim . . . arises under the Constitution, but it is subject to the APA's procedural provisions." <u>Jarita Mesa Livestock Ass'n v. U.S. Forest Service</u>, 305 F.R.D. 256, 270-71 (D.N.M. 2015)(Browning, J.). The Court reasoned that "'while a right to judicial review of

agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless specifically excluded.'" Jarita Mesa Livestock Ass'n v. U.S. Forest Service, 305 F.R.D. at 271 (quoting Webster v. Doe, 486 U.S. 592, 607 n* (Scalia, J., dissenting).

45.     The Court concludes that the APA's procedural requirements do not apply to this Motion, because the Motion seeks injunctive relief under RFRA, and not under the APA. Further, the Plaintiffs have a substantial likelihood of success on the merits of their RFRA claim,[12] the Plaintiffs are likely to suffer irreparable injury absent a preliminary injunction, the threatened injury to the Plaintiffs outweighs the injury an injunction could cause the Defendants, and the injunction would not be adverse to the public interest.  Finally, the Plaintiffs have met a disfavored preliminary injunction's heightened requirements.  Because the Court concludes that narrower relief is appropriate than that requested, the Court will grant the Motion in part and deny it in part.

## I.     THE APA'S PROCEDURAL REQUIREMENTS DO NOT APPLY TO THIS MOTION.

46.     The Court concludes that the APA's procedural requirements, including the record rule, do not apply to this Motion.[13]  As at least one other court has held, "RFRA and the

---

[12]Although the Plaintiffs allege both RFRA, see Complaint ¶ 60, at 18, and First Amendment claims, see Complaint ¶ 28, at 10-11 in the Complaint, the Plaintiffs make clear that they only move for injunctive relief based on their RFRA claims.  See Motion at 12 (arguing that the Plaintiffs will likely prevail on the merits of their claim because "the agency misunderstands the application of RFRA"); Reply at 2 ("[I]n a motion seeking injunctive relief under RFRA Plaintiffs have to prove seven things . . . .").

[13]The Court notes that, even if this case were an APA case not involving RFRA, the Motion is one for a preliminary injunction, and the Court does not yet have the administrative record.  In such a situation, the Court has held that

APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims." North Arapaho Tribe v. Ashe, 925 F. Supp. 2d at 1211. The Tenth Circuit and many other courts have handled cases in which a plaintiff asserts both APA and RFRA claims. See, e.g., Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125; Catholic Benefits Ass'n LCA v. Burwell, 81 F. Supp. 3d at 1270. Most notably, in Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125, the plaintiffs sued both under RFRA and under the APA, but moved for a preliminary injunction based only on their constitutional claims and RFRA, which the district court denied. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125. In reversing the district court, the en banc Tenth Circuit did not mention the APA, presumably because the plaintiffs had moved for a preliminary injunction only under constitutional claims and RFRA, and not under the APA. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125. Instead, the Tenth Circuit applied the traditional preliminary injunction test. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1128-47.

---

the Court's ultimate review of this case will be limited to the administrative record, but, as the Court still does not have the administrative record and all parties attach documents outside of it, the Court will not limit its consideration of the Motion to the administrative record, but, rather, will use whatever sources [are] available to it.

Dine Citizens Against Ruining Our Environment v. Jewell, 2015 WL 4997207, at *2. The Tenth Circuit affirmed the Court's preliminary injunction in Dine Citizens Against Ruining Our Environment v. Jewell and noted:

The record before us in this interlocutory appeal is not the final administrative record that will be used to resolve the merits of this case . . . . Based on the record and arguments before us in this appeal, however, Plaintiffs have failed to persuade us the district court abused its discretion in concluding that they have not shown a substantial likelihood of success under the deferential standard of review applicable to judicial review of agency actions.

Dine Citizens Against Ruining Our Environment v. Jewell, 839 F.3d at 1285.

