# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

O CENTRO ESPIRITA BENEFICENTE UNIÃO
DO VEGETAL IN THE U.S.; JOSE CARLOS
GARCIA;
DANIELLE HOUNSELL SILVA GARCIA, and
J.H.S.G., a minor,

        Plaintiffs,

vs.                                                                                    No. CIV 17-1137 JB\KK

ELAINE DUKE, Acting U.S. Secretary of
Homeland Security;
L. FRANCIS CISSNA, Director of U.S. Citizenship
and Immigration Services;
KATHY BARAN, Director of U.S. Citizenship and
Immigration Services California Service Center;
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, an agency of the
United States, in their official capacity, and
UNITED STATES OF AMERICA,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion for Attorneys' Fees,

Tax, and Costs, filed April 24, 2018 (Doc. 29)("Motion").  The Court held a hearing on August

8, 2018.  The primary issues are: (i) whether time that the Plaintiffs' counsel Mr. Olsi Vrapi

spent in connection with the administrative adjudication of the immigration petitions underlying

the case is compensable; (ii) whether to approve the proposed hourly fee rates of the Plaintiffs'

counsel, which are higher than the hourly rates the Plaintiffs' counsel billed to the Plaintiffs, and

are higher than the prevailing market rate, because the Plaintiffs did not provide evidence that the

hourly rates of the Plaintiffs' counsel are reasonable as 42 U.S.C. § 1988 requires; (iii) whether

to discount the paralegal fees to $55.00 an hour; (iv) whether certain alleged costs are

compensable, such as clerical tasks; (v) whether to award fees for hours that would not ordinarily be billed to the client; (vi) whether to award fees for hours billed by Mr. John Boyd and Ms. Nancy Hollander, counsel from the Freedman Boyd Hollander Goldberg Urias & Ward P.A. firm, with whom the Defendants' counsel never had any interactions; (vii) whether to award fees for the Plaintiffs' counsel Ms. Sarah Thomas, whose hourly rate, role in the case, and years of experience are not discussed in the Motion; and (viii) whether fees and costs related to the Plaintiffs' preparation of the Motion are compensable. The Court will award fees as the Motion requests but will reduce the award by: (i) lowering the paralegal fees by $1,230.00; and (ii) lowering the costs by $510.63. The Court will also adjust the total award request by applying the current gross receipts tax rate. Accordingly, the Court will grant in part and deny in part the Motion, and the Court will award fees and costs in the amount of $50,577.48. Gross receipts tax on this amount is $3,982.98. The total award is $54,560.46, and the Defendants shall pay that amount to the Plaintiffs.

## **FACTUAL BACKGROUND**

Plaintiff O Centro Espirita Beneficiente União Do Vegetal in the United States (called "UDV" by its members and the Court) is a Christian spiritualist religious organization. See Complaint for Declaratory Judgment, Injunctive Relief, and Writ of Mandamus ¶ 15, at 7, filed November 14, 2017 (Doc. 1)("Complaint"). Plaintiff Jose Carlos Garcia holds a high-level clerical position in UDV, "akin to a Cardinal of the Catholic Church," and "has been a member and leader in the organization for decades." Complaint ¶ 16, at 7. Plaintiff Danielle Hounsell

Silvia Garcia is his wife.  <u>See</u> Complaint ¶ 17, at 7.  Plaintiff J.H.S.G. is his minor child.  <u>See</u>

Complaint ¶ 18, at 8.  Collectively, they are the Plaintiffs.

**<u>PROCEDURAL BACKGROUND</u>**

This case is about the Defendants' denial of the Plaintiffs' request, in a petition for a

religious visa for Plaintiff Jose Carlos Garcia ("Garcia"), for an exemption under the Religious

Freedom and Restoration Act of 1993 § 3, 42 U.S.C. § 2000bb-1 (2006) ("RFRA").  <u>See</u>

Complaint ¶¶ 1-2, at 1-2.  UDV had twice successfully petitioned for Garcia to obtain a religious

visa ("R-1 visa")[1] and status with the Defendants.  <u>See</u> Motion at 1.  Both petitions were

---

[1]An R-1 visa is available to temporary nonimmigrant religious workers who meet the following definition and fulfill the following requirements outlined by the United States Citizenship and Immigration Services ("USCIS"):

> An R-1 is a foreign national who is coming to the United States temporarily to be employed as a minister or in another religious vocation or occupation at least part time (average of at least 20 hours per week) by:
>
> - A non-profit religious organization in the United States;
>
> - A religious organization that is authorized by a group tax exemption holder to use its group tax exemption; or
>
> - A non-profit religious organization which is affiliated with a religious denomination in the United States.

This visa program is intended for religious workers whose lives are dedicated to religious practices and functions, as distinguished from secular members of the religion.

To qualify, the foreign national must have been a member of a religious denomination having a bona fide non-profit religious organization in the United States for at least two years immediately before the filing of the petition.

approved with an implicit grant of an RFRA exemption, because United States Citizenship and

Immigration Services ("USCIS") regulations require that ministers be compensated, whereas a

central tenet of UDV's faith is the non-compensation of ministers. <u>See</u> Motion at 1. When the

Plaintiffs filed a third petition for an R-1 visa on behalf of Garcia, the Defendant USCIS issued a

request for evidence challenging the compensation issue, as well as issues that had been

foreclosed by the Supreme Court of the United States of America precedent concerning UDV.

<u>See</u> Motion at 1. The Plaintiffs responded requesting an RFRA exemption, and the Defendants

denied the third R-1 petition. <u>See</u> Motion at 1. On July 1, 2016, UDV also filed an I-360[2]

immigrant religious worker visa petition ("I-360 petition") on behalf of Garcia. <u>See</u> Response to

Plaintiffs' Motion for Attorney's Fees at 2, filed May 8, 2018 (Doc. 30)("Response"). USCIS

issued UDV a notice of intent to deny the I-360 petition because of "inconsistencies in UDV's

---

R-1 Temporary Nonimmigrant Religious Workers, United States Citizenship and Immigration Services, https://www.uscis.gov/working-united-states/temporary-workers/r-1-temporary-religious-workers/r-1-temporary-nonimmigrant-religious-workers (last visited Oct. 1, 2018).

[2]An I-360 Petition for Amerasian, Widow(er), or Special Immigrant enables foreign nationals within certain immigrant categories to begin their application for lawful permanent residence. <u>See</u> Green Card for a Religious Worker (Minister or Nonminister), United States Citizenship and Immigration Services, https://www.uscis.gov/greencard/religious-workers (last visited October 1, 2018).

An I-360 may be filed on behalf of religious worker immigrants, as outlined by the USCIS eligibility criteria for the petition. <u>See</u> I-360, Petition for Amerasian, Widow(er), or Special Immigrant, United States Citizenship and Immigration Services, https://www.uscis.gov/i-360 (last visited Oct. 1, 2018).

record" and UDV's failure to satisfy the regulatory compensation requirement[3] pursuant to 8 C.F.R. § 204.5(m)(10). <u>See</u> Response at 2. The I-360 petition was still under consideration when the Plaintiffs brought suit in federal court. <u>See</u> Response at 2. The Plaintiffs asked the Court to: (i) "declare the decision denying the [R-1] petition illegal and order Defendants to vacate the denial and grant the petition"; and (ii) "order Defendants to immediately adjudicate the delayed [I-360] petition." Complaint ¶ 2, at 2.

The Plaintiffs filed their case in the United States District Court for the District of New Mexico on November 14, 2017. <u>See</u> Complaint at 1. On the same day, the Plaintiffs filed the Plaintiffs' Motion for Temporary Restraining Order And/Or Preliminary Injunctive Relief and

---

[3]The USCIS requirements for eligibility for an R-1 religious worker visa include the following:

> Religious workers generally must be compensated. Compensation may include either salaried or non-salaried compensation. The religious organization must show how the religious worker (nonimmigrant or immigrant) will be supported in the United States. USCIS may consider evidence of self-support only for certain nonimmigrant missionaries. For temporary, nonimmigrant religious workers entering in the R-1 category, if self-support is claimed, the petitioner must submit verifiable evidence that he or she is participating in an established program for temporary, uncompensated missionary work within the petitioning organization. The program must be part of a broader, international program of missionary work sponsored by the denomination. For more information about self-support, see 8 CFR 214.2(11)(ii).

> Please note that in all cases, 8 CFR 214.2(r)(13) requires religious workers to be compensated by the religious organization that petitioned for that worker.

"R-1 Temporary Nonimmigrant Religious Workers," United States Citizenship and Immigration Services, https://www.uscis.gov/working-united-states/temporary-workers/r-1-temporary-religious-workers/r-1-temporary-nonimmigrant-religious-workers (last visited Oct. 1, 2018).

Request for Emergency Ex Parte Hearing, filed November 14, 2017 (Doc. 2)("TRO Motion").

In the TRO Motion, the Plaintiffs ask the Court to grant a temporary restraining order ("TRO")

and/or a preliminary injunction ordering the Defendants to grant the most recent R-1 petition

filed on Garcia's behalf, and to adjudicate Garcia's I-360 petition within fourteen days of the

Court's order.  See Motion at 15.  The Court held a hearing on the TRO Motion on November

21, 2017.  See Transcript of Hearing (taken November 21, 2017), filed December 21, 2017 (Doc.

19).  Elaine Duke, L. Francis Cissna, Kathy Baran, USCIS, and the United States of America

(collectively "the Defendants") filed a response in opposition.  See Defendants' Response to

Plaintiffs' Motion for Temporary Restraining Order And/Or Preliminary Injunctive Relief, filed

November 30, 2017 (Doc. 12)("Response to TRO Motion").  The Court held a second hearing on

the motion on December 1, 2017.  See Transcript of Hearing (taken December 1, 2017), filed

December 15, 2017 (Doc. 17).   The Plaintiffs replied.  See Plaintiffs' Reply to Defendants'

Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order And/Or

Preliminary Injunctive Relief, filed December 7, 2017 (Doc. 14)("Reply to TRO Motion").  On

December 15, 2017, the Court issued a Memorandum Opinion and Order granting in part and

denying in part the Plaintiffs' TRO Motion.  See Memorandum Opinion and Order, filed

December 15, 2017 (Doc. 18)("TRO MOO").

In the TRO MOO, the Court considers the following issues: (i) whether the procedural

requirements of the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"), apply to the TRO

Motion; (ii) whether the Plaintiffs' RFRA claim has a substantial likelihood of success on the

merits; (iii) whether the Plaintiffs are likely to suffer irreparable injury absent a preliminary injunction; (iv) whether the threatened injury to the Plaintiffs outweighs the injury an injunction can cause the Defendants; (v) whether the injunction is adverse to the public interest; and (vi) whether the Plaintiffs have met a disfavored preliminary injunction's heightened requirements. See TRO MOO at 1-2. The Court concluded that: (i) the APA's procedural requirements do not apply to the Plaintiffs' TRO Motion, because the TRO Motion seeks injunctive relief under the RFRA and not under the APA; (ii) the Plaintiffs' RFRA claim has a substantial likelihood of success on the merits; (iii) the Plaintiffs are likely to suffer irreparable injury absent a preliminary injunction; (iv) the threatened injury to the Plaintiffs outweighs the injury an injunction can cause the Defendants; (v) the injunction will not be adverse to the public interest; and (vi) the Plaintiffs meet a disfavored preliminary injunction's heightened requirements. See TRO MOO at 2. Ultimately, the Court granted an injunction, requiring the Defendants to reconsider the Plaintiffs' R-1 petition without applying 8 C.F.R. § 204.5(m)(10) -- the compensation requirement which the Defendants applied to the petition when first considered -- because the Court determined that applying that requirement to the Plaintiffs' R-1 petition likely violates RFRA. See TRO MOO at 45. The Court did not order the Defendants to make any particular decision on either the R-1 petition or the I-360 petition, because "it is not willing to impose upon federal agencies its judgment regarding discretionary decisions[.]" TRO MOO at 46. Finally, the Court required the Plaintiffs to post a bond of $250.00 pursuant to rule 65(c) of the Federal Rules of Civil Procedure. See TRO MOO at 46.

Because of the Court's TRO MOO, the Plaintiffs continued to pursue their immigration applications, now exempt from the regulatory compensation requirement that USCIS previously applied. See Response at 3. On November 30, 2017, USCIS issued a notice of intent to deny for UDV's I-360 petition. See Response at 3. On December 20, 2017, USCIS reopened and issued a request for evidence for the Plaintiffs' petition to extend Garcia's R-1 status. See Response at 3. The Plaintiffs responded to the request for evidence and to the notice of intent to deny. See Response at 4. After the Plaintiffs responded to the request for evidence and the notice of intent to deny, USCIS extended Garcia's R-1 visa status and approved UDV's I-360 visa petition. See Response at 4.

In March 2018, the parties reached a resolution, and the Defendants filed an unopposed motion for entry of judgment. See Defendants' Unopposed Motion for Judgment, filed March 23, 2018 (Doc. 26)("Unopposed Motion for Judgment"). In the Unopposed Motion for Judgment, the Defendants stipulate that they provided the Plaintiffs all the relief sought in the suit and therefore request entry of judgment. See Unopposed Motion for Judgment at 2. The Court entered an Order and Judgment, filed March 26, 2018 (Doc. 27). The Court entered Final Judgment that same day. See Final Judgment, filed March 26, 2018 (Doc. 28)("Final Judgment"). The Plaintiffs move for attorneys' fees and costs under 42 U.S.C. § 1988(b) and for taxable costs under rule 54(d) of the Federal Rules of Civil Procedure. See Motion at 1.

1.    **The Plaintiffs' Motion for Attorneys' Fees and Costs**.

In April 2018, the Plaintiffs filed the Motion, requesting $56,599.73 in fees and costs. See Motion at 5. In the Motion, the Plaintiffs seek compensation for attorneys' fees for legal services provided in connection with their responses to the request for evidence and the notice of intent to deny. See Response at 4. The Plaintiffs assert that they are the "prevailing party," because the Court entered Final Judgment in their favor, and that they are entitled to fees and costs under 42 U.S.C. § 1988, and taxable costs under rule 54(d) of the Federal Rules of Civil Procedure. See Motion at 2 (citing Fed. R. Civ. P. 54(d)). The Plaintiffs submit a declaration by the Plaintiffs' counsel, Mr. Olsi Vrapi, including a fee statement with time entries. See Declaration of Olsi Vrapi ¶ 12, at 4 (executed April 24, 2018), filed April 24, 2018 (Doc. 29-1) ("Vrapi Decl."). The Plaintiffs also submit an affidavit by Philip B. Davis, one of the most prominent civil rights attorneys in New Mexico. See Affidavit of Philip B. Davis ¶ 2, at 1 (executed April 18. 2018), filed April 24, 2018 (Doc. 29-2)("Davis Aff.").

The Plaintiffs request $50,455.00 in fees, $3,784.13 in New Mexico gross receipts tax on the fees, $2,195.91 in costs, and $164.69 in gross receipts tax on the costs, for a total claim of $56,599.73. See Vrapi Decl. ¶ 15, at 4-5. The Plaintiffs assert that: (i) the Plaintiffs' counsel, Mr. Vrapi, accrued 108.3 hours at a $300.00 per hour; (ii) paralegal Jessica Norez accrued 1 hour at $150.00 per hour; (iii) paralegal Kelli M. Lopez accrued 56.8 hours at $150.00 per hour; (iv) associate attorney Ms. Thomas accrued 0.9 hours at $200.00 per hour; (v) paralegal Vanessa L. Sanchez accrued 6 hours at $150.00 per hour; (vi) collaborating attorney Ms. Hollander accrued

2.4 hours at $400.00 per hour; and (vii) collaborating attorney Mr. Boyd accrued 4.6 hours at $400.00 per hour.[4]  See Plaintiffs' Exhibit A at 6-14, filed April 24, 2018 (Doc. 29-1)("Plaintiffs' Timekeeping and Expense Tracking Table").  The Plaintiffs also seek costs for copying, postage, filing fees, travel costs, mileage, expert fees, and transcript production, totaling $2,195.91.  Plaintiffs' Timekeeping and Expense Tracking Table at 12.

The Plaintiffs assert that the attorneys' rates are reasonable and appropriate in light of their experience, their reputation, and the case's complexity.  See Motion at 3.  The Plaintiffs further contend that all the work which the Plaintiffs' counsel expended in this case is in furtherance of the overall goals of the relief they sought in the Complaint, which they fully achieved in the Court's Final Judgment.  See Motion at 3.  Mr. Vrapi asserts, in his declaration,

---

[4]While Mr. Boyd and Ms. Hollander report having billed at an hourly rate of $400.00, see Plaintiffs' Timekeeping and Expense Tracking Table at 11, Mr. Vrapi asserts in his declaration: "To the best of my knowledge, Ms. Hollander and Mr. Boyd have charged their clients and routinely received $350 per hour for their legal services."  Vrapi Decl. ¶ 13, at 4.  Mr. Vrapi also asserts that "Plaintiffs are seeking $350 per hour for all attorneys involved as that is the fair market value of the services rendered . . . ."  Vrapi Decl. ¶ 14, at 4.  Mr. Vrapi also asserts, however, that Plaintiffs seek $2,800.00 for legal services rendered by Ms. Hollander and Ms. Boyd . . . ."  Vrapi Decl. ¶ 15, at 5.  The $2,800.00 amount, requested for a total of 7.0 hours of work, suggests an hourly rate of $400.00, as dividing $2,800.00 by 7.0 yields 400.  See Plaintiffs' Timekeeping and Expense Tracking Table at 11.  The Court must, therefore, determine whether Mr. Boyd and Ms. Hollander should be awarded fees at an hourly rate of $350.00 or $400.00.  Although the Plaintiffs' Timekeeping and Expense Tracking Table suggests that Mr. Boyd and Ms. Hollander billed their work at an hourly rate of $400.00, the costs table which Mr. Boyd and Ms. Hollander later submitted reports a rate of $350.00 for both attorneys.  See Detail Transaction File List at 1, filed May 22, 2018 (Doc. 31-2)("Freedman and Boyd Costs Table").  That table reports a total amount for 7.0 hours of work of $2,467.20.  See Freedman and Boyd Costs Table at 1.  Accordingly, the Court determines that Mr. Boyd and Ms. Hollander's requested hourly rate is $350.00 per hour, and that the total amount they request for their services in connection with this litigation is $2,467.20, and not $2,800.00.

that he charges his clients and routinely receives $300.00 per hour for his legal services.  See Vrapi Decl. ¶ 13, at 4.  Mr. Vrapi asserts, however, that the fair market value of the legal services which he rendered on the Plaintiffs' behalf is $350.00 and, therefore, the Plaintiffs should receive $350.00 per hour for legal services rendered.  Mr. Davis asserts, in his declaration, that, in his estimation, an hourly rate of $350.00 for Mr. Vrapi's services is fair and reasonable "insofar as it compares to the market rates for lawyers of comparable skill and experience in the New Mexico legal community."  Davis Decl. ¶ 12, at 5.  Mr. Davis bases his judgment in this regard on his

> personal knowledge of Mr. Vrapi's skill and experience and in particular his highly developed skill and experience in the unique and complex confluence of civil rights and immigration law as he so ably litigated in this case, his reputation in the legal community in New Mexico, and on the current prevailing hourly rates in the New Mexico legal community and [on] hourly rates set by the federal and state district courts in New Mexico in other fee award opinions.

Davis Decl. ¶ 12, at 5.