47.     Other courts have also suggested that the APA and RFRA are distinct.   In Catholic Benefits Ass'n LCA v. Burwell, 81 F. Supp. 3d at 1270, the plaintiffs challenged a provision of the Patient Protection and Affordable Care Act, 42 U.S.C. § 300gg-13(a)(4), and accompanying regulations, and moved for a preliminary injunction.   Catholic Benefits Ass'n LCA v. Burwell, 81 F. Supp. 3d at 1270.  In that case, the plaintiffs asserted claims both under the APA and under RFRA.  See 81 F. Supp. 3d at 1271.  In granting a preliminary injunction, the court ruled that, "because the Court has found that Plaintiffs have shown a likelihood of success on the merits under RFRA, the Court declines to address their claims under the Establishment Clause and the APA."  81 F. Supp. 3d at 1276.  See Diocese of Cheyenne v. Sebelius, 21 F. Supp. 3d at 1218 n.3 ("Plaintiff's complaint also alleges causes of action under the Free Exercise Clause of the First Amendment . . . the Establishment Clause of the First Amendment, and the Administrative Procedures Act. However, Plaintiffs limit their request for preliminary injunction to their RFRA claim.").

48.     Here, the Plaintiffs' Complaint asserts claims under both the APA, see Complaint ¶¶ 53-58, at 17, and under RFRA, see Complaint ¶¶ 29-38, at 11-13, as well as under the First Amendment, see Complaint ¶ 28, at 10-11.   The Plaintiffs move, however, for a preliminary injunction based only on their RFRA claims and not on their APA claims.  See Reply at 2 ("In a motion seeking injunctive relief under RFRA Plaintiffs have to prove seven things.")(emphasis added).  Indeed, the Plaintiffs' Motion does not mention the APA.  The Motion is thus like the situation in Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1125, where the plaintiffs sued under the APA and under RFRA, but moved for a preliminary injunction based only on their

RFRA and constitutional claims, not their APA claim.[14]  Hobby Lobby Stores, Inc. v. Sebelius,

723 F.3d at 1125.  When the Court analyzes the Plaintiffs' APA claims on the merits, it will

comply with the APA's procedural requirements, including the record rule requiring review to be

limited to the administrative record.  See 5 U.S.C. § 706.  Because the Plaintiffs bring this

---

[14]The Court has held that a First Amendment retaliation claim "arises under the Constitution, but it is subject to the APA's procedural provisions." Jarita Mesa Livestock Grazing Ass'n v. United States Forest Service, 58 F. Supp. 3d 1191, 1237 (D.N.M. 2015)(Browning, J.). The Court based its holding in part on Justice Scalia's statement that, "[w]hile a right to judicial review of agency action may be created by a separate statutory or constitutional provision, once created it becomes subject to the judicial review provisions of the APA unless specifically excluded." Webster v. Doe, 486 U.S. 592, 607 n* (1988)(Scalia, J., dissenting). The Court's holding and Justice Scalia's statement, however, apply by their terms only when one seeks judicial review of agency action. RFRA clarifies, however, that agency action that burdens the exercise of religion gives rise to a claim for relief and not an administrative appeal. Compare 42 U.S.C. § 2000bb-1(c)("A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."); 42 U.S.C. § 2000bb-2(1)(stating that, for RFRA's purposes, "the term 'government' includes a[n] . . . agency . . . of the United States") with Olenhouse v. Commodity Credit Corp., 42 F.3d at 1580 ("Reviews of agency action in the district courts must be processed as appeals." (emphasis in original)).

        To the extent that RFRA's declaration that someone whose exercise of religion is substantially burdened by agency action has a claim -- and not an administrative appeal -- effectively modifies the APA, such a modification is permissible. The APA states that "Subsequent statute[s] may not be held to supersede or modify [the APA] except to the extent that it does so expressly," 5 U.S.C. § 559. RFRA, however, satisfies that requirement with its statement that it applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993," 42 U.S.C. § 2000b-3. That statement does not mention APA explicitly, but if Congress wanted to require APA modifications to explicitly reference the APA, it knows how to draft such a statute. See 42 U.S.C. sec. 2000bb-3(b) ("Federal statutory law adopted after November 16, 1993, is subject to this chapter unless such law explicitly excludes such application by reference to this chapter." (emphasis added)). The distinction between RFRA claims and administrative appeals provides a potential rationale for other courts' pronouncements that "RFRA and the APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims." Northern Arapahoe Tribe v. Ashe, 925 F. Supp. 2d at 1211. Finally, the Court notes that although, in the context of preliminary injunctions, the Tenth Circuit "analogizes RFRA to a constitutional right," Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146, religious liberty rights under RFRA are not actually constitutional rights. In fact, Congress passed RFRA to give individuals more religious liberty rights than the Constitution requires. See Holt v. Hobbs, 135 S. Ct. 853, 859 (2015).