Mr. Davis concedes that, in his experience, lawyers who have been awarded fees at the hourly rate of $350.00, as Mr. Vrapi requests, are lawyers with experience in the range of fifteen to twenty years, as compared to Mr. Vrapi's eleven years of experience as a lawyer.  See Davis Decl. ¶ 16, at 7.  Mr. Davis asserts, however, that Mr. Vrapi's "unique skills and demonstrable experience" lead to the conclusion that his hourly rate should not be determined simply by looking at the number of years of experience he has.  Davis Decl. ¶ 16, at 7.  By way of comparison, Mr. Davis -- who has been licensed to practice law in the State of New Mexico since 1978 -- offers that his current hourly rate is $425.00 and that, from 2015 through 2017, his

hourly rate was $400.00.  See Davis Decl.  ¶¶ 1, 13, at 1, 5.  Mr. Davis asserts that, twice in

recent years, he has been awarded attorneys' fees at an hourly rate of $400.00, by the Honorable

Clay Campbell, District Judge for the Second Judicial District of New Mexico, and by the

Honorable Sarah Singleton, District Judge for the First Judicial District of New Mexico.  See

Davis Decl.  ¶ 13, at 5-6.  In 2013, Mr. Davis asserts, this Court awarded him his then-current

hourly rate of $375.00 after prevailing on a discovery motion in a federal civil rights case.  See

Davis Decl. ¶ 13, at 6 (citing Knight v. Metzgar, No. CIV 12-0460 JB/ACT at 2, filed June 18,

2014 (Doc. 46)("Clerk's Minutes").  Mr. Davis also cites to New Mexico Foundation for Open

Government v. Corizon Health, No. D-101-CV-2016-01742, Findings of Fact and Conclusions

of Law Regarding Petitioner's Motion for Attorneys' Fees and Costs ¶ 13, at 5-6 (March 7,

2017)(awarding Santa Fe attorney Daniel Yohalem $400.00 per hour in a "novel and complex"

Inspection of Public Records ("IPRA") case), and Valdez v. Herrera, Civ. No. 09-668 JCH/DJS,

2011 WL 13289824 (D.N.M. March 21, 2011)(Herrera, J.)(awarding fees in voter rights

registration case and basing hourly rate determinations for counsel on their years of experience,

i.e., granting an hourly rate of $350.00 for lawyers graduating law school before 1996).  See

Davis Decl. ¶ 13, at 6.

    In addition to a $350.00 hourly rate for all attorneys involved, the Plaintiffs request

$150.00 per hour for paralegal work, as the actual charged rate to the client.  See Vrapi Decl.

¶ 14, at 4.  The Plaintiffs are requesting a $150.00 hourly rate for services that Norez, Lopez, and

Sanchez rendered.  See Plaintiffs' Timekeeping and Expense Tracking Table at 6-14.  Mr. Davis

asserts, in his declaration, that he is aware that Mr. Vrapi's paralegal has skill and experience unique to immigration law that justifies the $150.00 hourly rate, which Mr. Davis acknowledges is "at the high end of the range of rates commanded by law firms for the work of their paralegals in the New Mexico legal community." Davis Decl. ¶ 17, at 7. Mr. Davis's declaration does not name the particular paralegal to whom he refers. <u>See</u> Davis Decl. ¶ 17, at 7.

The Plaintiffs anticipate that the Defendants will contend that the Plaintiffs are not entitled to attorneys' fees for work "done with the agency in connection with the underlying petitions." Motion at 3. The Plaintiffs anticipate that the Defendants' argument will focus on <u>Webb v. Cty. Bd. of Educ.</u>, 471 U.S. 235 (1985), in which the Supreme Court denied attorney's fees expended in connection with a state administrative proceeding that occurred years before the civil rights case was filed, and that was unrelated to the civil rights case before the court. <u>See</u> Motion at 3. The Plaintiffs respond to the anticipated argument by asserting that the Supreme Court has recognized several examples of compensable work expended before litigation. <u>See</u> Motion at 4 (citing <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 561 (1986)(concluding that time spent in administrative proceedings is properly included in attorneys' fees calculations if the work is "useful and of a type ordinarily necessary" to secure the final result obtained from the litigation). The Plaintiffs also assert that even optional administrative proceedings pre-litigation are compensable if they meet the <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u> standard. <u>See</u> Motion at 4. The Plaintiffs argue that the

district court has wide discretion in determining the size of an award, and that this determination should be a fact-based inquiry.  See Motion at 4.

The Plaintiffs contend that the only fees they are seeking for pre-litigation work done in relation to administrative proceedings are for the work done in response to the request for evidence that immediately preceded the Defendants' denial of the third R-1 petition.  See Motion at 4.  Mr. Vrapi clarifies in his declaration that the Plaintiffs are asking for attorneys' fees for administrative work related to their response to the Defendants' second request for evidence on the R-1 petition.  See Vrapi Decl. ¶ 10, at 2.  The Plaintiffs contend that, upon receiving the Defendants' second request for evidence, it was clear to them that the Defendants were denying their case, that litigation would ensue, that they were obligated to respond, and that they needed to make a strong administrative record in preparation for record-bound review under the APA. See Motion at 5.  Mr. Vrapi asserts that, following the Defendants' issuance of this second request for evidence, Mr. Boyd and Ms. Hollander made efforts on the Plaintiffs' behalf to "liaise with the Department of Justice in order to avoid litigation."  Vrapi Decl. ¶ 10, at 2-3.  Mr. Vrapi contends that Mr. Boyd's and Ms. Hollander's expertise and experience were "also invaluable during the briefing of the motion for preliminary injunction filed in this matter."[5]

---

[5]As the Plaintiffs mentioned at the August 8, 2018, hearing on the Motion, see Draft Transcript of Hearing at 6:14-7:7 (taken August 8, 2018)("Tr.")(Vrapi), Mr. Boyd and Ms. Hollander have represented UDV for many years.  See O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 314 F.3d 463 (10th Cir. 2002)(granting UDV's request for a preliminary injunction enjoining the government from enforcing the Controlled Substances Act as it pertains to the importation, possession, and distribution of hoasca for religious ceremonies ); O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft, 342 F.3d 1170 (10th Cir. 2003)(affirming

Vrapi Decl. ¶ 10, at 3.  The Plaintiffs seek $350.00 per hour for the legal services that Mr. Boyd and Ms. Hollander rendered.  See Vrapi Decl. ¶ 13, at 4.[6]

The Plaintiffs argue that the rest of the administrative work for which they seek fees, resulted directly from the litigation over the "requests for evidence that were issued by Defendants after filing of the suit either to moot out the preliminary injunction hearing set by the Court or as a response to the Court's order granting Plaintiffs' motion."  Motion at 4-5.  The Plaintiffs assert that this administrative work was necessary, because, had they failed to respond to the Defendants' numerous requests for evidence, the litigation would have been mooted.  See Motion at 5.  The Plaintiffs argue that, should the administrative work be considered optional, the work is still compensable, because it was "useful and necessary in order to obtain the result which resulted in judgment in favor of Plaintiffs without resorting to going to a full trial on the merits before this Court."  Motion at 5.  The Plaintiffs assert that they do not seek attorneys' fees for administrative work unrelated to or useful to the litigation, nor do they seek attorneys' fees for the filing of the underlying petitions.  See Motion at 5.  Finally, the Plaintiffs assert that they are independently entitled to recover taxable costs under rule 54(d).  See Motion at 5.

_____

the grant of UDV's request for a preliminary injunction); O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft, 389 F.3d 973 (10th Cir. 2004)(holding that courts should issue preliminary injunctions that disturb the status quo only when the traditional balance of interests is strongly in the plaintiffs' favor, and finding that UDV satisfied that demanding test); Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418 (2006)(affirming the United States Court of Appeals for the Tenth Circuit's grant of UDV's request for a preliminary injunction).

[6]See supra n.4.

**2.** **The Defendants' Response to the Plaintiffs' Motion for Attorneys' Fees.**

The Defendants filed their Response to Plaintiffs' Motion for Attorney's Fees, filed May 8, 2018 (Doc. 30)("Response"). The Defendants include two exhibits with their Response: (i) Proposed Attorneys' Fees at 1-7, filed May 8, 2018 (Doc. 30-1); and (ii) Proposed Costs Award at 1-2, filed May 8, 2018 (Doc. 30-2). The Defendants argue that the Court should deny the Motion for "failure to provide sufficient documentation of the reasonableness of fees requested." Response at 1. In the alternative, the Defendants ask the Court to reduce the amount of fees requested by

(1) eliminating fees sought for administrative work that was distinct from Plaintiffs' efforts to vindicate civil rights;

(2) reducing the claimed hourly rate to a reasonable rate;

(3) reducing all clerical work and fees that would not be properly billed to the client;

(4) eliminating fees associated with lawyers and law firms who have not submitted evidence of their own charges and all unauthenticated fees; and

(5) reducing any fees-on-fees request in proportion to the extent that Plaintiffs are unsuccessful on the majority of the disputed fees issues.

Response at 1-2.

First, the Defendants argue that the Plaintiffs are not entitled to approximately half of the fees that they request, because half of the fees derive from work done in relation to the adjudication of immigration petitions in administrative proceedings, which the Defendants argue constitutes work "not performed in this action to enforce Plaintiffs' rights under RFRA." Response at 5. The Defendants interpret Webb v. County Board of Education to suggest that

district courts may award only fees that are "reasonably expended *on the litigation*."  Response at 5 (quoting Webb v. Cty. Bd. of Educ., 471 U.S. at 241 (emphasis in Webb v. Cty. Bd. of Educ.)). The Defendants contend that Congress does not intend fee-shifting statutes "as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client."  Response at 5 (quoting Mares v. Credit Bureau of Raton, 801 F.2d 1197, 1210 (10th Cir. 1986)). The Defendants argue that, while § 1988 does not generally permit the award of attorneys' fees for administrative proceedings, they may be awarded where those administrative proceedings are required before a plaintiff may file a civil rights case in district court.  See Response at 5-6 (citing Webb v. Cty. Bd. of Educ., 471 U.S. at 241).  Here, the Defendants assert, the administrative proceedings in which the Plaintiffs participated were not required before they could file their case in the Court.  See Response at 5.  The Defendants argue that § 1988 permits fees only for the "discrete portion of the work product from administrative proceedings" that is "useful and of a type ordinarily necessary to advance the civil rights litigation."  Response at 5 (quoting N.C. Dep't. of Transp. v. Crest St. Cmty. Council, Inc., 479 U.S. 6, 15 (1986)).  The Defendants argue that administrative proceedings that occur after the challenged right in a case has been vindicated are not compensable.  See Response at 6.

First, the Defendants argue that the Plaintiffs are entitled only to fees in connection with the work necessary to vindicate the RFRA rights that were in question in the litigation.  See Response at 6.  When the Court granted the Plaintiffs preliminary injunctive relief, the

Defendants contend, the Plaintiffs received everything to which they were entitled under the RFRA and could allege no continuing harm to any other statutory RFRA right. <u>See</u> Response at 6-7. The Defendants argue, therefore, that subsequent administrative work that the Plaintiffs' counsel performed to apply for the visa petitions was not necessary "to the vindication of Plaintiffs' RFRA right to apply for a visa petition without having to satisfy the regulatory compensation requirement." Response at 7. The Defendants assert that, because the Court held that it would "not order the Defendants to make any particular decision on either petition," USCIS' administrative adjudication of the Plaintiffs' visa petitions after the Court issued the TRO MOO is not relevant to the litigation of the TRO. <u>See</u> Response at 7. The Defendants assert that, if the Plaintiffs had not satisfied a visa prerequisite other than the regulatory compensation requirement, USCIS would have been justified in denying the Plaintiffs' visa petitions, and yet the Court's TRO MOO would still have vindicated the Plaintiffs' RFRA rights. <u>See</u> Response at 8.

Second, the Defendants argue that the Plaintiffs do not provide evidence of a reasonable hourly rate for their attorney, as § 1988 requires, and so the Court should deny their fee application, or, in the alternative, reduce it. <u>See</u> Response at 9. The Defendants argue that the fee applicant -- the Plaintiffs -- bears the burden of showing that his or her attorneys' hourly rates are reasonable through "satisfactory evidence -- in addition to the attorney's own affidavit -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably compared skill, experience, and reputation." Response at 9. The

Defendants assert that the Supreme Court has stated that novel and complex issues, and special skill and experience of counsel, cannot warrant an increased fee award. <u>See</u> Response at 9. The Defendants argue that where, as here, the litigating attorney's charged rates are incommensurate with comparable lawyers' rates, the United States Court of Appeals for the Tenth Circuit has held that evidence of the rates charged only at the litigating firm and at one other firm is unsatisfactory. <u>See</u> Response at 9-10. The Defendants argue that the Plaintiffs have failed to meet their burden of establishing a reasonable hourly rate for their attorneys, because the only document which the Plaintiffs provide to establish a market rate is an affidavit which admits that $350.00 is the prevailing market rate for lawyers with approximately four to nine years more experience than Mr. Vrapi has. <u>See</u> Response at 10. The Defendants also note that the Plaintiffs do not provide evidence that $350.00 is the prevailing rate for Albuquerque, New Mexico and, accordingly, that the Defendants argue that the Plaintiffs' requested rate of $350.00 is per se unreasonable. <u>See</u> Response at 10.

The Defendants contend that the prevailing market rate on which the Court should rely is $230.00 an hour. <u>See</u> Response at 10. The Defendants reference a study that the State Bar of New Mexico commissioned, which found that $217.00 is the mean hourly rate for New Mexico immigration attorneys and that $238.00 is the median rate. <u>See</u> Response at 10 (citing Research & Polling, Inc., <u>The Economics of Law Practice in New Mexico</u> 49 (May 2017), https://www.nmbar.org/nmbardocs/pubres/reports/2017LawyerCompensationSurvey.pdf). The Defendants also allege, based on the same study, that the mean hourly rate for civil rights

attorneys in New Mexico is $237.00 and that the median hourly rate for New Mexico civil rights attorneys is $227.00.  See Response at 10 (citing Research & Polling, Inc., supra).

The Defendants argue that the Court should reject the Plaintiffs' request for attorneys' fees at a rate of $350.00 an hour, because Mr. Vrapi charged the Plaintiffs $300.00 an hour.  See Response at 10.  To award $50.00 more an hour, the Defendants contend, would award Mr. Vrapi a windfall, contrary to Congress's intentions in enacting § 1988.  See Response at 10.  The Defendants argue that, if a party chooses to pay an attorney more than the prevailing market rate, it cannot recover that difference through fee-shifting.  See Response at 11.  The Defendants assert that Mr. Vrapi has provided no evidence that he has particular experience in RFRA or civil rights litigation, warranting a reduction in his rate.  See Response at 12.  The $150.00 hourly rate for paralegal work, the Defendants argue, should also be discounted, because the Plaintiffs submit no evidence of the market rate for paralegals, and because the Honorable William Lynch, United States Magistrate Judge for the District of New Mexico, has found $150.00 to be a reasonable hourly rate for a law firm partner, not a paralegal.  See Response at 12.  The Defendants also argue that, pursuant to 28 U.S.C. § 1920 and D.N.M. L.R. Civ. 54.2(c), the Court should not award copying and shipping expenses unrelated to court admissions, that the Court should ensure that gross receipts tax is charged properly, and that the Court should not award costs for the "expert" in this litigation.  Response at 12 n.3.

Third, the Defendants also allege that Mr. Vrapi must reduce his hours requested to what he would bill his client, excluding hours that are "excessive, redundant, or otherwise

unnecessary." Response at 13. Additionally, the Defendants contend that clerical tasks such as proofing, organizing files, picking up documents, printing, photocopying, faxing, mailing, and converting documents to PDF format are not recoverable as attorneys' fees. See Response at 13. The Defendants ask the Court to reject all fee requests for clerical work, to reduce hours that the Court deems were not contemporaneously billed, and to reduce or reject fees charged for the following specific entries:

1. 5.2 hours charged for a paralegal's attendance at court hearings;

2. 1.3 hours spent to discuss enforcing the injunction on December 21, 2017, roughly a week before Plaintiffs had even provided any additional information in response to the notice of intent to deny and thus before USCIS had even made its (favorable) decision;

3. 2.0 hours spent on March 11-12, 2018 preparing the hours spreadsheet at issue in the case;

4. 0.4 hours of attorney-billed time for calls for billing questions pre-litigation;

5. 15.8 hours from two paralegals in preparing documents for the court hearing in addition to the seven hours charged to redact documents;

6. 7.0 hours "review[ing] [a] long immigration document," on a "memo to DOJ lawyer re recent issues;" and

7. Similar items from lawyers whose work in the case remains unclarified and unseen.

Response at 13-14 (quoting Plaintiffs' Timekeeping and Expense Tracking Table at 6-14; Proposed Attorneys' Fees at 1-7).

Fourth, the Defendants also request that the Court deny all fees for attorneys other than Mr. Vrapi, because, the Defendants argue, the Plaintiffs have not provided sufficient evidence of

their billing.  See Response at 14.  About Mr. Boyd and Ms. Hollander, the Defendants assert that they have not submitted declarations and that the spreadsheets regarding their work in this case are too vague to substantiate.  See Response at 14.  Further, the Defendants allege that their counsel of record never interacted with Mr. Boyd or Ms. Hollander.  See Response at 13.  About Ms. Thomas, the Defendants also argue that the Motion fails to discuss Ms. Thomas' hourly rate, role in this case, and years of experience, and that therefore, Ms. Thomas's hourly rate lacks support, and that the Court should reduce or reject her fee request.  See Response at 15.

Finally, the Defendants ask the Court to reject attorneys' fees and costs that the Plaintiffs seek for work done in relation to Plaintiffs' Motion.  See Response at 15.  The Defendants contend that, to the extent that the Defendants are successful in convincing the Court to reduce fees, the Plaintiffs should not receive fees for time spent defending the higher amounts they request.  See Response at 15.  In conclusion, the Defendants request that the Court reduce the Plaintiffs' fees and costs award to $14,784.64.  See Response at 16.

3.     **The Plaintiffs' Reply to the Defendants' Response.**

The Plaintiffs reply to the Defendants in Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Attorneys' Fees, Tax, and Costs, filed May 22, 2018 (Doc. 31)("Reply").  The Plaintiffs include two attachments: (i) a Second Declaration of Olsi Vrapi ¶¶ 1-6, at 1-2 (executed May 22, 2018), filed May 22, 2018 (Doc. 31-1)("Second Vrapi Decl."), and (ii) a Detail Transaction File List at 1, filed May 22, 2018 (Doc. 31-2)("Freedman and Boyd Costs Table").  The Plaintiffs begin by asserting that the work done in connection with the

administrative proceedings is directly related to the litigation and resulted from the Defendants' denials and delayed responses to the Plaintiffs' petitions.  <u>See</u> Reply at 2.  The Plaintiffs also assert that the final result in the case -- such that litigation was terminated -- was not the December 2017, TRO MOO, but, instead, the March 2018, Final Judgment.  <u>See</u> Reply at 2.  The Plaintiffs argue that they are not asking for any fees related to administrative work that was done post-judgment or that are unrelated to the litigation.  <u>See</u> Reply at 2.

As for the reasonableness of fees, the Plaintiffs argue that Mr. Davis' qualifications as an expert on the issue of attorneys' fees in New Mexico are unchallenged and that, in addition to evidence of his own hourly rate, Mr. Davis provided an opinion on the fair market rate for the work conducted.  <u>See</u> Reply at 3.  The Plaintiffs assert that § 1988 is a fee-shifting statute and not a fee reimbursement statute, and so the Plaintiffs may rightly claim $350.00 as the hourly rate for Mr. Vrapi in lieu of the $300.00 he billed to the Plaintiffs.  <u>See</u> Reply at 3.  The Plaintiffs contend that the Defendants both argue that the Plaintiffs cannot ask for $350.00 per hour when they billed only $300.00 per hour -- a fee reimbursement theory -- and that the Plaintiffs should receive what the Defendants believe is the prevailing market rate of $230.00 per hour -- a fee-shifting theory.  <u>See</u> Reply at 3.  The Plaintiffs argue that not all civil rights litigators should be treated equally and that the Court should look at Mr. Vrapi as part of a narrower, more specialized category of the market.  <u>See</u> Reply at 4.