Motion under only RFRA, however, the Court will analyze it under RFRA and not under the APA. See North Arapaho Tribe v. Ashe, 925 F. Supp. 2d at 1211 ("RFRA and the APA provide two distinct causes of action with different standards of review, and therefore this Court rejects the argument that the record rule applies to Plaintiffs' RFRA claims.").

## II. THE PLAINTIFFS' RFRA CLAIM HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

49. The Court concludes that the Plaintiffs' RFRA claim has a substantial likelihood of success on the merits. Under RFRA, the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," except that the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in furtherance of a compelling state interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). Congress defined "Government" in part as "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." 42 U.S.C. § 2000bb-2(1)(emphasis added). Further, "a person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). Congress therefore has expressly legislated that plaintiffs may sue federal agencies under RFRA. See Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. at 2759 (holding that regulations imposed by the United States Department of Health and Human Services violated RFRA).

50. The Supreme Court has explained that a plaintiff carries the initial burden of showing a prima facie RFRA case, namely that federal action "would (1) substantially burden (2) a sincere (3) religious exercise." Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,

546 U.S. at 428.  After a plaintiff makes such a showing, the burden shifts to the United States to show that "application of the burden to the person (1) is in furtherance of a compelling state interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-(b).  See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 428-29.  The Supreme Court has clarified that "the burdens at the preliminary injunction stage track the burdens at trial."  Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 429.

51.    Here, the Plaintiffs have likely shown a prima facie RFRA case.  J. Garcia engages in the sincere religious exercise of teaching UDV's oral liturgy.  See FOF ¶ 35.  The Court heard Bixby's testimony, who explained that much of UDV's liturgy is transmitted orally, see Second Tr. at 26:15-16 (Bixby); FOF ¶ 3, and that J. Garcia is a key religious figure in teaching this oral tradition, see Second Tr. at 29:15-18 (Bixby); FOF ¶ 6.  A key part of this sincere religious exercise is serving as a minister on a volunteer basis, because an important aspect of UDV's theology is non-compensation of its ministers.  See Motion at 2; Second Tr. at 48:20-21 (Lombardo)("All of the religious positions [in UDV] are fulfilled on a volunteer basis."); FOF ¶ 2.

52.    Finally, the Plaintiffs have likely shown that government action substantially burdens UDV and J. Garcia's religious exercise.  The Tenth Circuit has held that

> a government act imposes a "substantial burden" on religious exercise if it: (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent . . . to engage in conduct contrary to a sincerely held religious belief."

Hobby Lobby Stores, Inc., v. Sebelius, 723 F.3d at 1138 (quoting Abdulhaseeb v. Calbone, 600 F.3d 1301, 1315 (10th Cir. 2010)).

53.     USCIS denied J. Garcia's most recent R-1 petition, because J. Garcia is not a compensated minister nor does he participate in an established missionary program.  See FOF ¶ 29.[15]  UDV's theology does not, however, permit it to compensate any of its ministers, and an established missionary program requires that at least one religious worker, at some point, be compensated.  See Motion at 2; FOF ¶ 22; COL ¶ 34.   In essence, the Defendants are preventing J. Garcia from teaching UDV's oral tradition to UDV's American members, because UDV does not believe in compensating its ministers.  See FOFs ¶¶ 22, 29.   The Defendants' actions therefore "'prevent[] participation in conduct motivated by a sincerely held religious belief,'" and are thus likely a substantial burden on UDV and J. Garcia's sincere religious exercise. Hobby Lobby Stores, Inc., v. Sebelius, 723 F.3d at 1138 (quoting Abdulhaseeb v. Calbone, 600 F.3d at 1315).