The Plaintiffs next state that all paralegal work submitted was necessary, and that paralegals helped put together 7,000 pages of exhibits with reductions in a short timeframe and

helped prepare administrative filings.  <u>See</u> Reply at 4.  The Plaintiffs also contend that Mr. Boyd and Ms. Hollander both worked on the suit, although they did not enter appearances, and that the statement from their firm, Freedman and Boyd Costs Table, shows the amounts they billed.  <u>See</u> Reply at 4-5.  The Plaintiffs assert that Mr. Boyd's and Ms. Hollander's expertise was instrumental, because they had previously litigated on behalf of UDV on similar RFRA issues.  <u>See</u> Reply at 5.  Finally, the Plaintiffs request a hearing to call witnesses and present further evidence to answer any questions about the propriety of fees claimed, and the involvement of Mr. Boyd and Ms. Hollander.  <u>See</u> Reply at 5.

In Mr. Vrapi's second declaration, he notes that he has represented the Plaintiffs for many years in immigration matters involving RFRA issues.  <u>See</u> Second Vrapi Decl. ¶ 3, at 1.  Mr. Vrapi notes that he has a national reputation for expertise in RFRA issues in immigration law and, to his knowledge, is the only attorney in the State of New Mexico and one of only a few nationally who litigates RFRA/immigration law cases.  <u>See</u> Second Vrapi Decl. ¶ 5, at 2.  Mr. Vrapi also asserts that Ms. Thomas, an associate in his firm, has represented the Plaintiffs in administrative matters for many years and that she handled most of the administrative work in this litigation to a point -- although Mr. Vrapi does not specify what point.  <u>See</u> Second Vrapi Decl. ¶ 4, at 1-2.

Finally, Mr. Vrapi contends that the Plaintiffs have not sought fees for clerical work, and that the paralegal work was necessary to prepare for litigation and for administrative proceedings.  <u>See</u> Second Vrapi Decl. ¶ 6, at 2.  Because of paralegal support, Mr. Vrapi alleges,

he was able to prepare for litigation in a short time and prevent his fees from becoming substantially higher.  See Second Vrapi Decl. ¶ 6, at 2.

### 4. **The Hearing.**

The Court held a hearing on August 8, 2018.  See Draft Transcript of Hearing (taken August 8, 2018)("Tr.").[7]  The Court began by indicating that it is inclined to award close to the hourly rate that the Plaintiffs request.  See Tr. at 3:1-3 (Court).  In support of its inclination, the Court noted that Mr. Vrapi has been a fairly significant civil rights attorney in New Mexico for many years and that the hourly rates for some of the top civil rights attorneys in New Mexico are now over $400.00 per hour.  See Tr. at 3:3-10 (Court).

The Court next noted that $150.00 per hour appears to be high for paralegal rates and stated that it is inclined to award at the top end of what the United States Bankruptcy Court for the District of New Mexico routinely awards for paralegal rates.  See Tr. at 3:20-4:1 (Court). The Court referenced the Modrall Sperling firm, which the Court reviewed in the course of another dispute about paralegal fees and noted that the Modrall Sperling firm bills their paralegals at around $85.00 an hour, which the Court believed to be at the high end of paralegal rates.  See Tr. at 4:2-6 (Court).  The Court stated that it would require justification before awarding paralegal fees at a rate close to $150.00 per hour.  See Tr. at 4:7-9 (Court).  The Court next stated that it is inclined to make some reductions for the clerical tasks, but that some of the administrative costs are likely recoverable.  See Tr. at 4:12-17 (Court).  Finally, the Court

---

[7]The Court's citations to this hearing's transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

indicated that, if the Plaintiffs consulted with Mr. Boyd and Ms. Hollander, the Court would not require much more than their representations that they did that work, to justify awarding fees for the legal services that Mr. Boyd and Ms. Hollander provided in connection with this litigation. See Tr. at 4:22-5:5 (Court). The Court stated its inclination to award fees and costs in an amount closer to the amount the Plaintiffs seek, than to the amount the Defendants propose. See Tr. at 5:6-9 (Court).

The Plaintiffs responded by stating that $150.00 is the hourly rate that Mr. Vrapi's firm bills for paralegals and which the Plaintiffs paid. See Tr. at 5:20-24 (Vrapi). Mr. Vrapi then asked the Court if the Plaintiffs should produce a community survey, and then submit a pleading or notice to the Court describing what paralegal rates are routinely charged in the community. See Tr. at 6:3-7 (Vrapi). The Plaintiffs informed the Court that they would leave determination of the clerical and administrative costs to the Court in its discretion. See Tr. at 6:8-10 (Vrapi).

As for Mr. Boyd's and Ms. Hollander's involvement, the Plaintiffs informed the Court that Mr. Boyd and Ms. Hollander have been representing UDV for many years, are familiar with the organization, and have a liaison at the Department of Justice ("DOJ") with whom they attempt to reach informal resolutions of issues involving UDV. See Tr. at 6:14-7:7 (Vrapi). The Plaintiffs asserted that Ms. Hollander communicated "quite a bit" with the DOJ liaison and reviewed with that liaison what the Plaintiffs planned to file in this case. Tr. at 7:10-13 (Vrapi). The Plaintiffs asserted that Mr. Boyd was involved in briefing, especially on the Reply to TRO Motion. See Tr. at 7:15-17 (Vrapi). The Plaintiffs argued that, because of Mr. Boyd's and Ms.

Hollander's expertise, they were invaluable to the Plaintiffs in the case. <u>See</u> Tr. at 7:17-24 (Vrapi).

The Court then asked the Plaintiffs which fees incurred in connection with administrative work should be compensable and which should not. <u>See</u> Tr. at 8:11-14 (Court). The Plaintiffs responded that the paralegal work for preparation and productions for the hearing should be compensable, as should the administrative work in putting together the fee sheets for the Court's review. <u>See</u> Tr. at 9:1-16 (Vrapi). The Court clarified that its question concerned pre-litigation compensable work. <u>See</u> Tr. at 10:4-5 (Court). The Plaintiffs responded that work which the Defendants' conduct created, and which resulted in litigation, should be compensable. <u>See</u> Tr. at 10:18-20 (Vrapi). Here, the Plaintiffs argue, all the administrative filings are prerequisites of the litigation, because the Plaintiffs could not file suit without a USCIS decision. <u>See</u> Tr. at 12:14-17 (Vrapi). Further, the Plaintiffs argue that the administrative work is important to the litigation, because, if the Plaintiffs had not completed it, the case would have been mooted and denied for failure to prosecute. <u>See</u> Tr. at 12:18-22 (Vrapi).

The Court next asked the Plaintiffs why Mr. Vrapi billed them at $300.00 per hour, when Mr. Vrapi valued his work at $350.00 an hour. <u>See</u> Tr. at 13:16-18 (Court). Mr. Vrapi responded that the Plaintiffs are valued clients and that their relationship with Mr. Vrapi is long, so the rate reflects client service, and not the work's value. <u>See</u> Tr. at 13:19-14:1 (Vrapi). The Court clarified that the Plaintiffs interpret § 1988 as a fee-shifting statute. <u>See</u> Tr. at 14:2-5 (Court).

The Defendants then asserted that "the Government's Number 1 issue" is with the compensability of fees related to the administrative proceedings. Tr. at 14:15-18 (Genova). The Defendants argued that the Plaintiffs' right to be exempt from the regulatory compensation requirement, as the TRO MOO grants, was vindicated, and that administrative proceedings after that vindication involve only the normal adjudication of the Plaintiffs' visa petitions. See Tr. at 14:21-15:3 (Genova). Those proceedings, the Defendants argue, are not related to the present litigation. See Tr. at 16:5 (Genova). The Court then asked the Defendants how it should determine which administrative fees are compensable and which are not. See Tr. at 17:12-23 (Court). The Defendants argued that the Court should award fees directly related to the litigation of the preliminary injunction and the Plaintiffs' requested exemption from the regulatory compensation provision but should not award fees for work done after the Court ruled on the TRO, and should not award fees for work done before the Complaint's filing. See Tr. at 18:5-12 (Genova).

The Defendants next argued that the Plaintiffs have not done enough to substantiate an hourly rate of $350.00 per hour for Mr. Vrapi, when he billed $300.00 per hour, and when attorneys with four to nine years more experience than Mr. Vrapi routinely bill at $350.00 per hour. See Tr. at 18:23-19:7 (Genova). The Defendants asserted that, reviewing the information from the State Bar of New Mexico, Albuquerque has some of the lower rates in the state of New Mexico and in the nation and, on average, immigration and civil rights attorneys bill at $230.00 per hour. See Tr. at 19:7-13 (Genova). The Defendants argued that awarding $350.00 per hour

would be a windfall for the Plaintiffs. See Tr. at 19:14-16 (Genova). According to the Defendants, the "uneconomic choice to hire an attorney that is more than the market rate is not an expense that should be placed on the Government." Tr. at 20:1-3 (Genova). The Defendants asked the Court to award fees at a rate lower than $300.00 per hour, but noted that, even if the Court awards $300.00 per hour fees, the Plaintiffs' award would be reduced by about $18,000.00. See Tr. at 20:7-12 (Genova).

The Defendants allege that they are not aware of a DOJ liaison contact and received no communication from the DOJ. See Tr. at 21:2-5 (Genova). The Defendants argue, therefore, that payment for work performed by Mr. Boyd and Ms. Hollander in connection with the administrative proceedings is not warranted. See Tr. at 21:9-12 (Genova). Regarding Ms. Thomas, the Defendants argue that her fees are related to administrative proceedings, so they should not be compensable, and further that the Defendants do not have information about her length of time as an attorney or what her standard hourly rate might be. See Tr. at 21:13-19 (Genova). Alleging that more than half of the Plaintiffs' requested fees are for the administrative proceedings, and factoring in the reductions for administrative and clerical duties, as well as the proposed fee reductions for the attorneys, the Defendants allege that the Plaintiffs' requested award should be reduced by more than $37,000.00. See Tr. at 21:20-22:1 (Genova).

The Court noted that in civil rights and RFRA cases, the client does not typically pay the full hourly rate, because civil rights attorneys work on a contingent basis, and while they attest to a certain hourly rate for themselves, they do not ask that their clients pay it in full. See Tr. at

20:13-17 (Court).  The Court asked the Defendants where the rate paid by the client is relevant in this situation.  <u>See</u> Tr. at 23:8-11 (Court).  The Defendants respond that, in this case, there is evidence of the prevailing market rate, and that the case law permits the Court to use the prevailing rate as a starting point, as well as to look to what the attorney billed.  <u>See</u> Tr. at 24:1-5 (Genova).  The Defendants suggest that this case, therefore, is distinguishable from cases without a clear market rate.  <u>See</u> Tr. at 24:6-10 (Genova).  The market rate, the Defendants contend, should be a reasonable rate to hire a reasonably competent attorney rather than a particularly high-cost counsel's rate.  <u>See</u> Tr. at 24:14-18 (Genova).

The Plaintiffs then replied that the administrative work was necessary to the litigation, because, although the Court ruled on the TRO, the case was still live before the Court when the administrative proceedings began.  <u>See</u> Tr. at 25:22-26:1 (Vrapi).  The Plaintiffs argue that the administrative work was necessary to avoid further litigation and to ensure that the Plaintiffs' visa petitions were approved, and that the parties did not need to return to the Court for a review of another denied petition.  <u>See</u> Tr. at 26:4-9 (Vrapi).

The Plaintiffs allege that the information for which the Defendants ask in their requests for evidence relate to payroll records and tax return information that would relate to compensation -- a requirement from which the Court determined that the Plaintiffs are exempt.  <u>See</u> Tr. at 26:11-20 (Vrapi); TRO MOO at 45.  The Plaintiffs allege that the requests for evidence and the Plaintiffs' responses to those requests in administrative proceedings arose from

the Defendants' actions in the litigation -- refusing to apply the RFRA exemption to Garcia's third R-1 petition.  See Tr. at 26:24-27:2 (Vrapi).

The Plaintiffs next argue that the Plaintiff's counsel, Mr. Vrapi, is the only person in New Mexico who handles federal court litigation of immigration cases and that he is one of the only people in the nation who handles RFRA/immigration law cases.  See Tr. at 27:12-17 (Vrapi). Accordingly, the Plaintiffs argue that they could not have picked their counsel from a wide selection of counsels offering different hourly rates for their legal services.  See Tr. at 27:22-28:1 (Vrapi).  The Plaintiffs argue that Mr. Vrapi's immigration experience is uniquely valuable and that, given his expertise, the fact that Mr. Vrapi billed the Plaintiffs at a rate of $300.00 per hour does not change the market valuation of his services.  See Tr. at 27:12-17 (Vrapi).  The Plaintiffs also offered to identify the individual in the DOJ with whom Ms. Hollander liaised.  See Tr. at 20:1-3 (Vrapi).

The Court then asked the Plaintiffs how the administrative proceedings that took place after the Court issued the TRO relate to the enforcement or vindication of the Plaintiffs' RFRA rights.  See Tr. at 29:6-17 (Court).  The Plaintiffs responded that their violated right is "the right of the church to choose its minister and how they compensate or don't compensate that minister."  Tr. at 30:18-22 (Vrapi).  The Plaintiffs also alleged that the Defendants, after the Court issued its TRO MOO, issued a new request for evidence on a new issue, namely, the minister's experience, and for payroll records to prove that experience.  See Tr. at 31:10-21 (Vrapi).  The Plaintiffs argue that this request gives rise to the same issue that the Court decided

-- whether a minister must be compensated to be eligible to receive an R-1 visa. See Tr. 30:22-31:2 (Vrapi). The Plaintiffs argue that the Defendants also asked for the recapture of time, so that the petition would not become moot.[8] See Tr. at 31:3-7 (Vrapi). In summary, the Plaintiffs argued, the administrative proceedings are directly related to the litigation and are directly related to the vindication of the Plaintiffs' right. See Tr. at 31:10-13 (Vrapi).

The Defendants responded that § 1988 limits compensable fees and costs to those expended on the present litigation, and that the litigation concluded when the Court directed USCIS to adjudicate the Plaintiffs' R-1 petition without the regulatory compensation requirement. See Tr. at 31:21-32:2 (Genova). The Defendants also argued that the Complaint raises an APA cause of action and not an RFRA cause of action. See Tr. at 32:6-10 (Genova). The Defendants argue that the Complaint does not allege that any of the other USCIS requirements for the grant of an R-1 visa which would allow a minister to enter and remain in the

---

[8]Religious workers who are in the United States on R-1 visas may remain for a period "not to exceed 5 years . . . . In calculating the 5-year maximum period of stay, USCIS has not subtracted time in which the R-1 religious worker was traveling or residing outside of the United States following his or her initial admission in R-1 status." Policy Memorandum, PM-602-0057, at 1, United States Citizenship and Immigration Services (March 8, 2012). Once a nonimmigrant has spent the maximum period of stay authorized by their classification, they are prohibited from having a new petition in the same status filed on their behalf "until they have remained outside of the United States for a specific period of time." Policy Memorandum, PM-602-0057, at 1. Recapture refers to "the period of time spent outside the United States that an alien seeks to have subtracted from their maximum period of stay in R-1 status, as governed by INA 101(a)(15)(R)(ii), in order to have that period of time added back (i.e., 'recaptured') when the alien requests an extension of their R-1 status." Policy Memorandum, PM-602-0057, at 1 n.1. "The policy of allowing recapture is designed to permit a qualifying nonimmigrant to spend the maximum permitted period of time allowed . . . in the United States before he or she is required to spend a specific period outside of the United States in order to file a new petition for the same status." Policy Memorandum, PM-602-0057, at 1 n.2.

United States are RFRA issues. <u>See</u> Tr. at 32:15-18 (Genova). The Defendants allege that, if the Plaintiffs next contend that another USCIS requirement for the grant of an R-1 visa is an RFRA issue, they would have to amend the Complaint or to raise the issue in an entirely separate case and, therefore, the Defendants allege, the Plaintiffs' right is not about having the right to a specific minister, but rather is narrowly focused on the right to be exempt from the USCIS regulatory compensation requirement. <u>See</u> Tr. at 32:20-33:2 (Genova). The Defendants argue that the request for pay stubs constituted a request for proof of full-time employment, which is a separate USCIS requirement. <u>See</u> Tr. at 33:5-10 (Genova). The Defendants concede that the Plaintiffs offered different evidence of full-time employment, but the Defendants allege that the evidence offered was not sufficient for USCIS. <u>See</u> Tr. at 33:8-11 (Genova). The Defendants also contend that USCIS fully complied with the Order. <u>See</u> Tr. at 33:12-13 (Genova). It is USCIS' routine practice, the Defendants contend, that it will rely on a single ground for requesting evidence or for rejecting a visa application rather than listing everything which it finds wrong in an application. <u>See</u> Tr. at 33:18-23 (Genova). The Defendants state that, although USCIS eliminated the compensation requirement, they did not eliminate the two-prior-years-of-full-time-employment-evidence requirement, and although that issue with Garcia's application was not stated earlier, it was not stated because of the USCIS practice of relying on a single ground rather than listing every issue with an application. <u>See</u> Tr. at 33:24-34:2 (Genova). The Defendants assert, ultimately, that the litigation ceased for the purposes of determining what

litigation fees and costs are compensable under § 1988 with the December 15, 2017, TRO MOO. See Tr. at 34:15-18 (Genova).

The Plaintiffs respond that the two-years-experience requirement is directly related to the compensation requirement, because the relevant USCIS regulation provides only three ways to prove that a visa applicant has the necessary two years of R-1 experience: the first way discusses salaried compensation, the second discusses non-salaried compensation, and the third allows for no salary, but the visa applicant presents evidence in his or her own support. See Tr. at 34:22-35:10 (Vrapi). The Plaintiffs contend that, because receiving consistent compensation constitutes proof of a visa applicant having the two requisite years of R-1 experience, the issue whether Garcia had the two years' experience is directly related to the compensation issue on which the Court ruled in the TRO MOO, and to the present litigation. See Tr. at 35:10-17 (Vrapi). Additionally, the Plaintiffs contend that it is not true that USCIS denies only on one ground, and that, if there is more than one ground on which USCIS can deny an application, USCIS lists all the reasons for denial. See Tr. at 35:20-25 (Vrapi).

The Court requested that the Plaintiffs submit Mr. Vrapi's and Ms. Thomas' resumes to the Court. See Tr. at 36:9-10 (Court). The Court also requested that the Plaintiffs call Paul Fish at the Modrall Sperling firm and ascertain what the Modrall Sperling firm bills for their paralegals, and what range for paralegal fees the Bankruptcy Court routinely approves. See Tr. at 36:14-22 (Court). The Court also asked the parties to ascertain what other firms bill for paralegals, including the Peifer, Hanson & Mullins, P.A. firm, and the Rodey, Dickason, Sloan,

Akin & Robb, P.A. firm.  See Tr. at 36:22-37:2 (Court).  The Court also asked for more information from the Plaintiffs regarding the DOJ contact person with whom Ms. Hollander liaised.  See Tr. at 37:9-12 (Court).