54.     Similarly, J. Garcia has a pending I-360 petition, on which the Defendants have issued a notice of intent to deny, but have not yet denied.  See Motion at 9; FOF ¶ 25.  The Defendants originally stated that they intend to deny this I-360 petition for largely the same reasons that they denied the most recent R-1 petition, namely, that J. Garcia does not receive compensation from UDV.  See Motion at 9; FOF ¶ 26.  A denial of this I-360 petition would therefore likely substantially burden UDV's and J. Garcia's sincere religious exercise just like the denial of the R-1 petition would burden the exercise of their religion.

55.     The Defendants protest that "any harm from the pending adjudication of the Form I-360 currently is speculative, because the Form I-360 does not in itself grant lawful status.  Mr. Garcia would still need to file evidence that he meets the prerequisites for legal permanent residency."  Response at 3; FOF ¶ 27.  The Defendants admit, however, that J. Garcia needs the

---

[15]USCIS also denied D. Garcia and J.H.S.G.'s accompanying applications, because their legal statuses are wholly tied to J. Garcia's.  See Motion at 10; FOF ¶ 31.

I-360 petition approved before applying for lawful permanent residency.  See Response at 3 ("The Form I-360 adjudication is thus one step removed from the relief that he is seeking."); FOF ¶ 27.  The test is not whether the I-360 grants J. Garcia legal status, but, rather, whether denying the I-360 substantially burdens a sincere religious exercise.  See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 428.  Denying the I-360 petition would substantially burden both UDV's and J. Garcia's sincere religious exercises, because it would cut off J. Garcia's pending application that could ultimately lead to obtaining legal status.

56.     After a plaintiff shows a prima facie RFRA case, the burden shifts to the United States entity to show that "application of the burden to the person (1) is in furtherance of a compelling state interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(a)-(b).  See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 428-29.  The Defendants have not made specific arguments regarding how they might meet this burden.  They have alleged that the "Plaintiffs have not shown a substantial likelihood of success on the merits of their RFRA claims" and have mentioned that the Defendants have an interest in preventing immigration fraud, noting that before regulations enacted in 2008, "one-third of religious worker petitions and applications were fraudulent."  Response at 15-16.  This information is insufficient.  The compelling-interest and least-restrictive-means standard "requires that we 'look beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize the asserted harm of granting specific exemptions to particular religious claimants.'"  Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1143 (quoting Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 431).  Past fraudulent immigration petitions do not show "harm of granting

specific exemptions to particular religious claimants," that is, to UDV and to J. Garcia specifically. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1143.

57.     While preventing immigration fraud is likely a compelling state interest, the Defendants have made no arguments regarding why their regulations requiring ministers to be compensated are the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a)-(b). The Court cannot discern why compelling ministers to be compensated is the least restrictive means of preventing immigration fraud particularly where there are no allegations of fraud here. Because the Defendants have not met this burden, the Court concludes that Plaintiffs' RFRA claim has a substantial likelihood of success on the merits.

## III.     THE PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE INJURY ABSENT A PRELIMINARY INJUNCTION.

58.     The Court concludes that the Plaintiffs have satisfied the irreparable harm factor. "We have explicitly held -- by analogy to First Amendment cases -- that establishing a likely RFRA violation satisfies the irreparable harm factor."[16] Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146. Because the Plaintiffs have established a likely RFRA violation as described above, the Plaintiffs have satisfied the irreparable harm factor. "Our case law analogizes RFRA to a constitutional right." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145 (quoting Heideman v. S. Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003)). The Defendants have severely

---

[16]To be clear, the Court analyzes this Motion under RFRA, not technically under the Constitution itself. The irreparable harm analysis refers to irreparable harm due to the Defendants' likely RFRA violations, not to likely constitutional violations.

hindered J. Garcia's exercise of his religious duties because, "he has been unable to travel [outside of the United States] to important religious meetings (as required by someone of his degree of responsibility under church law) for fear of being denied entry back into the United States." Reply at 5; FOF ¶ 34. See Tr. at 58:9-15 (Vrapi). J. Garcia's inability to engage in sincerely held religious exercises is great irreparable harm.[17]