The Plaintiffs raised the issue of fees related to the litigation of the attorneys' fees issue, and the Defendants responded that those fees should not be billed to the Defendants.  See Tr. at 38:4-11 (Vrapi, Genova).  The Court asked why the Defendants believed the Court should not award fees for the attorneys' fees litigation.  See Tr. at 38:16-22 (Court).  The Defendants replied that Supreme Court caselaw indicates that fees on fees are not permissible to the extent that the Defendants are able to trim some of that amount based on differences.  See Tr. at 38:23-39:2 (Genova).  In other words, the Defendants stated, the Defendants should not be charged for litigation related to the Plaintiffs seeking higher rates for attorneys' fees and costs.  See Tr. at 39:2-7 (Genova).

The Plaintiffs then provided the Court with the contact information for the DOJ contact, Julie Straus Harris, and an associated address, Federal Programs Branch Room 6118, 950 Pennsylvania Avenue, Washington, D.C. 20530.  See Tr. at 39:13-17 (Vrapi).  The Court then asked that the Defendants call Ms. Harris to ask her if she was contacted and to submit to the Court any additional information obtained from that conversation.  See Tr. at 39:18-22 (Court). The Plaintiffs agreed to this process and informed the Court that Ms. Harris received a FedEx package on September 28, 2017, from Ms. Hollander, and that Ms. Harris and Ms. Hollander exchanged telephone calls before September 28, 2017, regarding this matter.  See Tr. at 40-1:4

(Vrapi).  The Defendants responded that the September 28, 2017, date precedes the filing of the Complaint, and so the Defendants suggest that those conversations may not relate to this litigation.  <u>See</u> Tr. at 40:5-9 (Genova).  The Plaintiffs contend that the September 2017, communications relate to pre-litigation work in anticipation of the ensuing litigation.  <u>See</u> Tr. at 40:10-14 (Vrapi).

The Court reiterated that the Defendants could provide the Court with information following their conversation with Ms. Harris, and then the Court indicated to the parties that it intended to deliver an opinion in the October 2018, timeframe.  <u>See</u> Tr. at 41:4-12 (Court).  This Memorandum Opinion is the opinion that the Court promised to the parties at the August 8, 2018, hearing.

5.    **The Defendants' Response to the Court's Question About DOJ Involvement.**

The Defendants filed the Defendants' Notice in Response to the Court's Question, filed August 13, 2018 (Doc. 38)("Defendants' Notice").  In the Defendants' Notice, the Defendants assert that the DOJ has not designated a liaison who handles RFRA issues for UDV.  <u>See</u> Defendants' Notice at 1.  The Defendants confirm, however, that there is an attorney within the Civil Division, Federal Programs Branch, DOJ, who serves as a point of contact pursuant to the settlement agreement in <u>O Centro Espirita Beneficente Uniao do Vegetal v. Holder</u>, No. CIV 00-1647 JP/RLP (D.N.M. 2010)(Parker, J.).  <u>See</u> Defendants' Notice at 1.  The Defendants also advise the Court that Ms. Hollander contacted the Federal Programs Branch in connection with UDV's R-1 petitions, and she provided the Federal Programs Branch with documentation regarding UDV's position.  <u>See</u> Defendants' Notice at 1-2.  The Defendants also reiterate their

assertion that time Ms. Hollander spent preparing the documentation for the Federal Programs Branch is not compensable under § 1988.  See Defendants' Notice at 2.

6.      **The Plaintiffs' Notice to the Court Regarding Information the Court Requests.**

The Plaintiffs filed the Plaintiffs' Notice to the Court Regarding Information Requested by the Court, filed August 31, 2018 (Doc. 39)("Plaintiffs' Notice").  In the Plaintiffs' Notice, the Plaintiffs respond to the Court's request at the August 8, 2018, hearing for information regarding the paralegal rates which various law firms bill in Albuquerque, and for Mr. Vrapi's and Ms. Thomas' resumes.  See Plaintiffs' Notice at 1.  The Plaintiffs also respond to the Court's August 8, 2018, inquiry regarding Mr. Boyd's and Ms. Hollander's involvement and the DOJ contacts, and state that the Defendants confirmed that information in Defendants' Notice.  See Plaintiffs' Notice at 1.

The Plaintiffs assert that the Modrall Sperling firm currently bills its paralegals at hourly rates between $160.00 and $185.00 per hour for an average rate of $172.50 per hour.  See Plaintiffs' Notice at 2.  The Peifer, Hanson, and Mullins, P.A. firm currently bills its paralegals at hourly rates between $115.00 and $135.00 per hour for an average rate of $125.00 per hour.  See Plaintiffs' Notice at 2.  The Rodey Law Firm currently bills its paralegals at hourly rates between $105.00 and $125.00 per hour for an average rate of $115.00 per hour.  See Plaintiffs' Notice at 2.  The Plaintiffs also submit Mr. Vrapi's resume, filed August 31, 2018 (Doc. 39-1)("Vrapi Resume"), and Ms. Thomas' resume, filed August 31, 2018 (Doc. 39-2)("Thomas Resume").

## LAW REGARDING ATTORNEY'S FEES

The obligation to pay attorneys' fees can arise by statute or contractual agreement.  See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 126 (1974)).  Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, a court's analysis of the fees' reasonableness is similar.  See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d 1533, 1548-50 (10th Cir. 1987)).  The Tenth Circuit has explained that, in evaluating fees that a contract awards, a court may consider "the familiar factors from the federal court cases awarding fees in the statutory context," as Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983), defines them.  United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may

in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000). See New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)(quoting Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996)). See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23. The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. See Lippoldt v. Cole, 468 F.3d at 1225. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). See Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1255-56 (10th Cir. 1998); Ramos v. Lamm,

713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. at 725. Courts may also consider their own knowledge of market rates. See Lippoldt v. Cole, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37. See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.). The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest that the litigation advances. See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992). A court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1548). In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

Time that is compensable under § 1988 is time "reasonably expended on the litigation."

Hensley v. Eckerhart, 461 U.S. at 433.  Time spent on discrete portions of work product from

administrative proceedings may be compensable under § 1988 if the work "was both useful and

of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before

settlement."  Webb v. Cty. Bd. of Educ., 471 U.S. at 243.  Where participation in administrative

proceedings is "crucial to the vindication of [a party's] rights," compensation for those activities

is proper.  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. at 561.

## LAW REGARDING 42 U.S.C. § 1988

"42 U.S.C. § 1983 and its fee-shifting provision, 42 U.S.C. § 1988, seek to encourage

attorneys to litigate civil rights violations."  Copar Pumice Co. v. Morris, No. CIV 07-0079

JB/ACT, 2012 WL 2383667, at *13 (D.N.M. June 13, 2012)(Browning, J.).  Section 1988(b)

provides: "[T]he court, in its discretion, may allow the prevailing party, other than the United

States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  "[T]here are two

elements in deciding whether to award attorney's fees.  First, the party seeking fees must qualify

as a 'prevailing party.'  Second, the fee itself must be 'reasonable.'"  Phelps v. Hamilton,

120 F.3d 1126, 1129 (10th Cir. 1997)(quoting 42 U.S.C. § 1988(b)).

For the purpose of determining attorney's fees, a court may determine that plaintiffs are

"prevailing parties . . . if they succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. at 433 (internal

quotation marks omitted)(citation omitted). In <u>Farrar v. Hobby</u>, 506 U.S. 103 (1992), the Supreme Court later elaborated on this description:

> Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

506 U.S. at 111 (citations omitted)(internal quotation marks omitted)(alterations omitted). The Supreme Court has stated that "this is a generous formulation that brings the plaintiff only across the statutory threshold." <u>Hensley v. Eckerhart</u>, 461 U.S. at 433. <u>See</u> <u>Copar Pumice Co., Inc. v. Morris</u>, 2012 WL 2383667, at *19 (concluding that Copar Pumice qualified as a prevailing party under the "generous formulation" that the Supreme Court set in <u>Hensley v. Eckerhart</u>). The district court must then determine what fee is "reasonable." <u>Hensley v. Eckerhart</u>, 461 U.S. at 433; <u>Obenauf v. Frontier Fin. Grp., Inc.</u>, 785 F. Supp. 2d 1188, 1210 (D.N.M. 2011)(Browning, J.)("Once a court determines that a party is a prevailing party, it must then determine what amount of reasonable attorney's fees should be awarded.").

"To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." <u>Jane L. v. Bangerter</u>, 61 F.3d 1505, 1509 (10th Cir. 1995)(citing <u>Blum</u>

v. Stenson, 465 U.S. at 888; Hensley v. Eckerhart, 461 U.S. at 433). This lodestar figure "provides an objective basis on which to make an initial estimate of the value" of an attorney's services. Hensley v. Eckerhart, 461 U.S. at 433. While the Court "agrees that attorneys' fees should be adequate to attract competent counsel," they should "not be so large that it is a windfall for attorneys -- who should not be encouraged to grow fat off of lackluster cases, or pester the court with trifles in the hopes of capturing large attorneys' fees from dubious claims." Obenauf v. Frontier Financial Group, Inc., 785 F. Supp. 2d at 1214. The prevailing party requesting an award of its fees must submit evidence to support its claim of time spent and rates claimed. See Hensley v. Eckerhart, 461 U.S. at 434. If the evidence is inadequate, the district court may reduce the fee award accordingly. See Hensley v. Eckerhart, 461 U.S. at 434. See also Ysasi v. Brown, 2015 WL 403930, at *14 (reducing the plaintiffs' counsel's requested fees because the time records were of poor quality, lacked detail, and were general in their wording).

A district court may also adjust the lodestar to reflect a plaintiff's overall success level. See Jane L. v. Bangerter, 61 F.3d at 1511 (citing Hensley v. Eckerhart, 461 U.S. at 435-36). "In making such adjustments, however, Hensley requires that lower courts make qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success." Jane L. v. Bangerter, 61 F.3d at 1511. The district court must consider the relationship between the fees awarded and the degree of success obtained and must make a qualitative assessment to determine when limited results will nonetheless justify full recovery or to what extent a plaintiff's "limited success" should reduce the lodestar. Jane L. v. Bangerter, 61

F.3d at 1511. "There is no precise rule or formula" for making such determinations. <u>Hensley v.</u>

<u>Eckerhart</u>, 461 U.S. at 436. In <u>Hensley v. Eckerhart</u>, the Supreme Court explained the rationale

behind this approach:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435.

Furthermore, when a plaintiff brings related claims, failure on some claims should not

preclude full recovery if the plaintiff achieves success on a significant, interrelated claim. <u>See</u>

<u>Hensley v. Eckerhart</u>, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff

who has won substantial relief should not have his attorney's fee reduced simply because the

district court did not adopt each contention raised."); <u>Jane L. v. Bangerter</u>, 61 F.3d at 1512.

Claims are related when they are either based on "a common core of facts" or based on "related

legal theories." <u>Hensley v. Eckerhart</u>, 461 U.S. at 435. In both cases, the district court should

refrain from reducing the amount of the prevailing party's attorney's fee award. <u>See</u> <u>Jane L. v.</u>

<u>Bangerter</u>, 61 F.3d at 1512. The Tenth Circuit has "refused to permit the reduction of an

attorneys fee request if successful and unsuccessful claims are based on a common core of facts."

<u>Jane L. v. Bangerter</u>, 61 F.3d at 1512 (internal quotation marks omitted)(quoting <u>Tidwell v. Fort</u>

<u>Howard Corp.</u>, 989 F.2d 406, 412-13 (10th Cir. 1993)(holding that the trial court abused its

discretion in reducing attorney's fees for a plaintiff who prevailed under some provisions of the

Equal Pay Act, but failed on her Title VII and state law claims)).  The Tenth Circuit has also recognized that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  Jane L. v. Bangerter, 61 F.3d at 1512 (quoting Hensley v. Eckerhart, 461 U.S. at 435).

## ANALYSIS

The Court will award fees as the Motion requests but will reduce the award by: (i) lowering the paralegal fees by $1,230.00; and (ii) lowering the costs by $510.63.  The Court will also adjust the total award request by applying the current gross receipts tax rate. Accordingly, the Court will grant in part and deny in part the Plaintiffs' Motion, and the Court will award fees and costs in the amount of $50,577.48.  Gross receipts tax on this amount is $3,982.98.  The total award is $54,560.46, and the Defendants shall pay that amount to the Plaintiffs.$50,910.28.

**I.    THE PLAINTIFFS ARE ENTITLED TO THE FULL FEE MR. VRAPI REQUESTS, $37,905.00, BECAUSE THE HOURS MR. VRAPI EXPENDED ON THE LITIGATION ARE REASONABLE AND THE PLAINTIFFS' PROPOSED HOURLY RATE OF $350.00 IS REASONABLE.**

The Court will apply, pursuant to the Plaintiffs' request, a $350.00 hourly rate for the 108.3 hours that Mr. Vrapi expended on this litigation.  "To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281 (quoting Pennsylvania v. Delaware Valley

Citizens' Council for Clean Air, 483 U.S. at 563-65). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d at 1102 (quoting Hensley v. Eckerhart, 461 U.S. at 433; Perdue v. Kenny A. ex rel. Winn, 559 U.S. at 543-44). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. V. Midland Fumigant Inc., 205 F.3d at 1233. See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). The appropriate hourly rate should "reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." Ramos v. Lamm, 713 F.3d at 555.

A.     **THE HOURS THAT MR. VRAPI EXPENDED ON THE LITIGATION ARE REASONABLE, NECESSARY, AND NOT EXCESSIVE.**

The Plaintiffs request that the Court award fees for 108.3 hours which the Plaintiffs assert Mr. Vrapi expended on this litigation. See Plaintiffs' Timekeeping and Expense Tracking Table at 10. The Defendants do not dispute the award of fees for 57.5 of those hours. See Proposed Attorneys' Fees at 5. Of the remaining 50.8 hours, the Defendants dispute 1.3 as unnecessary, excessive, or redundant, and 11.4 as non-compensable, because they constitute "fees-on-fees." Proposed Attorneys' Fees at 4. The Defendants contend that the remaining 38.1 hours that Mr. Vrapi expended are not compensable, because they are unrelated to the litigation of the TRO or

to the RFRA claim, and instead relate to a distinct administrative proceeding.  See Proposed Attorneys' Fees at 4-5.

The Defendants argue that the Court should reduce the number of hours which Mr. Vrapi reports having spent on the case and should not grant fees for hours that are "excessive, redundant, or otherwise unnecessary."  Response at 13 (quoting Hensley v. Eckerhart, 461 U.S. at 434.).  In the Response, the Defendants allege specifically that the following hours charged at Mr. Vrapi's rate are unnecessary, excessive or redundant:

1. 1.3 hours spent to discuss enforcing the injunction on December 21, 2017, roughly a week before Plaintiffs had even provided any additional information in response to the notice of intent to deny and thus before USCIS had even made its (favorable) decision;

2. 2 hours spent on March 11-12, 2018 preparing the hours spreadsheet at issue in the case.[9]

Response at 13 (citing Plaintiffs' Timekeeping and Expense Tracking Table at 8-10).  The Defendants suggest that "it would have been unreasonable for Plaintiffs' counsel to charge his clients [these hours]," and that hours "that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  Response at 13 (emphasis in original)(quoting Hensley v. Eckerhart, 461 U.S. at 434 (internal quotation marks and citation omitted)).  The Plaintiffs reply that all the hours submitted "were actually billed to the Plaintiffs

---

[9]In total, the Plaintiffs report 11.4 hours spent on research, preparation, and drafting of the motion for attorneys' fees, and the Defendants contest all 11.4 hours.  See Proposed Attorneys' Fees at 4.  The Defendants specifically allege that these 11.4 hours are noncompensable, because they constitute "fees-on-fees for unsuccessful fees litigation." Proposed Attorneys' Fees at 4.

and to the best knowledge and belief they were paid in full including ongoing work in litigating the request for attorney's fees." Second Vrapi Decl. ¶ 2, at 1. The Court will consider each of the contested fees in turn.

The Court will grant the Plaintiffs' requested fees for the 1.3 hours that Mr. Vrapi spent on December 21, 2017, to discuss enforcing the injunction. The Tenth Circuit has concluded that attorneys' fees may be awarded for "necessary post-judgment efforts." <u>Karnes v. SCI Colo. Funeral Servs., Inc.</u>, 166 F.3d 347 (Table), 1998 WL 879479, at *3 (10th Cir. 1998)(unpublished table opinion)[10](quoting <u>Joseph A. by Wolfe v. N.M. Dept. of Human Servs.</u>, 28 F.3d 1056, 1059 (10th Cir. 1983)). A party is "entitled to recover fees for post-judgment work or for post-judgment monitoring when he or she has succeeded 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" <u>Joseph A. by Wolfe v. N.M. Dept. of Human Servs</u>, 28 F.3d at 1059 (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. at 433)(

_____

[10]<u>Karnes v. SCI Colo. Funeral Servs., Inc.</u> and <u>Friedrich v. City of Chi.</u>, 986 F.2d 1424 (Table), 1993 WL 34959 (7th Cir. 1993) are unpublished opinions, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court finds that <u>Karnes v. SCI Colo. Funeral Servs., Inc.</u>, 166 F.3d 347 (Table) and <u>Friedrich v. City of Chi.</u>, 986 F.2d 1424 (Table), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

citations omitted)).  In <u>Karnes v. SCI Colo. Funeral Servs., Inc.</u>, the Tenth Circuit concluded that

the district court abused its discretion in refusing to award the plaintiff any post-judgment fees

and costs and stated that the plaintiff could recover for post-judgment work that was successful,

and that contributed to the plaintiff obtaining the remedy the court ordered.  See <u>Karnes v. SCI</u>

<u>Colo. Funeral Servs., Inc.</u>, 166 F.3d at 347.  <u>See also</u> <u>Felts v. Accredited Collection Agency, Inc.</u>,

No. 08-CV-755 WJ/WDS, 2011 WL 13268852, at *2 (D.N.M. May 23, 2011)(Johnson,

J.)(interpreting Tenth Circuit caselaw to conclude that the district court may award attorneys'

fees for work performed after the entry of judgment).  The Defendants argue that the Court

should not award the 1.3 hours, because the discussion took place "a week before Plaintiffs had

even provided any additional information in response to the notice of intent to deny and thus

before USCIS had even made its (favorable) decision."  Response at 13.  The Court states that,

for the Plaintiffs to achieve the benefit that they sought in requesting the preliminary injunction,

it is a necessary effort that they would engage in discussion following the TRO MOO regarding

the enforcement of the injunction.  The Court states that it is reasonable that the Plaintiffs would

engage in this discussion before responding to the notice of intent to deny and before USCIS'

issuance of a favorable decision.  The Plaintiffs may have suspected that USCIS had issued the

notice of intent to deny on the same grounds as the denial which prompted the request for a

preliminary injunction.  The Plaintiffs may have feared that USCIS was expressing its intention

not to comply with the preliminary injunction, thereby threatening the relief which the Court had

awarded the Plaintiffs with the TRO MOO.  Accordingly, the Court concludes that fees for the 1.3 hours spent discussing enforcement of the injunction are reasonable and compensable.