## IV. THE THREATENED INJURY TO THE PLAINTIFFS OUTWEIGHS THE INJURY AN INJUNCTION COULD CAUSE THE DEFENDANTS.

59. The Court concludes that the threatened injury to the Plaintiffs outweighs the injury an injunction could cause the Defendants. "'When [a] law . . . is likely unconstitutional, the[] interests [of those the government represents, such as voters,] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected.'" Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145 (quoting Awad v. Ziriax, 670 F.3d 1111, 1131-32 (10th Cir. 2012))(alterations in Hobby Lobby Stores, Inc., v. Sebelius). "This is likewise true here since RFRA is no ordinary statute." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146. "Our case law analogizes RFRA to a constitutional right." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146. In other words, the Tenth Circuit analogizes a RFRA violation to a constitutional violation, and a likely constitutional violation means that the government's interests do not outweigh a plaintiff's. Because the Court concludes above that the Plaintiffs' RFRA claim is likely to succeed on the merits, the Court concludes that the balance of harms factor favors the Plaintiffs.

60. Absent an injunction, J. Garcia will not be able to fulfill his religious duties. See FOF ¶ 34. The Defendants have severely hindered J. Garcia's exercise of his religious duties,

---

[17]The Court understands that J. Garcia may have other irreparable harms, such as being unable to travel domestically due to not having a valid driver's license. See Motion at 13. The Court is unsure, however, as to the exact date on which J. Garcia's driver's license expired or will expire because the record does not specifically discuss this information. The Court will therefore not rule on this fact.

because "he has been unable to travel [outside of the United States] to important religious meetings (as required by someone of his degree of responsibility under church law) for fear of being denied entry back into the United States." Reply at 5. See Tr. at 58:9-15 (Vrapi); FOF ¶ 34. J. Garcia's inability to engage in sincerely held religious exercises is great irreparable harm, which an injunction could prevent. See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145-46. Conversely, an injunction's harm to the Defendants would consist of compelling them to adjudicate only one specific R-1 petition and to adjudicate only one specific I-360 petition. An injunction in this case would not prevent the Defendants from continuing to generally enforce immigration laws and regulations. The Court concludes that preventing J. Garcia's continued injury of being unable to engage in sincerely held religious exercises outweighs the harm of compelling the Defendants to adjudicate two petitions.

## V. A PRELIMINARY INJUNCTION WOULD NOT BE ADVERSE TO THE PUBLIC INTEREST.

61. The Court concludes that granting an injunction would not be adverse to the public interest. "'[I]t is always in the public interest to prevent the violation of a party's constitutional rights.'" Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1147 (quoting Awad v. Ziriax, 670 F.3d at 1132). "Although RFRA violations are not constitutional violations, Congress has given RFRA similar importance by subjecting all subsequent congressional enactments to a strict scrutiny standard of review unless those enactments explicitly exclude themselves from RFRA." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1147. For these reasons, the Tenth Circuit held that, "[b]ecause [the plaintiffs] have demonstrated a likely violation of their RFRA rights, an injunction would be in the public interest." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1147. The Court therefore concludes that, because the

Plaintiffs here "have demonstrated a likely violation of their RFRA rights, an injunction would be in the public interest." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1147.

## VI. THE PLAINTIFFS HAVE MET THE DISFAVORED PRELIMINARY INJUNCTION'S HEIGHTENED REQUIREMENTS.

62. The Court concludes that the Plaintiffs have met the heightened disfavored preliminary injunction requirements. The Tenth Circuit has identified the following three specifically disfavored preliminary injunctions: (i) "preliminary injunctions that alter the status quo"; (ii) "mandatory preliminary injunctions," meaning injunctions that compel, rather than prohibit, activity on the part of the enjoined party; and (iii) "preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." Schrier v. Univ. of Colo., 427 F.3d at 1258 (internal quotation marks omitted). In O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d at 975-76, the Tenth Circuit held that

> courts in this Circuit must recognize that any preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course. Furthermore, because a historically disfavored preliminary injunction operates outside of the normal parameters for interim relief, movants seeking such an injunction are not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits standard. Instead, a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard.[18]

63. Here, the Plaintiffs request an injunction that would "order the Defendants to reverse their decision, to grant the R-1 petition and accompanying extension by family members