The Court will grant the Plaintiffs' requested fees for the 11.4 hours spent on research, preparation, and drafting of the motion for attorneys' fees.  <u>See</u> Proposed Attorneys' Fees at 4. The Tenth Circuit "generally allows recovery of fees for attorneys' work in seeking attorneys' fees."  <u>Hernandez v. George</u>, 783 F.2d 264, 269 (10th Cir. 1986).  "Time spent preparing the fees application 'must be included in calculating a reasonable fee because uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received."  <u>Santa Fe Props., Inc. v. French & French Fine Props., Inc.</u>, No. CIV-04-0518 JB/DJS, 2006 WL 4061184, at *3 (D.N.M. Sept. 30, 2006)(Browning, J.)(quoting <u>Anderson v. Dir., Office of Workers Comp. Programs</u>, 91 F.3d 1322, 1325 (9th Cir. 1996)).  <u>See</u> <u>Coulter v. Tennessee</u>, 805 F.2d 146, 151 (6th Cir. 1986)("The cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over."), <u>cert. denied</u>, 482 U.S. 914 (1987); <u>Gametech Int'l, Inc. v. Trend Gaming Sys., LLC</u>, 380 F. Supp. 2d 1084, 1101 (D. Ariz. 2005)(Anderson, M.J.)("Including the reasonable time to prepare an attorney's fees application in an award of attorney's fees to the prevailing party furthers the purpose of awarding such fees and does not constitute a windfall or double recovery.").  The Tenth Circuit caselaw is established, and the 11.4 hours which Mr. Vrapi requests for the preparation of his fees application are reasonable.  The Court will, therefore, award the Plaintiffs fees for these 11.4 hours.

Finally, the Court will award the Plaintiffs fees for the 38.1 hours that the Defendants contest are unrelated to the TRO litigation or to the RFRA claim, but instead relate to distinct administrative proceedings. The Defendants rely on Webb v. County Board of Education, 471 U.S. at 241, to assert that the only fees awardable under § 1988 are those "reasonably expended on the litigation." Webb v. Cty. Bd. of Educ., 471 U.S. at 241. The Defendants also argue that Webb v. County Board of Education generally prohibits the recovery of attorneys' fees for administrative proceedings. See Response at 5-6 ("See [Webb v. Cty. Bd. of Educ., 471 U.S. at 241](holding that attorney's fees are unavailable for unrequired administrative processes even when the plaintiff brought the same claims in those processes)."). The Defendants contend that any administrative processes that occur after the Plaintiffs' challenged right has been vindicated are not compensable. See Response at 6 (citing N.C. Dep't. of Transp. v. Crest St. Cmty. Council, Inc., 479 U.S. at 14 ("The legislative history clearly envisions that attorney's fees would be awarded for proceedings only when those proceedings are part of or followed by a lawsuit.")).

The Plaintiffs argue that the Defendants take the language from Webb v. County Board of Education out of context. See Motion at 3-4. The Plaintiffs argue that the Supreme Court "has recognized several examples of pre-litigation compensable work and the ultimate holding of [Webb v. County Board of Education] was that the district court has wide discretion in determining the amount of the award and that this is a fact-based inquiry." Motion at 4. The Plaintiffs set forth the test from Pennsylvania v. Delaware Valley Citizens' Council for Clean Air

that time spent in administrative proceedings is compensable if the work is useful and "of a type ordinarily necessary" to secure the final result obtained from the litigation.  561 U.S. at 546.  The Plaintiffs assert that even "optional administrative pre-trial proceedings are compensable" if they satisfy the test from Pennsylvania v. Delaware Valley Citizens' Council for Clean Air.  Motion at 4 (citing Barrett v. Salt Lake Cty., 754 F.3d 864, 870 (10th Cir. 2014)(Gorsuch, J.)).

The Defendants argue that the Plaintiffs received all to which they were entitled under RFRA when the Court granted preliminary injunctive relief in the TRO MOO.  See Response at 7.  The Defendants allege that, after this point, the Plaintiffs cannot establish any continuing harm related to their rights under RFRA, and so "any subsequent administrative work that Plaintiffs' counsel performed to apply for the visa petitions was not necessary to the vindication of Plaintiffs' RFRA right to apply for a visa petition without having to satisfy the regulatory compensation requirement."  Response at 7 (internal quotations omitted)(quoting N.C. Dep't of Transp. V. Crest St. Cmty. Council, Inc., 479 U.S. at 15).  The Defendants assert that the information which USCIS requested after the TRO MOO to adjudicate Garcia's R-1 and I-360 petitions related to the distinct regulatory requirement of full-time employment, and to the distinct issue of recapture time for the R-1 visa.  See Response at 8.

The Defendants assert that the Plaintiffs' RFRA rights were fully vindicated with the grant of preliminary injunctive relief through the Court's TRO MOO.  See Response at 6-7.  The Plaintiffs contend that the TRO MOO should not terminate the litigation.  Instead, the Plaintiffs assert that the final result in the case was the March 2018, Final Judgment.  See Reply at 2.  The

Court agrees with the Plaintiffs that the litigation terminated with the March 2018, Final Judgment. In December 2017, the Court issued the TRO MOO granting preliminary injunctive relief to the Plaintiffs. See TRO MOO at 1. If the Defendants violated the TRO, the Plaintiffs could have returned to the Court for relief, because the litigation would not have terminated and the Court might have held a hearing, expanded the TRO, issued a civil contempt order, or otherwise responded to the TRO's violation. With the grant of the TRO, the Court declined to direct the Defendants to make any particular decision either on the R-1 petition or on the I-360 petition, because "it is not willing to impose upon federal agencies its judgment regarding discretionary decisions." TRO MOO at 46. The Court however, required the Defendants to reconsider the Plaintiffs' R-1 petition without applying 8 C.F.R. § 204.5(m)(10) -- the compensation requirement that the Defendants applied to the petition when first considered -- because the Court determined that applying that requirement to the Plaintiffs' R-1 petition likely violates RFRA. See TRO MOO at 45.

The Plaintiffs continued to pursue their immigration applications, and USCIS issued a notice of intent to deny the I-360 petition and a request for evidence regarding the request to extend Garcia's R-1 visa status. See Response at 3. The Plaintiffs argue that, in issuing the notice of intent to deny and the request for evidence, USCIS was pursuing a new potential rationale for denial of Garcia's visa petitions, although USCIS earlier denied Garcia's third R-1 visa petition and his I-360 petition on only one ground -- that he had not provided evidence of compensation. See Tr. at 3:10-16 (Vrapi). After the TRO, USCIS asked the Plaintiffs for

information regarding Garcia's compliance with the two-years-experience requirement for the grant of an R-1 visa and I-360 petition, and USCIS allegedly asked the Plaintiffs to prove that experience by providing payroll records.[11]  See Tr. at 30:15-21 (Vrapi).  The Plaintiffs contend that, by requiring compensation evidence to prove Garcia's experience, USCIS was still attempting to deny Garcia's visa petition on compensation grounds in violation of the TRO.  See Tr: at 30:24-31:2 (Vrapi).  The Plaintiffs also responded to USCIS' questions regarding recapture of time.  See Tr: at 31:3-6 (Vrapi).  The Plaintiffs argue that, had the Plaintiffs not responded, Garcia's visa petition would have become moot and that UDV would have been denied its minister.  See Tr. at 31:6-9 (Vrapi).  The Plaintiffs argue, therefore, that the administrative proceedings that took place after the Court granted the TRO and before the Court issued a Final Judgment, were "square on point [with vindicating] that RFRA right."  Tr. at 31:11-13 (Vrapi). The Defendants argue that USCIS sought information whether Garcia could prove two years of full-time employment and that, while having pay stubs is an easy way to provide that proof, in this case, the Plaintiffs were able to present other evidence of full-time employment which USCIS ultimately accepted.  See Tr. at 33:5-11 (Genova).  The Plaintiffs respond that two of the three categories of evidence permitted to prove whether a visa applicant has the requisite two

---

[11]"To qualify [for an R-1 visa], the foreign national must have been a member of religious denomination having a bona fide non-profit religious organization in the United States for at least two years immediately before the filing of the petition."  R-1 Temporary Nonimmigrant Religious Workers, United States Citizenship and Immigration Services, https://www.uscis.gov/working-united-states/temporary-workers/r-1-temporary-religious-workers/r-1-temporary-nonimmigrant-religious-workers (last visited Oct. 1, 2018).

years of experience involve proof of compensation, directly related to the issue on which the Court ruled in the TRO MOO.  See Tr. at 35:6-16 (Vrapi).  The parties disagree regarding whether USCIS must issue a visa denial stating every ground for denial or whether USCIS may issue a visa denial stating only one of several possible grounds for denial.  See Tr. at 33:18-23 (Genova); id. at 35:20-36:2 (Vrapi).  Either way, however, responding to USCIS' notice of intent to deny and request for evidence was useful work "of a type ordinarily necessary" to secure the final result obtained from the litigation -- the vindication of the Plaintiffs' right to be free from the regulatory compensation requirement typically applied to R-1 visa applications.  Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 561 U.S. at 546.  The Plaintiffs could not be certain, upon receiving USCIS' notice of intent to deny and request for evidence, that USCIS was not attempting to subvert the TRO's requirements by demanding proof of compensation through the guise of another requirement.  The Plaintiffs needed to engage in administrative proceedings with USCIS to ascertain that the rights the Court granted in the TRO would be vindicated.  The work that the Plaintiffs' counsel performed in connection with these administrative proceedings was necessary to the litigation and is compensable.  The Court, therefore, awards all the Plaintiffs' requested fees for work in connection with the administrative proceedings before USCIS.

**B.  MR. VRAPI'S PROPOSED HOURLY RATE OF $350.00 IS REASONABLE IN LIGHT OF HIS SKILLS AND EXPERIENCE.**

The Plaintiffs request a $350.00 hourly rate for Mr. Vrapi.  See Plaintiffs' Timekeeping and Expense Tracking Table at 12.  In support of Mr. Vrapi's requested rate, the Plaintiffs

submit a declaration by Mr. Vrapi detailing his bona fides: Mr. Vrapi graduated *cum laude* from the University of New Mexico School of Law in 2006, where he now teaches courses in immigration law as an Adjunct Professor of Law. <u>See</u> Vrapi Decl. ¶ 2, at 1. Mr. Vrapi has received two national awards in the field of immigration law, has been qualified as an expert in immigration law in both state and federal court in New Mexico, and has provided immigration expertise to New Mexico legislators in the New Mexico House of Representatives. <u>See</u> Vrapi Decl. ¶¶ 6-7, at 2. To his knowledge and belief, Mr. Vrapi is the only attorney in New Mexico who routinely handles immigration-related federal litigation, <u>see</u> Vrapi Decl. ¶ 1, at 1, the only attorney in New Mexico who handles RFRA/immigration law issues, and is one of only a handful of attorneys nationally who litigates such cases, <u>see</u> Second Vrapi Decl. ¶ 5, at 2. Given Mr. Vrapi's specialization and expertise in federal RFRA/immigration litigation, the Plaintiffs suggest that Mr. Vrapi should be entitled to a higher-than-market fee award. <u>See</u> Davis Decl. ¶ 12, at 5. Mr. Davis, one of the most noteworthy civil rights lawyers in New Mexico, <u>see</u> Davis Decl. ¶ 2, at 1, opines that Mr. Vrapi's "highly developed skill and experience in the unique and complex confluence of civil rights and immigration law," his "reputation in the legal community in New Mexico," and the prevailing hourly rates in New Mexico all justify a fee award of $350.00 per hour for his services, <u>see</u> Davis Decl. ¶ 12, at 5.

The Defendants object to this rate, arguing that the Plaintiffs "provide no evidence that $350.00 is the prevailing rate for someone with the experience of" Mr. Vrapi and noting that Mr. Davis' declaration admits that $350.00 is the prevailing market rate for attorneys with four to

nine years more experience than Mr. Vrapi.  See Response at 10; Davis Decl. ¶ 16, at 7.  The Defendants contend that Albuquerque has some of the lowest hourly rates for attorneys in the nation and that, because a reasonable rate "is the prevailing market rate," the Plaintiffs' requested hourly rate of $350.00 is per se unreasonable.  Response at 10 (citing Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc., 295 F.3d 1065, 1078 (10th Cir. 2002)).  The Defendants also argue that the Plaintiffs presented only an affidavit from Mr. Vrapi in support of his hourly rate and that, because "the affidavit is the only document purporting to establish a market rate but fails to discuss the market rate for Plaintiffs' counsel, Plaintiffs have failed to meet their burden of establishing a reasonable hourly rate."  Response at 10.  The Defendants argue that the prevailing market rate for an attorney with Mr. Vrapi's experience is approximately $230.00 an hour.  See Response at 10.  Furthermore, the Defendants contend that the Court should not award an hourly rate of $350.00 for Mr. Vrapi's services, when Mr. Vrapi charged the Plaintiffs $300.00 an hour. See Response at 11.  Finally, the Defendants argue that Mr. Vrapi has not provided any evidence that he "is experienced in RFRA (or other civil rights) litigation, warranting a reduction in the rate."  Response at 12.

The Defendants are correct in asserting that, in determining what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community.  See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23.  As the Tenth Circuit has previously concluded, "the fee rates of the local area should be applied even when the lawyers seeking fees are from another area," unless "the subject of the litigation is 'so unusual or requires

such special skills' that only an out-of-state attorney possesses." Lippoldt v. Cole, 468 F.3d at 1225-26 (quoting Ramos v. Lamm, 713 F.2d at 555). See Jane L. v. Bangerter, 61 F.3d at 1510. In Reazin v. Blue Cross & Blue Shield of Kan, Inc., 899 F.2d 951, 983 (10th Cir. 1990), the Tenth Circuit declined to disturb the district court's findings that unusual circumstances in the case warranted the award of higher-than-market hourly rates for the Plaintiffs' attorneys, where the district court explained that "there is neither a lawyer nor a firm in this town which could have devoted to this case the timely expertise, experience, and manpower put forth by [the plaintiffs' counsel]." 899 F.2d at 983. But see Jane L. v. Bangerter, 61 F.3d at 1510 (concluding that abortion litigation is not unusual, and does not warrant the application of non-local hourly rates to counsel); Anchondo v. Anderson, Crenshaw, & Assocs., L.L.C., 2009 WL 10664933, at *3 (concluding that litigation under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a through 1692p,  ("FDCPA"), is not unusual and does not warrant the application of non-local hourly rates to counsel).  Unlike the FDCPA, which Congress enacted in 1977, RFRA has only been in existence since 1993.  See RFRA.  Accordingly, attorneys have had only 25 years to become familiar with and gain experience in RFRA cases.  Federal RFRA/immigration law cases can be "difficult, complex, time consuming and expensive."[12]  Davis Decl. ¶ 18, at 7.  Mr. Vrapi has spent his eleven years as a member of the bar developing expertise and experience in this niche area; he is likely the only lawyer in New Mexico to routinely practice in this area of law and is likely one of only a small handful of lawyers nationally who litigate these cases.  See

---

[12]The Court's TRO MOO is forty-seven pages and took two full weeks to generate after the hearing.

Vrapi Decl. ¶ 1, at 1; Second Vrapi Decl. ¶ 5, at 2. He is probably the immigration lawyer of which the federal court in New Mexico -- which is a border district with a 180-mile border with Mexico -- first remembers when it thinks about this area of the law, because he is so knowledgeable about immigration law. He is an adjunct professor at the University of New Mexico and speaks about the topic; he is high profile in this community on the topic. The Court concludes that "there is neither a lawyer nor a firm in this town which could have devoted to this case the timely expertise, experience, and manpower put forth by [Mr. Vrapi]." Reazin v. Blue Cross & Blue Shield of Kan, Inc., 899 F.2d at 983. Although the Defendants note that Mr. Vrapi has far fewer years of practice since admission to the bar than other attorneys who bill at $350.00 per hour, years of experience is not the only factor courts consider in determining whether a counsel's requested hourly rate is reasonable. See Perdue v. Kenny A. ex rel Winn, 559 U.S. at 553. Mr. Vrapi, even though he is relatively young, has graduated law school and made himself the expert in this area of the law. Mr. Vrapi's experience in this area of the law is a better indicator of a reasonable hourly fee for his services than "mere number of years since admission to the bar." Chavez v. Stump, Civ. No. 10-205 JCH/ACT, 2014 WL 12796784, at *3 (D.N.M. Feb. 27, 2014)(Herrera, J.). Even if the Court were to determine that federal RFRA/immigration law is not unusual enough to warrant a non-local hourly rate award, the Court would still compare Mr. Vrapi's proposed fee to those of lawyers "of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. at 895. According to Mr. Davis -- an outstanding lawyer here -- Mr. Vrapi's hourly rate is fair and reasonable in comparison with

"market rates for lawyers of comparable skill and experience in the New Mexico legal community." Davis Decl. ¶ 12, at 5.

The Defendants contend that the only evidence which the Plaintiffs present in support of Mr. Vrapi's requested fees is his own affidavit. See Response at 10. "[T]he burden is on the fee applicant to produce satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested rates are in line with those prevailing in the community . . . ." Blum v. Stenson, 465 U.S. at 895. In Payne v. Tri-State Careflight, LLC, 278 F. Supp. 3d 1276, 1297 (D.N.M. Sept. 30, 2017)(Browning, J.), the Court suggested that affidavits of other lawyers or evidence of other cases could constitute sufficient evidence to nudge a proposed hourly rate upward. See Payne v. Tri-State Careflight, LLC, 278 F. Supp. 3d at 1297. In addition to Mr. Vrapi's declaration, the Plaintiffs also present an affidavit from Mr. Davis, a highly respected civil rights attorney in Albuquerque. See Davis Decl. at 1. Mr. Davis attests that the Court awarded him an hourly rate of $375.00 in a federal civil rights case in 2013, that his current hourly rate is $425.00, and that several New Mexico courts have awarded attorneys' fees at rates higher than $300.00 per hour.[13] See Davis Decl. ¶ 13, at 5. Because the Plaintiffs contend that Mr. Vrapi is

_____

[13]Mr. Davis attests that the Honorable Clay Campbell, District Judge, Second Judicial District, State of New Mexico, awarded him attorneys' fees at an hourly rate of $400.00 for his work as appellate counsel in ACLU v. Duran, 2016-NMCA-063, and that the Honorable Sarah Singleton, District Judge, First Judicial District, State of New Mexico, awarded him attorneys' fees at an hourly rate of $400.00 for his work in JPC Contractors, LLC v. Rufina Lofts, LLC, No. D-101-CV-2009-00440, Order Granting in Part Intervenor's Motion for Attorneys' Fees, ¶ 2, at 2, Feb. 2, 2017. See Davis Decl. ¶ 13, at 5-6. Mr. Davis also notes that the Court awarded him $375.00 per hour for his work on a discovery motion in Knight v. Metzgar, No. CIV 12-0460 JB/ACT, Clerk's Minutes at 2, filed June 18, 2013 (Doc. 46). See Davis Decl. ¶ 13, at 6. In

one-of-a-kind among Albuquerque lawyers, the Plaintiffs are limited in what they can present the Court regarding rates for similar services by "'lawyers of reasonably comparable skill, experience, and reputation' in the relevant community and for similar work." Mosaic Potash Carlsbad, Inc. v. Lintrepid Potash, Inc., No. 16-cv-0808 KG/SMV, 2018 WL 2994412, at *1 (D.N.M. June 14, 2018)(Vidmar, M.J.)(quoting Blum v. Stenson, 465 U.S. at 895 n.11). See Case v. Unified Sch. Dist. No. 233, 157 F.3d at 1257. Lacking adequate evidence of prevailing market rates under these circumstances, the court may, "in its discretion, use other relevant factors, including its own knowledge, to establish the rate." Case v. Unified Sch. Dist. No. 233, 157 F.3d at 1257. See United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1234 (stating that a district court abuses its discretion when its "decision makes no reference to the evidence presented by either party on prevailing market rate," and its rate decision is based solely on the court's "own familiarity with the relevant rates in this community"). Although the Court recognizes that Mr. Vrapi has fewer years of experience as a member of the bar than other attorneys seeking $350.00 hourly rates, the Court is convinced that Mr. Vrapi's skills are unique to the Albuquerque area, and that there are very few, if any, other attorneys at different law firms in Albuquerque who routinely litigate federal RFRA/immigration law cases. The Court

_____

New Mexico Foundation for Open Government v. Corizon Health, No. D-101-CV-2016-01742, Findings of Fact and Conclusions of Law Regarding Petitioner's Motion for Attorneys' Fees and Costs, ¶ 8 at 3, March 7, 2017, the court awarded a Santa Fe attorney $400.00 per hour for a "novel and complex" IPRA case, and in Valdez v. Herrera, No. CIV 09-0668 JCH/DJS, Order Granting Attorneys' Fees at 3-4, filed March 21, 2011 (Doc. 149), the Honorable Judith C. Herrera, United States District Judge for the District of New Mexico, awarded experienced counsel $350.00 per hour in a voter rights registration case.

distinguishes the present case from <u>XTO Energy, Inc. v. ATD, LLC</u>, No. CIV 14-1021 JB/SCY, 2016 WL 5376322 (D.N.M. Aug. 22, 2016)(Browning, J.), in which the Court found that an attorney was not entitled to a higher-than-market fee award given his specialization in insurance coverage cases, because insurance coverage cases were not unusual such that only out-of-state attorneys could present them. <u>See</u> <u>XTO Energy, Inc. v. ATD, LLC</u>, 2016 WL 5376322, at *10. The Court also considers past fee awards in the District of New Mexico and recognizes that $350.00 rates have been awarded for experienced lead trial counsel in recent years. <u>See</u>, <u>e.g.</u>, <u>Payne v. Tri-State Careflight, LLC</u>, No. CIV 14-1044 JB/KBM, Memorandum Opinion and Order at 26-27 (D.N.M. Aug. 17, 2016)(Doc. 142)(Browning, J.)(awarding $350.00 for experienced lead trial counsel in a wage-and-hour litigation in federal court). The Honorable William P. Johnson, Chief District Judge for the United States District Court for the District of New Mexico, has found that a rate of $350.00 per hour is appropriate for "one of New Mexico's preeminent trial lawyers," who has demonstrated "superb trial advocacy skills" in a police misconduct civil rights case. <u>Martinez v. Carson</u>, No. CIV 08-1046 WJ/LFG, Memorandum Opinion and Order Granting in Part Plaintiff's Motion for Attorney Fees and Expenses at 7 (D.N.M. Aug. 11, 2011)(Doc. 231)(Johnson, J.)(granting fees to Mr. Kennedy at a rate of $350.00 per hour). Finding that Mr. Vrapi's proposed rate of $350.00 per hour is reasonable considering his special skills and experience, the market rate for lawyers of comparable skill, the past awards that this and other courts have made, and Mr. Davis' attestations, the Court will award Mr. Vrapi fees at the Plaintiffs' requested rate for a total of $37,905.00.