---

[18]The Tenth Circuit no longer has a "modified likelihood-of-success-on-the-merits standard," and the Court does not use one in this opinion. See Dine Citizens Against Ruining Our Environment v. Jewell, 839 F.3d 1276, 1282 (10th Cir. 2016)(holding that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible"). The Court is careful to require that all four prongs of the preliminary injunction test are met.

and to adjudicate the pending I-360 petition within 14 days of the Court's order." Motion at 15. These two orders are disfavored, because they would be "mandatory preliminary injunctions," meaning injunctions that compel, rather than prohibit, activity on the enjoined party's part. Schrier v. Univ. of Colo., 427 F.3d at 1258. These requests, therefore, must be "more closely scrutinized," and the Plaintiffs "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d at 975-76.

64. The Court concludes, upon close scrutiny, that the Plaintiffs have made a strong showing regarding all four preliminary requirements, especially the likelihood-of-success-on-the-merits and balance-of-harms requirements. Regarding the merits, the Defendants have not specifically demonstrated how they might meet their compelling-interest and least-restrictive-means burden. See 42 U.S.C. § 2000bb-1(a)-(b). Nevertheless, the Court has independently considered how the Defendants might specifically meet this burden. The compelling-interest and least-restrictive-means standard "requires that we 'look beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize the asserted harm of granting specific exemptions to particular religious claimants.'" Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1143 (quoting Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. at 431). The Defendants allege that they have an interest in preventing immigration fraud and that there have been fraudulent religious worker petitions. See Response at 15-16. Past fraudulent immigration petitions do not, however, show "harm of granting specific exemptions to particular religious claimants," that is, to UDV and to J. Garcia specifically. Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1143.

65.     Further, the Plaintiffs have made a strong showing regarding the balance-of-harms requirement.  "Our case law analogizes RFRA to a constitutional right."  Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146.   "'When [a] law . . . is likely unconstitutional, the[] interests [of those the government represents, such as voters] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected.'"  Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145 (quoting Awad v. Ziriax, 670 F.3d 1111, 1131-32 (10th Cir. 2012))(alterations in original).   "This is likewise true here since RFRA is no ordinary statute."  Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146.  In other words, the Tenth Circuit analogizes a RFRA violation to a constitutional violation, and a likely constitutional violation means that the government's interests do not outweigh a plaintiff's.  See Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145-46.  Because the Court concludes above that the Plaintiffs' RFRA claim is likely to succeed on the merits, the Court concludes that the balance of harms factor favors the Plaintiffs.  The inability to engage in sincerely held religious exercises is a great harm.  The Defendants will suffer minimal inconvenience if the Court issues a mandatory injunction.  The Court therefore concludes that the Plaintiffs have met a disfavored preliminary injunction's heightened requirements.

66.     Although the Court prefers to grant only prohibitory, rather than mandatory, relief at the preliminary injunction stage, this case's circumstances meet the heightened standards of mandatory relief.  J. Garcia presently does not have immigration status in the United States.  See Reply at 5; FOF ¶ 32.  Because of his lack of legal status, J. "Garcia's religious duties have also been severely hindered . . . as he has been unable to travel to important religious meetings (as required by someone of his degree of responsibility under church law) for fear of being denied entry back into the United States."  Reply at 5.  See FOF ¶ 34.  Not only does his inability to

attend religious meetings injure him, it injures UDV, because neither can engage in sincere religious exercises. UDV's and J. Garcia's inability to engage in sincerely held religious exercises is great harm. "Our case law analogizes RFRA to a constitutional right." Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1146. "'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d at 1145 (quoting Heideman v. S. Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003)). The Court will therefore grant a mandatory injunction to prevent this irreparable injury. To that end, the Court will require the Defendants to reconsider the Plaintiffs' R-1 petition -- with the Plaintiffs' requested date modification -- without applying 8 C.F.R. § 214.2(r)(11), because applying that regulation to the Plaintiffs' R-1 petition likely violates RFRA.[19] The Court will also require the Defendants to adjudicate the Plaintiffs' pending I-360 petition without applying 8 C.F.R. § 204.5(m)(10), because applying that regulation to the Plaintiffs' I-360 petition likely violates RFRA.[20] The Court will not order the