## II. THE COURT WILL AWARD PARALEGAL FEES AT THE PLAINTIFFS' REQUESTED RATES AND WILL REDUCE THE PROPOSED FEE AWARD FOR PARALEGAL TIME BY $1,230.00.

The same "lodestar" fee standard that <u>Case v. Unified School District No. 233</u> applied to the determination of a reasonable hourly rate for attorneys also applies to fees for services that paralegals provide. <u>Case v. Unified Sch. Dist. No. 233</u>, 157 F.3d at 1249 (citing <u>Ramos v. Lamm</u>, 713 F.2d at 552). The Supreme Court has held that § 1988 allows for compensation of paralegal work at market rates. <u>See</u> <u>Missouri v. Jenkins by Agyei</u>, 491 U.S. 273, 288-89 (1989).

The Plaintiffs request a $150.00 hourly rate for paralegals Norez, Lopez, and Sanchez -- paralegals at Noble & Vrapi, P.A. <u>See</u> Plaintiffs' Timekeeping and Expense Tracking Table at 6-13. The Plaintiffs request a total of $9,570.00 in fees for work performed by paralegals. <u>See</u> Plaintiffs' Timekeeping and Expense Tracking Table at 6-13. The Defendants ask that the Court reduce the paralegal fees to a rate of $55.00 per hour, which the Honorable William P. Lynch, United States Magistrate Judge for the District of New Mexico held was reasonable in <u>Gutwein v. Taos County Detention Center</u>, No. CIV 16-672 RB/WPL, 2016 WL 9774935, at *2 (D.N.M. Nov. 16, 2016)(Lynch, M.J.). At the hearing, the Court requested that the Plaintiffs call Paul Fish, a prominent bankruptcy lawyer in the state, at the Modrall Sperling firm -- New Mexico's largest local firm -- and ascertain what the Modrall Sperling firm bills for their paralegals, and what range for paralegal fees the Bankruptcy Court routinely approves. <u>See</u> Tr. at 36:14-22 (Court). The Court also asked the parties to ascertain what other law firms bill for paralegals, including the Peifer, Hanson & Mullins, P.A. firm and the Rodey, Dickason, Sloan, Akin &

Robb, P.A. firm.  See Tr. at 36:22-37:2 (Court).[14]  The Plaintiffs assert that the Modrall Sperling

firm currently bills its paralegals at hourly rates between $160.00 and $185.00 per hour for an

---

[14]The Court made this request recognizing that market rates for attorney and paralegal services may have risen since the last time the Court commented on those rates.  In New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23, the Court noted that, in In re Thornburg Mortgage, Inc. Sec. Litig., 912 F. Supp. 2d 1178, 1258 n.41 (D.N.M. Nov. 26, 2012)(Browning, J.), the Court exhaustively considered New Mexico cases imposing attorneys' and paralegals' fees to determine what rates are reasonable:

> While the Court realizes that paralegals do not routinely charge $200.00 per hour in New Mexico, the state's top attorneys charge above that amount, see Jackson v. Los Lunas Center, 489 F. Supp. 2d 1267, 1273 & n.4 (D.N.M. 2007)(Parker, S.J.)(discussing fees of up to $305.25 per hour and finding those fees reasonable); Kelley v. City of Albuquerque, No. 03-507, 2005 WL 3663515, at *16 (D.N.M. Oct. 24, 2005)(Browning, J.)(finding that $250 per hour for Albuquerque attorneys is a reasonable fee), and New Mexico is a relatively poor state, with some of the lowest hourly rates in the country.  The Court has previously stated that $200.00 per hour is a "relatively low rate" for attorneys in New Mexico. Lane v. Page, 862 F. Supp. 2d 1182, 1257 (D.N.M. May 22, 2012) (Browning, J.).  See also Copar Pumice Co., Inc. v. Morris, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at *19, *21 (D.N.M. June 13, 2012)(Browning, J.)(finding that "(i) $235.00 per hour for partners; (ii) $200.00 per hour for senior associates; (iii) $150.00 per hour for other associates; and (iv) $75.00 per hour for paralegals," are reasonable rates in New Mexico); Avendano v. Smith, No. CIV 11-0556, 2011 WL 5822733, at *2 (D.N.M. Nov. 3, 2011) (Browning, J.)(finding rates of $180.00 per hour reasonable); Pedroza v. Lomas Auto Mall, Inc., 716 F. Supp. 2d 1031, 1050-51 (D.N.M. April 30, 2010)(Browning, J.)(finding that $150.00 per hour is a "very reasonable" rate for commercial litigators in New Mexico); Mountain Highlands, LLC v. Hendricks, No. CIV 08-0239, 2010 WL 1631856, at **9-10 (D.N.M. April 2, 2010)(Browning, J.)(approving an hourly rate of $170.00 to $210.00 per hour as reasonable for commercial litigation); Wiatt v. State Farm Ins. Cos., No. CIV 07-0526 JB/KBM, 2008 WL 2229630, at **4-5 (D.N.M. March 24, 2008)(Browning, J.)(holding that a fee of $200.00 per hour for insurance defense work was reasonable); Allahverdi v. Regents of Univ. of N.M., No. CIV 05-0277, 2006 WL 1304874, at *2 (D.N.M. April 25, 2006)(Browning, J.)(finding hourly rate of $225.00 reasonable in a public-employment dispute); Two Old Hippies, LLC v. Catch the Bus, LLC, 277 F.R.D. 448, 465 (D.N.M. Aug. 31, 2011) (Browning,

J.)(finding that $275.00 per hour is a reasonable rate for an attorney who is "one of the more seasoned and experienced commercial litigators in the District of New Mexico," and $195.00 is a reasonable rate for an "excellent associate."). [Chief Judge Johnson], has found that a rate of $350.00 per hour is appropriate for one of "one of New Mexico's preeminent trial lawyers," who has demonstrated "superb trial advocacy skills" in a police misconduct civil rights case. Martinez v. Carson, No. 08-CV1046 WJ/LFG, Mem. Op. and Order Granting in Part Plaintiff's Motion for Attorney Fees and Expenses (Doc. 231), at 7 (D.N.M. Aug. 11, 2011)(Johnson, J.). [Chief] Judge Johnson has also found that a rate of $175.00 per hour is reasonable for an attorney who has been practicing law for five years. See No. 08-CV-1046, Mem. Op. and Order Granting in Part Plaintiffs' Motion for Attorney Fees and Expenses (Doc. 231) at 8. [Judge Herrera], has approved fee awards of: $350 per hour for lawyers who graduated from law school before 1996; $300 per hour for lawyers who graduated between 1996 and 2000; $225 per hour for lawyers [who] graduated between 2001 and 2006; and $150 per hour for lawyers who graduated in 2007 and afterwards . . . [and] $95 per hour for legal interns and legal support staff. Valdez v. Herrera, No. 09-CV-0668 JCH/DJS, Order Granting Attorneys' Fees at 3 (Doc. 149)(D.N.M. Mar. 21, 2011)(Herrera, J.). See Mackey v. Staples, Inc., No. 09-CV-0023 JCH/WPL, Order Granting Attorneys' Fees and Costs (Doc. 199) at 5 (D.N.M. March 4, 2011)(Herrera, J.)(awarding fees at a rate of $350.00 per hour to civil rights litigators with thirty-seven years of experience); Johnson v. Life Ins. Co. of N. Am., No. 05-CV-0357 JCH/RLP, Memorandum Opinion and Order (Doc. 127) at 4 (D.N.M. March 13, 2009)(Herrera, J.)(finding that $105.00 per hour is a reasonable rate for a paralegal with nine years of experience). The Honorable John E. Conway, Senior District Judge for the United States District Court for the District of New Mexico, has awarded fees in the range of $200.00 to $300.00 for attorneys in a police misconduct case. See Avila v. Ratchner, No. 01-CV-0349 JC/LAM, Memorandum Opinion and Order (Doc. 214) at 6-7 (D.N.M. Sept. 27, 2010)(Conway, J.). Five years ago, the Honorable Robert C. Brack, District Judge for United States District Court for the District of New Mexico, found that $175.00 per hour was a reasonable rate for an associate attorney with five years of experience who took an active role in a litigation. See Rivera v. Smith's Food & Drug Centers, No. 05-CV-1049 RB/ACT, Memorandum Opinion and Order (Doc. 177) at 10-12 (D.N.M. June 28, 2007)(Brack, J.). The Honorable Robert H. Jacobvitz, Bankruptcy Judge for the United States Bankruptcy Court for the District of New Mexico, found that hourly rates of $60.00 for paralegals is reasonable. See In re Fincher, No. 13-08-11454 JA, 2012 WL 1155719, at *5 (Bankr. D.N.M. Apr. 5, 2012) (Jacobvitz, J.)

average rate of $172.50 per hour.  See Plaintiffs' Notice at 2.  The Peifer, Hanson, and Mullins,

P.A. firm currently bills its paralegals at hourly rates between $115.00 and $135.00 per hour for

an average rate of $125.00 per hour.  See Plaintiffs' Notice at 2.  The Rodey Law Firm currently

bills its paralegals at hourly rates between $105.00 and $125.00 per hour for an average rate of

$115.00 per hour.  See Plaintiffs' Notice at 2.

Considering the paralegal rates that major and prominent litigation law firms in

Albuquerque now routinely charge, the Court concludes that the Plaintiffs' proposed paralegal

hourly rates of $150.00 and $125.00 are reasonable.  The Defendants ask that the Court reduce

the paralegal hours requested, arguing that "clerical tasks are not recoverable as attorneys' fees."

Ysasi v. Brown, 2015 WL 403930, at *4; Johnson v. District of Columbia, 850 F. Supp. 2d 74,

80 (D.D.C. 2012)(Facciola, M.J.)("Congress never intended for clerical billings to be included in

attorneys' fees . . . .").   The Defendants contend that clerical tasks include "proofing,"

"organizing files," "picking up documents," "printing, photocopying, faxing, mailing, and

converting documents to PDF format."  Response at 13 (internal quotation marks and citations

omitted)(quoting Ysasi v. Brown, 2015 WL 403930, at *4).  The Plaintiffs reply that the

paralegal work requested in the Motion was all necessary for the litigation.  See Reply at 4.  The

Plaintiffs state that the paralegals put together "7,000 pages of exhibits and the proper reductions

---

New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23.  In 2017, the Court awarded
$375.00 in a case that "was headed toward a class action, but for the [plaintiffs'] desire to settle"
and noted that this "rate approaches the upper end of what the local market would currently bear
for the hourly rate of a very experienced partner engaged in complex, multi-party commercial
litigation."  Fallen v. GREP Southwest, LLC, 247 F. Supp. 3d at 1198 (citations omitted).

required by the rules . . . [and] also assisted in preparing the administrative filings." Reply at 4. The Plaintiffs contend that, by using paralegals, the Plaintiffs' counsel was able to reduce costs and to accomplish more in a short amount of time. See Reply at 4.

The Defendants contest certain paralegal time entries as clerical. See Plaintiffs' Timekeeping and Expense Tracking Table at 6. For example, one of Lopez' entries which the Defendants argue is clerical states: "Call district court for Judge information, edit summons, and re-submit to clerk." Plaintiffs' Timekeeping and Expense Tracking Table at 6 (stating Lopez' entry for Nov. 16, 2017). While not always the case, paralegals, more often than secretaries or legal secretaries, submit summons to the clerk and call the court for judge information, and there is no reason to assume that these are non-compensable administrative tasks. Even more so, editing the summons is a compensable and non-clerical task. The Defendants argue that the Court should disallow the fee for some entire time entries, because they include clerical or administrative tasks which are not compensable as attorneys' fees. See Proposed Attorneys' Fees at 2. Block billing, however, does not call for disallowing the entire sum, although the Court may reduce the overall amount. See, e.g., United States ex rel. Belt Con Const., Inc. v. Metric Const., Inc., No. CIV 02-1398 JB/LAM, 2007 WL 5685140, at *11 (D.N.M. Dec. 1, 2007)(Browning, J.)(reducing block billed time by 30 percent). Many of the entries that appear, at first glance, to document mostly non-compensable tasks reveal that, on careful scrutiny, the few compensable tasks likely took up much more time than the many non-compensable ones; i.e., "[e]dit declarations and email to client for signing." Plaintiffs' Timekeeping and Expense

Tracking Table at 6 (stating Lopez' entry for Nov. 30, 2017).  Although emailing documents may not be compensable -- if that task is all which the paralegal did -- that task does not take much time and maybe no time or seconds; however, the clearly compensable task -- editing the declarations -- no doubt required more time than the non-compensable task.  The Defendants specifically contest the Plaintiffs' request for fees for:

1.  5.2 hours for a paralegal's attendance at court hearings,

2.  15.8 hours from two paralegals preparing documents for the court hearing, and

3.  7.0 hours to redact documents.

Response at 13-14.

The Court will award paralegal fees for attendance at court hearings, preparing documents for the hearing, and redacting documents.  The Court concludes that these tasks are not clerical or administrative, but rather are fundamental to the role of a paralegal and are compensable.  For example, the Defendants contest Norez' entry from November 21, 2017: "Redact client information from Court exhibits."  Plaintiffs' Timekeeping and Expense Tracking Table at 2 (stating Norez' entry for Nov. 21, 2017).  The Court finds that redaction work is non-clerical and is compensable, because it involves knowledge of the applicable rules and the facts of cases to adequately ensure the protection of confidential information.

Courts regularly classify printing documents as a clerical task.  See Cortes–Reyes v. Salas–Quintana, 806 F. Supp. 2d 470, 476 (D.P.R. 2011)(Casellas, J.)("Additionally, several entire entries (and parts of many other entries) billed at attorneys' rates, adding up to several

hours, are for clerical tasks such as printing, photocopying, faxing, mailing, and converting documents to PDF format. This will not do."); Allison v. City of Lansing, No. CIV 03-0157, 2007 WL 2114726, at **1-2 (W.D. Mich. July 19, 2007)(Bell, C.J.)("With respect to time billed for proofing, printing and mailing, the Court agrees with Defendant that these tasks are clerical in nature and should not be billed as professional fees."); Heimer v. Osage Cmty. Sch. Dist., No. C04-2014, 2005 WL 2807110, at *4 (N.D. Iowa Oct. 26, 2005)(Jarvey, M.J.)(concluding that printing is a clerical task for which attorneys could not recover attorneys' fees). Researching is not a clerical task. See King v. State Bd. of Elections, No. CIV 95-0827, 2003 WL 22019357, at *3 n. 3 (N.D. Ill. Aug. 26, 2003)(Coar, J.)("Unlike organizing files or picking up documents, research and writing are not typical ministerial tasks.").

The Supreme Court has stressed that courts "should not[] become green-eyeshade accountants.[15] The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates . . . ." Fox v. Vice, 563 U.S. 826, 838 (2011). For clarity, the Court addresses each contested fee entry, and where the Court awards fees for only part of an entry, it uses estimates to determine how much time the paralegal likely spent on the compensable and

---

[15]From the late 19th century to the mid-20th century, accountants wore green eyeshades, a type of visor, while engaged in vision-intensive, detail-oriented tasks, to lessen their eyestrain. Because these eyeshades were often worn by people involved in accounting or similar professions, "they became associated with these activities." Green eyeshade, Wikipedia, https://en.wikipedia.org/wiki/Green_eyeshade (last visited Oct. 6, 2018).

non-compensable portions of the entry.[16]  The Plaintiffs informed the Court at the August 8, 2018, hearing that they would leave determination of the clerical and administrative costs to the Court in its discretion.  See Tr. at 6:8-10 (Vrapi).

The Court concludes that the following fee entries listed for Norez are compensable as paralegal work, as the Court explains in the above discussion regarding redacting documents.

| NOREZ ($150.00/HOUR) | | | | |
|---|---|---|---|---|
| Date | Description | Hours Reported | Compensable/Non-compensable | Total Compensable Time |
| Garcia, Jose Carlos: Declaratory Judgment | | | | |
| 11/21/2017 | Redact client information from court exhibits | 1.0 | Compensable | 1.0 |

The Court concludes that the following paralegal fee entries are compensable as paralegal work, or non-compensable as clerical or administrative tasks,[17] for Lopez:

| LOPEZ ($150.00/HOUR) | | | | |
|---|---|---|---|---|
| Date | Description | Hours Reported | Compensable/Non-compensable | Total Compensable Time |
| Garcia, Jose Carlos: Declaratory Judgment | | | | |
| 11/16/2017 | Call district court for Judge information, edit summons, and re- | 0.6 | Compensable | 0.6 |

---

[16]The following tables do not include time entries which the Defendants do not dispute. Nevertheless, the Court has read the undisputed fees, and the Court agrees they are compensable, and the Court will award them.