---

[19]The parties do not seem to contradict that, although an I-360 petition would not give J. Garcia legal status, J. Garcia needs the petition granted so that he may apply for lawful permanent residency. See Response at 3 ("The Form I-360 does not in itself grant lawful status. Mr. Garcia would still need to file evidence that he meets the prerequisites for legal permanent residency."); Motion at 13 ("If they accrue more than 180 days of unlawful presence, even if the pending I-360 petition is approved, they will not be able to adjust status in the United States and become permanent residents"). For this reason, as well as those stated above, the Court will require the Defendants to adjudicate the I-360 petition in light of RFRA.

[20]The Court notes that, while the Plaintiffs argue that J. Garcia will be unable to adjust his immigration status on January 6, 2018, which is 180 days after J. Garcia's R-1 status expired, see Reply at 5, see also 8 U.S.C. § 1182(a)(9)(B)(i)(I)(stating that an alien who "was unlawfully present in the United States for a period of more than 180 days but less than 1 year" and who voluntarily departed the United States is inadmissible for three years), § 1182(a)(9)(B)(iv) provides that "the period of time specified in clause (i)(I) shall be tolled during the pendency of" a "nonfrivolous application for a change or extension of status" that was filed before the date of expiration of the period of stay authorized" by a lawfully admitted alien who has not been employed without authorization in the United States," 8 U.S.C. § 1182(a)(9)(B)(iv). That mandatory tolling may be available to J. Garcia.

Defendants to make any particular decision on either petition, because it is not willing to impose upon federal agencies its judgment regarding discretionary decisions; agency discretion, however, does not permit agencies to ignore RFRA.

67.     Finally, the Court will require the Plaintiffs to post a bond.  Rule 65(c) states: "The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. Rule Civ. P. 65(c).  "Trial courts have wide discretion under Rule 65(c) in determining whether to require security."  RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1215 (10th Cir. 2009)(internal quotation marks omitted).  The Plaintiffs have requested that the Court waive bond, see Motion at 15, and the Defendants have not said anything to the contrary.  The Court could probably not require the Plaintiffs to post bond, and no one would complain.  Given rule 65(c)'s mandatory language, however, the Court is reluctant to not require any bond.  See Guidance Endodontics, LLC v. Dentsply Intern., Inc., No. CIV 08-1101, 2008 WL 5978899, at *2 (D.N.M. 2008)(Browning, J.)(requiring bond); Navajo Health Foundation-Sage Memorial Hosp., Inc. v. Burwell, 100 F. Supp. 3d 1122, 1191-92 (D.N.M. 2015)(Browning, J.)(not requiring a bond, because doing so "may force [a party] into insolvency").  The Court concludes that the costs and damages will not be great if the Court is wrong in its decision to issue injunctive relief.  The Court will require a bond as security of $250.00.

**IT IS ORDERED** that the Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunctive Relief and Request for Emergency Ex Parte Hearing, filed November 20, 2017 (Doc. 5-1), is granted in part and denied in part.  Defendants Elaine Duke, L. Francis Cissna, Kathy Baran, United States Citizenship and Immigration Services, and the United States

of America are ordered to reconsider Plaintiff Jose Carlos Garcia's R-1 petition -- with the Plaintiffs' requested date modification -- without applying 8 C.F.R. § 214.2(r)(11), because applying that regulation to the Plaintiffs' R-1 petition likely violates RFRA. The Court will also require the Defendants to adjudicate Plaintiff Jose Carlos Garcia's pending I-360 petition without applying 8 C.F.R. § 204.5(m)(10), because applying that regulation to the Plaintiffs' I-360 petition likely violates RFRA. The Court will secure a $250.00 bond payable to the Defendants, which will remain in place for the remainder of the case.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Olsi Vrapi
Noble & Vrapi PA
Albuquerque, New Mexico

   *Attorneys for the Plaintiffs*

James D. Tierney
   Acting United States Attorney
Brandon Fyffe
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and—

Hans Harris Chen
Francesca Genova
Office of Immigration Litigation
Civil Division
United States Department of Justice
Washington, D.C.

   *Attorneys for the Defendants*