[17]The Court will award the Plaintiffs' requested attorneys' fees in connection with the administrative proceedings work, see supra at 53, and therefore will also award requested paralegals' fees in connection with the same work.

| | submit to clerk. | | | |
|---|---|---|---|---|
| 11/17/2017 | Extract issued summons,[18] compile complaint and summons for Elaine Duke, and send to Olsi for review. | 0.8 | <u>Compensable</u> | 0.8 |
| 11/17/2017 | Complete compiling complaint and summons PDFs | 1.0 | <u>Compensable</u> | 1.0 |
| 11/20/2017 | Print[19] and assemble exhibits for trial | 1.0 | <u>Compensable</u> | 1.0 |
| 11/21/2017 | Email client to request proof of travel[20] | 0.3 | <u>Compensable</u> | 0.3 |
| 11/21/2017 | Redact client information from court exhibits | 1.0 | <u>Compensable</u> | 1.0 |
| 11/21/2017 | Attend federal court hearing | 1.7 | <u>Compensable</u> | 1.7 |
| 11/30/2017 | Edit declarations and email to client for signing | 0.7 | <u>Compensable</u> | 0.7 |
| 11/30/2017 | Redact digital court exhibits | 4.6 | <u>Compensable</u> | 4.6 |

---

[18]The Court assumes there is some database from which the paralegals extract summonses, the notices of intent to deny ("NOID"s), and other relevant notices.

[19]Although the Court recognizes that the general rule is that printing is considered a clerical task, <u>see</u> supra at 71, where, as here, the printing is inextricable from the rest of the task, which is clearly compensable, the Court will award fees for the full time requested.

[20]While attorneys divide work up differently, and there is no per se rule, the Court's expectation is that a paralegal, given his or her knowledge of the case, is more likely to email clients, than a secretary or legal secretary is.  The Court recognizes that attorneys may provide their clients with the name of a paralegal to contact, so that the client always has someone he or she can call or email.  The Court, therefore, concludes that emailing clients is a non-clerical task, and that fees related to it should be awarded at the paralegal's hourly rate if that is how that attorney divides work.

| | | | | |
|---|---|---|---|---|
| 12/1/2017 | Attend federal court with Olsi | 3.5 | <u>Compensable</u> | 3.5 |
| 12/14/2017 | Draft new G-28 and I-360s for NOID Response | 2.4 | <u>Compensable</u> | 2.4 |
| Garcia, Jose Carlos: I-360 | | | | |
| 12/5/2017 | Extract NOID and calendar deadlines | 0.2 | <u>Compensable</u> | 0.2 |
| 12/11/2017 | Extract Reopen notice from mail and contact client regarding notice | 0.2 | <u>Compensable</u> | 0.2 |
| 12/14/2017 | Edit forms for NOID response | 1.4 | <u>Compensable</u> | 1.4 |
| 12/15/2017 | Extract documents sent by clients for NOID Response #2, inquire about same-day delivery service for forms, and coordinate with Santa Fe | 0.7 | <u>Compensable:</u> extract documents sent by clients for NOID Response #2 <u>Non-compensable:</u> inquire about same-day delivery service for forms, and coordinate with Santa Fe | 0.1[21] |
| 12/15/2017 | Coordinate forms delivery with courier service | 0.2 | <u>Non-compensable</u> | 0.0 |
| 12/15/2017 | Draft NOID response letter | 1.0 | <u>Compensable</u> | 1.0 |
| 1/11/2018 | Extract I-360 approval notice from mail and notify clients | 0.2 | <u>Compensable</u>: notify clients <u>Non-compensable</u>: extract I-360 approval notice from mail | 0.1 |

---

[21]The Court estimates that about 0.1 hours were spent extracting documents, and that the remaining 0.6 hours were spent on the non-compensable task.

| | | | | |
|---|---|---|---|---|
| Garcia, Jose Carlos: R-1 Extension_2017 | | | | |
| 11/7/2017 | Extract denial notice[22] | 0.1 | <u>Compensable</u> | 0.1 |
| 11/15/2017 | Prepare summons to be sent to defendants | 2.4 | <u>Compensable</u> | 2.4 |
| 11/15/2017 | Complete summons and email to clerk | 0.4 | <u>Compensable</u> | 0.4 |
| 11/17/2017 | Print, assemble, and prepare summons and complaints for mailing | 1.0 | <u>Compensable</u> | 1.0 |
| 12/27/2017 | Extract reopen notices, notify client, and calendar RFE deadlines | 0.6 | <u>Compensable</u> | 0.6 |
| 12/29/2017 | Draft new G-28's, I-129, I-129r, and I-539 forms | 1.5 | <u>Compensable</u> | 1.5 |
| 12/29/2017 | Print[23] and organize exhibits for RFE | 2.4 | <u>Compensable</u> | 2.4 |
| 1/5/2018 | Discuss case and update with SST[24] | 0.2 | <u>Compensable</u> | 0.2 |

---

[22]The Court assumes that this denial notice is the Denial Decision for I-129 Petition for Nonimmigrant Worker (dated Oct. 31, 2017)(Receipt No. WAC-17-197-50769), filed November 20, 2017 (Doc. 13-19)("Plaintiffs' Exhibit C5"), to which the Court referred in the TRO MOO. TRO MOO ¶ 28, at 7. The Court would have preferred more clarity in the billing statement regarding what each extracted document is, to better determine each document's relevance to the litigation. The Court has some confidence in the billing statement because the time entries appear reasonable and non-excessive. The Court need not strive for "auditing perfection." <u>Fox v. Vice</u>, 563 U.S. at 838.

[23]Although the Court recognizes that the general rule is that printing is considered a clerical task, where, as here, the printing is inextricable from the rest of the task, which is clearly compensable, the Court will award fees for the full time requested. Furthermore, the selection and decision of which documents to print is a paralegal task.

[24]The Court assumes that "SST" refers to Ms. Thomas.

| 1/11/2018 | Re-draft R-1 forms to reflect Tai Bixby new title[25] | 0.7 | Compensable | 0.7 |
|---|---|---|---|---|
| 1/23/2018 | Edit R-1 forms for re-opened R-1 filing per RA revisions and contact client to verify missing information | 2.5 | Compensable | 2.5 |
| 1/24/2018 | Edit re-opened R-1 and I-539 forms per RA revisions | 1.6 | Compensable | 1.6 |
| 1/26/2018 | Send R-1 and I-539 forms to clients for signatures and remind Danielle about renewing her passport | 0.6 | Compensable | 0.6 |
| 1/29/2018 | Call Tai Bixby to confirm signed forms will be sent via mail | 0.1 | Compensable | 0.1 |
| 1/30/2018 | Call Tai to confirm R-1 forms shipment | 0.1 | Compensable | 0.1 |
| 1/31/2018 | Respond to client email about I-539 forms signatures | 0.1 | Compensable | 0.1 |
| 2/5/2018 | Edit JFGS G-28 and I-539 | 0.4 | Compensable | 0.4 |
| 2/5/2018 | Review NOID for RFE response | 0.2 | Compensable | 0.2 |
| 2/12/2018 | Begin drafting RFE response | 0.6 | Compensable | 0.6 |

[25]Tai Bixby is a UDV member who testified on Garcia's behalf at the second hearing on the TRO.  See TRO MOO ¶ 13, at 13.  The Court assumes that Bixby provided evidence or statements in Garcia's support, which the Plaintiffs included in Garcia's R-1 visa application. Having concluded that the work done in connection with the administrative proceedings in this case is compensable, the Court will award fees for the time entries which make mention of Bixby.  The Court would prefer that, however, when submitting billing statements, the parties provide more information so that the Court can better determine Bixby's and others' roles and relevance on a firmer record.

| 2/14/2018 | Continue drafting RFE response letter | 2.5 | Compensable | 2.5 |
|-----------|---------------------------------------|-----|--------------|-----|
| 2/14/2018 | Complete drafting RFE response letter and assemble packet | 5.1 | Compensable | 5.1 |
| 2/15/2018 | Complete RFE response packet | 0.9 | Compensable | 0.9 |
| 2/15/2018 | Edit exhibits in RFE response packet | 0.5 | Compensable | 0.5 |
| 2/15/2018 | Edit R-1 form addendum | 0.1 | Compensable | 0.1 |
| 2/15/2018 | Draft I-539 amendment letter to be filed with RFE response, print and assemble RFE response packet at I-539 amendment packet | 1.9 | Compensable | 1.9 |
| 2/19/2018 | Take RFE response to FedEx | 0.3 | Non-compensable | 0.0 |
| 2/19/2018 | Review track changes from RFE response and check email | 0.5 | Compensable | 0.5 |
| 2/26/2018 | Enter RFE response filing in CDB | 0.3 | Compensable | 0.3 |
| 3/5/2018 | Extract R-2 Approval Notice and notify clients | 0.3 | Compensable | 0.3 |
| 3/5/2018 | Extract R-1 Approval Notice and notify clients | 0.2 | Compensable | 0.2 |
| 3/9/2018 | Ship I-94s and notify client | 0.2 | Compensable | 0.2 |

The Court concludes that the following paralegal fee entries are compensable as paralegal work, and non-compensable as clerical or administrative tasks, for Sanchez:

| SANCHEZ ($150.00/HOUR) | | | | |
|---|---|---|---|---|
| Date | Description | Hours Reported | Compensable/Non-compensable | Total Compensable Time |
| Garcia, Jose Carlos: Declaratory Judgment | | | | |
| 11/20/2017 | Prepare exhibits for hearing | 6.0 | <u>Compensable</u> | 6.0 |

Accordingly, the Court will reduce the Plaintiffs' requested paralegal fees award by $1,230.00, to $8,340.00.

## III. THE COURT WILL AWARD THE PLAINTIFFS'S REQUESTED FEES FOR <u>MS. THOMAS AT THE REQUESTED $200.00 HOURLY RATE.</u>

The Court will award attorneys' fees at the Plaintiffs' requested rate of $200.00 per hour for Ms. Thomas. Applying the same lodestar approach to the calculation of reasonable attorneys' fees for Ms. Thomas, the Court first concludes that the 0.9 hours Ms. Thomas reports were reasonably expended on the litigation. <u>See</u> Plaintiffs' Timekeeping and Expense Tracking Table at 10. The Defendants object to the award of "0.4 hours of attorney-billed time for calls for billing questions pre-litigation," Response at 13, and assert that this billing "also calls into question whether these hours were contemporaneously billed," Response at 13 n.4. The entry in question states: "Notes and emails RE billing situation for the I-539 filing that was concurrent with R-1 extension. Reviewed and updated call ups on case." Plaintiffs' Timekeeping and Expense Tracking Table at 10.

The Supreme Court stated in <u>Webb v. County Board of Education</u>, 471 U.S. at 243, that a court may award fees for prelitigation work. The Supreme Court established some limits on awards for prelitigation services, including precluding awards for work done "years before the

complaint was filed." 471 U.S. at 242. An attorney's services do not begin at the filing of the complaint. The Court will award Ms. Thomas the 0.4 hours of attorney-billed time for calls for billing questions, concluding the amount of time reported is reasonable and that the work is related to the litigation, although it preceded the filing of the Complaint.

The Defendants also argue that Ms. Thomas' "hourly rate, role in this case, and years of experience are not discussed anywhere in the motion, and thus her reasonable hourly rate is unsupported." Response at 15 (internal quotations omitted). The Defendants assert that the Court should, therefore, reject or decrease her fee award. See Response at 15. At the August 8, 2018, hearing, the Court requested that the Plaintiffs submit Ms. Thomas' resume for the Court's consideration, and the Plaintiffs did so. See Tr. at 36:9-10 (Court); Plaintiffs' Notice at 1. Ms. Thomas graduated *cum laude* from the University of New Mexico School of Law in 2015, and has worked as an Associate Attorney at Noble & Vrapi, P.A., in Albuquerque since 2015, representing entirely business- and employment-based immigration and work visa clients, including for work related to R-1 and I-360 religious worker petitions. See Plaintiffs' Notice at 1. Mr. Vrapi attests that Ms. Thomas has "represented Plaintiffs in their administrative matters for a number of years . . . [and although] her involvement in the litigation was very small, it was important because she had handled most of the administrative work up to that point." Second Vrapi Decl. ¶ 4, at 1-2. The Court concludes that Ms. Thomas has not reported unnecessary, excessive, or redundant hours. The Court concludes, secondly, that the Plaintiffs' proposed hourly rate of $200.00 is reasonable for Ms. Thomas, and the Court awards Ms. Thomas fees at

that rate, concluding it falls within the range of fee awards that the Court has previously granted. See XTO Energy, Inc. v. ATD, LLC, 2016 WL 5376322, at *1 ("[A] reasonable rate for experienced associates is $200.00."); New Mexico v. Valley Meat Company, LLC, 2015 WL 9703255, at *24 (concluding that $200.00 was a reasonable rate for government lawyers or lawyers representing governmental entities). Applying the $200.00 hourly rate, the Court will award $180.00 for Ms. Thomas' 0.9 hours expended on this litigation.

IV. **THE COURT WILL AWARD THE PLAINTIFFS' REQUESTED FEES FOR MR. BOYD AND MS. HOLLANDER AT THE PLAINTIFFS' REQUESTED HOURLY RATE OF $350.00 FOR THE SEVEN HOURS OF WORK PERFORMED IN CONNECTION WITH ADMINISTRATIVE PROCEEDINGS.**

The Defendants argue that the Plaintiffs do not provide sufficient evidence of billing for Mr. Boyd and Ms. Hollander. See Response at 14. The Defendants assert that the Defendants' counsel of record "never had any interactions" with Mr. Boyd and Ms. Hollander, and that the work that they allegedly performed "happened before the R-1 denial . . . and may have concerned allegations about other unsubstantiated issues." Response at 14-15 (internal quotations omitted). The Defendants ask the Court to discount the Plaintiffs' award with regard to fees requested for work that Mr. Boyd and Ms. Hollander performed. See Response at 15. The Court indicated at the August 8, 2018, hearing that it would not require more than "representations" that the Plaintiffs consulted with Mr. Boyd and Ms. Hollander regarding this case. Tr. at 4:23-5:5 (Court).

The Plaintiffs' counsel attests that Mr. Boyd and Ms. Hollander liaised with a contact at the DOJ in the days following USCIS' issuance of the request for evidence, and that their

experience and expertise were invaluable during the Plaintiffs' briefing of the TRO Motion.  <u>See</u> Second Vrapi Decl. ¶ 10, at 3.  At the August 8, 2018, hearing, the Plaintiffs reminded the Court that Mr. Boyd, and Ms. Hollander have been representing UDV for many years, are familiar with the organization, and have a liaison at the DOJ with whom they attempt to reach informal resolutions of issues involving UDV.  <u>See</u> Tr. at 6:14-7:7 (Vrapi).  The Plaintiffs asserted that Ms. Hollander communicated "quite a bit" with the DOJ liaison and reviewed with that liaison what the Plaintiffs planned to file in this case.  Tr. at 7:10-13 (Vrapi).  The Plaintiffs asserted that Mr. Boyd was involved in briefing, especially on the Reply to TRO Motion.  <u>See</u> Tr. at 7:15-17 (Vrapi).  The Plaintiffs then provided the Court with the information for the DOJ contact, Ms. Harris, and an associated address.  <u>See</u> Tr. at 39:13-17 (Vrapi).  In the Defendants' Notice, the Defendants assert that the DOJ has not designated a liaison who handles RFRA issues for UDV. <u>See</u> Defendants' Notice at 1.  The Defendants confirm, however, that there is an attorney within the Civil Division, Federal Programs Branch, DOJ, who serves as a point of contact pursuant to the settlement agreement in <u>O Centro Espirita Beneficente Uniao do Vegetal v. Holder</u>, No. CIV 00-1647 JP/RLP (D.N.M. 2010)(Parker, J.).  <u>See</u> Defendants' Notice at 1.  The Defendants also advise the Court that Ms. Hollander contacted the Federal Programs Branch in connection with UDV's R-1 petitions, and she provided the Federal Programs Branch with documentation regarding UDV's position.  <u>See</u> Defendants' Notice at 1-2.  The Defendants reiterate their assertion that time which Ms. Hollander spent preparing the documentation for the Federal Programs Branch is not compensable under § 1988.  <u>See</u> Defendants' Notice at 2.

Having concluded that time spent in connection with the administrative proceedings in this case is compensable under the Pennsylvania v. Delaware Valley Citizens' Council for Clean Air test, and having concluded that $350.00 is a reasonable hourly rate for attorneys with special skills and experience, the Court will award the Plaintiffs the requested fees for work that Mr. Boyd and Ms. Hollander performed, at the requested hourly rate of $350.00.[26]

The Defendants object to the award of fees for all seven hours that Mr. Boyd and Ms. Hollander expended on the administrative proceedings, arguing that their work "remains unclarified and unseen." Response at 14. The Court concludes that the Freedman and Boyd Costs Table that the Plaintiffs submit -- detailing the fees that Mr. Boyd and Ms. Hollander allegedly earned -- is sufficiently detailed to justify the award of fees for the work described therein. See Freedman and Boyd Costs Table at 1. While the entry "Review long immigration document" is not sufficiently detailed to enable the Court to determine which document was reviewed, the Court will award fees for the 1.7 hours dedicated to that entry.[27] Immigration

---

[26]See supra n.4.

[27]While Mr. Boyd and Ms. Hollander could have better explained which document they reviewed in connection with the Plaintiffs' administrative proceedings, it is reasonable to assume that the document reviewed was related to and important for the administrative proceedings. The Court has reviewed many immigration documents in this case, they are long, and they take time to master. The United States Court of Appeals for the Third Circuit stated the required specificity for attorney time sheets:

> In Rode [v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990)], the Third Circuit stated that "a fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" (Rode, 892 F.2d at 1190 (quoting Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir.

documents can be very lengthy, and 1.7 hours does not strike the Court as an unreasonable

amount of time to review an immigration document. The Defendants also object to the award of

fees for the entry "Memo to DOJ lawyer re recent issues," alleging that there are no billing

records, and that there is no substantiation of this time entry. Proposed Attorneys' Fees at 6.

The Court, for the foregoing reasons, concludes that there is sufficient substantiation of this time

entry, considering the parties' testimony regarding the DOJ lawyer at the August 8, 2018,

hearing and the subsequent Defendants' Notice confirming the existence of this liaison, as well

as the Third Circuit's guidance regarding the required specificity for time sheets, see supra at 79

---

1983))). A fee petition should include "some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates." However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Rode, 892 F.2d at 1190 (quoting Lindy Bros. Builders, Inc. v. Amer. Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3d Cir. 1973)). We found sufficient specificity where the computer-generated time sheet provided "the date the activity took place." [Rode, 892 F.2d] at 1191.

Keenan v. City of Philadelphia, 983 F.2d 459, 473 (3d Cir. 1992)(alterations omitted). See Ysasi v. Brown, 2015 WL 403930, at *15 (concluding that counsel's entries were sufficient for the Court to determine the general activity which he was performing and that the amount of time spent was reasonable). The United States Court of Appeals for the First Circuit has stated that time sheets were not sufficiently detailed when they contained entries such as "confer with counsel," "confer with client," "review materials," "review documents," and "legal research" "without any indication of the subject matter involved." Tenn. Gas Pipeline Co. v. 104 Acres of Land, More or Less, in Providence County, State of Rhode Island, 32 F.3d 632, 634 (1st Cir. 1994). Here, the Plaintiffs' counsel specifies that the document reviewed is an immigration document, and that specificity is sufficient for the Court in the review.

n.22.  The Court, therefore, awards fees for work that Mr. Boyd and Ms. Hollander performed in the amount of $2,467.20.  The Court will award the Plaintiffs $48,892.2.00 in fees.[28]

## V.    PURSUANT TO 28 U.S.C. § 1920, LOCAL RULE 54.2(C), AND RULE 54(D) OF THE FEDERAL RULES OF CIVIL PROCEDURE, THE COURT WILL AWARD THE PLAINTIFFS $1,685.28 IN COSTS.

The Plaintiffs move for taxable costs under rule 54(d) of the Federal Rules of Civil Procedure.  See Motion at 1.  Rule 54(d) states: "Unless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  The Plaintiffs seek costs for copying, postage, filing fees, travel costs, mileage, expert fees, and transcript production, totaling $2,195.91, and have presented evidence to support those requests.  See Plaintiffs' Timekeeping and Expense Tracking Table at 12.  The Court will not reduce this request for copying costs, postage, travel fees, or transcripts.  As part of their proposed costs award, the Plaintiffs request $510.63 in expert witness fees related to Mr. Davis' affidavit.  See Fee Statement (CIV 17-1137 JB/KK), filed April 24, 2018 (Doc. 29-1)("Davis Fee Statement").  The Court declines to award the requested $510.63 in expert witness costs for Mr. Davis.

The Defendants argue that the Court may not award costs for expert fees, because 28 U.S.C. § 1920 and D.N.M. L.R. Civ. 54.2(c) do not permit the recovery of expert fees.  See Response at 12.  D.N.M. L.R. Civ. 54.2(c) provides: "An expert witness fee is not taxable under

---

[28]The Court arrived at this fee award by adding the $37,905.00 awarded to Mr. Vrapi, the $8,340.00 awarded for the work that the paralegals performed, the $180.00 awarded to Ms. Thomas, and the $2,467.20 awarded to Mr. Boyd and Ms. Hollander.

28 U.S.C. § 1920 unless the Court, *sua sponte* or on motion by a party, appoints the expert and approves the fee amount. An expert witness not appointed by the Court will be paid the same fee as a lay witness." D.N.M. L.R. Civ. 54.2(c)(2).

In the Reply, the Plaintiffs state that Mr. Davis is one of the foremost experts on the issue of attorneys' fees in New Mexico, and that the Defendants have not challenged his qualifications. See Reply at 3. The Plaintiffs contend that they are entitled to taxable costs pursuant to rule 54(d) of the Federal Rules of Civil Procedure. See Motion at 1. Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437 (1987), however, disallows the recovery of expert witness fees under rule 54(d). See Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. at 442 (concluding that the "discretion granted by Rule 54(d) is not a power to evade this specific congressional command. Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920"). The Tenth Circuit agreed, stating that because "federal procedural law governs the taxation of costs, any discretion afforded the trial court would arise under federal law, namely Fed. R. Civ. P. 54(d). . . . That discretion is constrained by 28 U.S.C. §§ 1821 and 1920." Chaparral Res., Inc. v. Monsanto Co., 849 F.2d 1286, 1292 (10th Cir. 1988). The Plaintiffs do not respond, however, to the Defendants' argument that the fees associated with Mr. Davis' work should be reduced pursuant to 28 U.S.C. § 1920 and D.N.M. L.R. Civ. 54.2(c)(2).

D.N.M. L.R. Civ. 54.2(c)(1)(B) provides that a lay witness will be paid the smaller of the mileage for the distance from the witness' residence to the Court, or the per diem that 28 U.S.C. § 1821 specifies. See D.N.M. L.R. Civ. 54.2(c)(1)(B). The per diem rate 28 U.S.C. § 1821

states is $40.00.   See 28 U.S.C. § 1821(b).   The Supreme Court ruling in West Virginia University Hospital v. Casey, 499 U.S. 83, 89 (1991)(superseded by statute on other grounds), clarifies the scope of "a reasonable attorney's fee" under § 1988.  Finding that attorney's fees and expert fees are distinct items of expense, the Supreme Court held that § 1988 conveys no authority to shift to the losing party fees rendered by experts.   See W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. at 89.   When experts appear at a civil rights trial, the provisions that govern a federal court's power to shift litigation costs for such services are 28 U.S.C. §§ 1920 and 1821, which limit witness fees to a fixed per diem.   See W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. at 89.   The Honorable Judge Parker, now-Senior United States District Judge for the District of New Mexico, has used the per diem approach to award fees for experts who testify in court and for experts who provide deposition testimony.   See Bustamante v. Albuquerque Police Dep't, No. CIV 88-0672 JP, 1991 WL 125307, at *7 (D.N.M. April 24, 1991)(Parker, J.).

Here, Mr. Davis provides an affidavit regarding attorneys' fees but did not make an appearance in court.  The per diem approach applies only when experts appear at trial or at a deposition, and the prevailing party is not entitled to any fees for services rendered by experts in a nontestimonial capacity.   W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. at 87 (concluding that "[n]one of the categories of expenses listed in § 1920 can reasonably be read to include fees for services rendered by an expert employed by a party in a nontestimonial advisory capacity."). The Supreme Court concluded that § 1988 conveys no authority to shift expert fees, but that when experts appear at trial or at a deposition, they are eligible for the per diem fees provided by

§ 1988 and § 1920.  See <u>W. Va. Univ. Hosps., Inc. v. Casey</u>, 499 U.S. at 87.  See also <u>Gates v. Deukmejian</u>, 987 F.2d 1292, 1408 (9th Cir. 1992)(concluding that the prevailing party is "not entitled to anything for services rendered by experts in a nontestimonial capacity)(citing 499 U.S. at 87); <u>Harvey v. Mohammed</u>, 951 F. Supp. 2d 47, 74 (D.D.C. 2013)(Lamberth, C.J.)(stating that although a plaintiff "may recoup $40 per day for expert witnesses appearing at a deposition or in court," <u>West Virginia University Hospital, Inc. v. Casey</u> disallowed the shifting of expert fees to the losing party under § 1988).  In <u>Friedrich v. City of Chicago</u>, the United States Court of Appeals for the Seventh Circuit held that "fees that the prevailing party pays to an expert hired to advise or testify in the case" are reimbursable under § 1988, averring that forbidding the shifting of experts' fees "would encourage underspecialization and inefficient trial preparation."  888 F.2d 511, 513-15 (7th Cir. 1989)(Posner, J.).  The Honorable Judge Richard Posner, United States Court of Appeals Judge for the Seventh Circuit, concluded that §§ 1821 and 1920 "do not bear on fees for testimonial services," which should be awarded to the prevailing party.  <u>Friedrich v. City of Chicago</u>, 888 F.2d at 515.  The Supreme Court, however, vacated the judgment in <u>Friedrich v. City of Chicago</u> and remanded the case to the Seventh Circuit to further consider in light of <u>West Virginia University Hospitals, Inc. v. Casey</u>.  See <u>City of Chi. v. Friedrich</u>, 499 U.S. 933, 933 (1991).  On remand, the Seventh Circuit vacated the United States District Court for the Northern District of Illinois' order awarding expert witness fees exceeding $30.00 per day for in-court testimony.  See <u>Friedrich v. City of Chi.</u>, 986 F.2d 1424, 1424 (Table), 1993 WL 34959 (7th Cir. 1993)( Cummings and Posner, Js.).

Bound by the Supreme Court and the Tenth Circuit, the Court will not award fees in connection with Mr. Davis' preparation of his fee affidavit -- a nontestimonial service. The Court, therefore, reduces the Plaintiffs' proposed costs award by $510.63.[29]

The Defendants assert that copying and shipping expenses unrelated to court admissions are not recoverable. See Response at 12 n.3 (citing Ysasi v. Brown, 2015 WL 403930, at *50; D.N.M. L.R. Civ. 54.2(e)). Ysasi v. Brown does not, however, impose such a broad ban.

> In the same way that 28 U.S.C. § 1920 provides the Court with broader authority to award costs than the local rules, so does § 1988. The Tenth Circuit holds that "out-of-pocket expenses" can be recovered pursuant to § 1988 if the costs are "items that are normally itemized and billed in addition to the [attorney's] hourly rate." Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000)(quoting Ramos v. Lamm, 713 F.2d at 559)(alterations omitted). The Tenth Circuit has held that these costs may include "photocopying, mileage, meals, and postage," if attorneys in the areas normally bill those costs separately to clients. Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997). From the Court's experience before it came on the bench, at New Mexico law firms, and from reviewing lots of attorney bills, both as a lawyer and a judge, the Court can say it is customary that lawyers in New Mexico bill the costs of copying separately to clients, i.e., copying is not absorbed as overhead or covered by the hourly rate. Section 1988, thus, permits copying costs to be recovered even though the local rules would not permit Mr. Fredlund to recover copying costs in this case. At least one other court has permitted certain costs to be recovered under § 1988 when the court's local rules prohibited the costs. See

---

[29]The Court is troubled by the state of the law, that under §§ 1920 and 1988, the prevailing party may recover copying costs and travel fees but may not recover expert witness fees in civil rights cases, requiring attorneys to eat those often-high costs. The Supreme Court's and the Tenth Circuit's determinations that expert witness fees are not recoverable in civil rights case binds the Court. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 437 (1987)(concluding that rule 54(d) does not confer separate authority on a district court to make a costs award, and that, "absent explicit statutory or contractual authorization," expert witness fees are not recoverable in civil rights cases). Since then, the Tenth Circuit has also disallowed expert witness fees under § 1920 absent explicit statutory or contractual authorization. See Chaparral Res., Inc. v. Monsanto Co., 849 F.2d at 1292.

Tsombanidis v. City of W. Haven, 208 F. Supp. 2d 263, 285-86 (D.Conn. 2002)(Goettel, J.). In Tsombanidis v. City of West Haven, the Honorable Gerard Louis Goettel, United States District Judge for the District of Connecticut, permitted the prevailing party to recover costs that the local rules barred. See 208 F. Supp. 2d at 285–86. Judge Goettel wrote:

> Both defendants have objected to these requested costs on the ground that they include items which are not taxable costs under 28 U.S.C. § 1920 and the Local Rules of this District, D. Conn. L. Civ. R. 17. However, in awarding fees and costs under § 1988, this Court is not limited to taxable costs. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charted to their clients." LeBlanc-Sternberg v. Fletcher, 143 F.3d at 763 (internal citations and quotations omitted). "Identifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." Aston v. Secretary of Health & Human Services, 808 F.2d 9, 12 (2d Cir. 1986); Lambert v. Fulton County, 151 F. Supp. 2d at 1370 ("In short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxes as costs under section 1988.")(internal citations and quotations omitted). Thus, costs that are allowable under § 1988 encompass a far broader range of expenses than costs that are taxable under 28 U.S.C. § 1920 and the Local Rules. See J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co., No. 3:98CV145 (DFM), 2000 WL 852331 (D.Conn. March 31, 2000)(rejecting defendant's claim that the court may only award those costs delineated in 28 U.S.C. § 1920); but see Omnipoint Communications, Inc., 91 F. Supp. 2d at 500 (D.Conn. 2000)(relying on Local Rule 17 to disallow computerized legal research fees and express mail service).

Tsombanidis v. City of W. Haven, 208 F. Supp. 2d at 285-86. Accordingly, the Court may award costs pursuant to § 1988, including costs for making copies, even if the local rules do not permit such costs.

<u>Ysasi v. Brown</u>, 2015 WL 403930, at *51-52. The Plaintiffs also seek costs for copying, postage, filing fees, travel costs, mileage, expert fees, and transcript production, totaling $2,195.91, and have presented evidence to support those requests. <u>See</u> Plaintiffs' Timekeeping and Expense Tracking Table at 12. The Court will not reduce this request for copying costs, postage, travel fees, or transcripts. As previously stated, the Court declines to award the requested $510.63 in expert witness costs for Mr. Davis, and instead awards $0.00. The Court, therefore, awards the Plaintiffs $1,685.28 in costs.[30]

## VII. THE COURT WILL APPLY AN UPDATED GROSS RECEIPTS TAX RATE OF 7.875% TO THE ATTORNEYS' FEES AND COSTS IT AWARDS.

The Court will apply an updated gross receipts tax rate to any attorneys' fees and costs it awards. When the Plaintiffs submitted their Motion, the Albuquerque gross receipts tax rate was 7.500%; now it is 7.875%. <u>See</u> <u>Garcia v. Farmington</u>, No. CIV 12-0383 JCH/SCY, 2017 WL 4271230, at *3 (D.N.M. Jan. 31, 2017)(Herrera, J.)(applying the most up-to-date gross receipts tax rate to attorneys' fees award when one party requested that rate and the other party did not object); Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx. Because the attorney will pay gross receipts taxes when the attorney receives the income, the Court should use the rate at the time of the award, and not the rate at the time the attorney did the work. The Defendants assert that the Court "should ensure that any gross receipts tax is charged properly, Plaintiffs

---

[30]The Court arrived at this costs award by subtracting $510.63 from the Plaintiffs' proposed costs award of $2,195.91.

have applied it to costs as well as fees." Response at 12 n.3. The Defendants do not, however, indicate to the Court how they believe the Court should apply the gross receipts tax. The Court generally awards New Mexico gross receipts tax on fees. See, e.g., Fallen v. GREP Southwest, LLC, 247 F. Supp. 3d, 1165, 1210 (D.N.M. 2017)(Browning, J.); Ramah Navajo Chapter v. Babbitt, No. CIV 90-0957 LHWWD, 50 F. Supp. 2d 1091, 1109 (D.N.M. May 25, 1999)(Hansen, J.). The Court has also included gross receipts tax when awarding costs. See Martinez v. Board of Cty. Commrs., 2018 WL 1665806, at *4 n.2. In New Mexico, the incidence of the gross receipts tax -- unlike most sales taxes -- falls on the income recipient, and while it is customary to pass it on to the purchaser of goods and services, the tax remains on the seller or income recipient. Thus, although the Plaintiffs may be paying taxes on costs, or passing on taxes, the burden of the tax remains on the Plaintiffs, and they should be compensated for it.[31]

The Court recently discussed the award of gross receipts tax payments in Shaw v. United States, No. CIV 17-0147 JB/LF, 2018 WL 3598513, at *7 (D.N.M. July 26, 2018)(Browning, J.). The Court concluded that, as a threshold matter, gross receipts tax payments are not taxable costs. A federal court may tax as costs an enumerated list of expenses, including transcript fees, marshal fees, docket fees, and other things. See 28 U.S.C. § 1920(1)-(6). That list does not include, however, anything resembling a tax payment. See Williams v. Astrue, No. CIV 10-

---

[31]Mr. Vrapi's time sheets indicate that he charged gross receipts on the costs billed to the client. Mr. Vrapi paid or will pay the taxes. See Plaintiffs' Timekeeping and Expense Tracking Table, at 11 (reporting gross receipts tax at a rate of 7.5% in the amount of $3,948.82). To reimburse the client, the award should include these taxes to make them whole. Because there is only one payment to the state and one award by the Court, there does not appear to be an award of taxes on taxes, but just one award of taxes.

0295, 2011 WL 13284607, at *2 (D.N.M. Sept. 1, 2011)(Martinez, M.J.)(holding that § 1920 "enumerates the costs that are reimbursable, none of which include gross receipts taxes"); Daniel A. Morris, Federal Tort Claims § 4:18, 1 (2018)("A judgment for costs, not including the fees and expenses of attorneys, may be awarded in an action under the Federal Tort Claims Act. Recoverable costs are limited to those described in 28 U.S.C.A. § 1920.").

Additionally, gross receipts tax payments are not attorney's fees. Instead, they are a tax on a fee. Attorneys' fees are best understood as compensation for services performed and not tax liability. An "attorney's fee" is "[t]he charge to a client for services performed for the client, such as an hourly fee, a flat fee, or a contingent fee." Black's Law Dictionary 154 (10th ed. 2014).

Compensation is what a client pays an attorney for services. Gross receipts tax payments, however, like the federal income tax, represent a tax on a fee regardless whether the attorney charges the client for it; "it's due even if the seller doesn't charge the buyer." Finance New Mexico, Get a Handle on Gross Receipts Tax if Doing Business in New Mexico, https://financenewmexico.org/articles/general-business-advice/get-a-handle-on-gross-receipts-tax-if-doing-business-in-new-mexico/ (last visited Oct. 1, 2018). When an attorney charges a client for the attorney's gross receipts tax obligations, that charge does not compensate the attorney for the services that the attorney performs; instead, the attorney must turn around and pay that money to New Mexico. See N.M. Stat. Ann. § 7-9-4(A)(stating that the gross receipts tax is "imposed on any person engaging in business in New Mexico"). In other words, when an

attorney charges a client for the attorney's gross receipt tax obligations, the attorney seeks reimbursement for an expense that the attorney would not have incurred but for the client's representation. For these reasons, the Court concludes that gross receipts tax payments are not "fees" within § 1988's meaning.

In New Mexico, it is standard practice for attorneys to ask their clients to pay the gross receipts tax obligations that attorneys incur by collecting attorney's fees. See, e.g., Law Office of Jay R. Mueller, http://www.jayrmueller.com/Attorney-Fees.html (last visited July 17, 2018); Dathan Weems Law Firm, https://www.weemslaw.com/fee-details/ (last visited July 17, 2018). The New Mexico legal industry considers gross receipts tax payments as a payment separate from attorney's fees. See, e.g., Law Office of Jay R. Mueller, http://www.jayrmueller.com/Attorney-Fees.html (last visited July 17, 2018); Dathan Weems Law Firm, https://www.weemslaw.com/fee-details/ (last visited July 17, 2018)(distinguishing between fees and gross receipts tax payments). Based on this industry custom, and in keeping with Congress' intent, the Court concludes that gross receipts tax payments are acceptable payments on fees and costs that do not count as fees or costs for § 1988 purposes.[32]

The Plaintiffs request a total award of $56,599.73, inclusive of gross receipts tax. See Motion at 5. The Defendants ask that the Court reduce the total award, inclusive of gross receipts tax, to $14,784.64. See Response at 16. Having considered both proposals and the

---

[32]Despite the nature of the New Mexico gross receipts tax, which is like the federal income tax, New Mexico vendors often treat it much like a sales tax and pass it on to consumers. Attorneys commonly do the same.

evidence presented, the Court will, for the foregoing reasons, award fees and costs in the amount of The Court will grant the Plaintiffs an award of fees and costs in the amount of $50,577.48. Gross receipts tax on this amount is $3,982.98. The total award is $54,560.46, and the Defendants shall pay that amount to the Plaintiffs.[33]

**IT IS ORDERED** that the requests in the Plaintiffs' Motion for Attorneys' Fees, Tax, and Costs, filed April 24, 2018 (Doc. 29), are granted in part and denied in part. The Court will grant the Plaintiffs an award of fees and costs in the amount of $50,577.48. Gross receipts tax on this amount is $3,982.98. The total award is $54,560.46, and the Defendants shall pay that amount to the Plaintiffs.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Olsi Vrapi
Noble & Vrapi, P.A.
Albuquerque, New Mexico

    *Attorney for the Plaintiffs*

---

[33]The Court arrived at this amount by adding the costs award of $1,685.28 to the fees award of $48,892.20, and then multiplying the sum by the current gross receipts tax rate. The Court then added that amount -- the amount of gross receipts tax, $4,009.18 -- to the sum of $1,685.28 and $48,892.20 -- which is $50,577.48.

Brandon L. Fyffe
    Assistant United States Attorney
U.S. Attorney's Office
Albuquerque, New Mexico

--and--

Hans Harris Chen
Francesca Genova
Office of Immigration Litigation
Civil Division
United States Department of Justice
Washington, D.C.

       *Attorneys for the Defendant United States of America*


Hans Harris Chen
Francesca Genova
Office of Immigration Litigation
Civil Division
United States Department of Justice
Washington, D.C.

       *Attorneys for the Defendants*